Case No. 21-13130-HH

UNITED STATES COURT OF APPEALS FOR THE ELEVENTH CIRCUIT

| | |
|---|---|
| **Maria Alvarez Galvez, et al.** | : |
| | : |
| **v.** | : |
| | : |
| **Fanjul Corp., et al.** | : |

# <u>APPENDIX</u>

On appeal from the United States District Court for the Southern District of Florida

Robert T Vance Jr
Law Offices of Robert T Vance Jr
100 South Broad Street, Suite 905
Philadelphia PA 19110
215-557-9550 tel
215-278-7992 fax
rvance@vancelf.com

Attorney for the Appellants

## Table of Contents

                                                                    Page

Docket Entries ............................................................................ 1a

Complaint ................................................................................... 17a

Order Granting Motion to Dismiss entered April 12, 2021..................... 43a

Amended Complaint entered May 10, 2021....................................... 68a

Report and Recommendation on Defendant's Motion to Dismiss (ECF No. 63) and
Plaintiffs' Cross-Motion for Jurisdictional Discovery (ECF No. 68) entered
August 4, 2021........................................................................... 159a

Order Affirming and Adopting Report and Recommendation, Denying Jurisdictional
Discovery, and Dismissing Case entered August 31, 2021...................... 173a

APPEAL,BER,CLOSED,REF_EVENTS ONLY (NEFs),REF_PTN

# U.S. District Court
## Southern District of Florida (West Palm Beach)
## CIVIL DOCKET FOR CASE #: 9:20-cv-80123-RAR

| | |
|---|---|
| Alvarez Galvez et al v. Fanjul Corp. et al | Date Filed: 01/27/2020 |
| Assigned to: Judge Rodolfo A. Ruiz, II | Date Terminated: 08/31/2021 |
| Referred to: Magistrate Judge Bruce E. Reinhart | Jury Demand: Plaintiff |
| Case in other court: 21-13130-HH | Nature of Suit: 890 Other Statutory Actions |
| Cause: 28:1331 Fed. Question: Tort Action | Jurisdiction: Federal Question |

**Plaintiff**

**Maria Magdalena Alvarez Galvez**
*individually and as the Guardian of her minor children, H.M. and C.M.*

represented by **Robert T. Vance , Jr.**
Law Offices of Robert T Vance Jr
100 South Broad Street, Suite 1525
Philadelphia, PA 19110
215-557-9550
Email: rvance@vancelf.com
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Shauna M. Curphey**
Curphey Law. LLC
6300 North Wickham Road
Suite 130, #305
Ste 130
Melbourne, FL 32940
503-241-2848
Email: scurphey@curpheylaw.com
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**Maria Altagracia Calderon**

represented by **Robert T. Vance , Jr.**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Shauna M. Curphey**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**Carline Paul**

represented by **Robert T. Vance , Jr.**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Shauna M. Curphey**

(See above for address)
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**Domitila Mejia**
*on her own behalf and as the Guardian of*
*her minor grandchildren Erica de la Cruz*
*Mejia, Erik de la Cruz Mejia, Nayeli de la*
*Cruz Mejia and Yeri de la Cruz Mejia*

represented by **Robert T. Vance , Jr.**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Shauna M. Curphey**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**Severa Jimenez**

represented by **Robert T. Vance , Jr.**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Shauna M. Curphey**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**Francisco Herrera de la Cruz**

represented by **Robert T. Vance , Jr.**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Shauna M. Curphey**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**Manuel Sterling**

represented by **Robert T. Vance , Jr.**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Shauna M. Curphey**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**Ana Alvarez Monte**

represented by **Robert T. Vance , Jr.**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Shauna M. Curphey**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Plaintiff**

2a

(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Shauna M. Curphey**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Plaintiff**
**Maria Jimenez**                          represented by **Robert T. Vance , Jr.**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Shauna M. Curphey**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Plaintiff**
**Luz Clarita Sanchez**                    represented by **Robert T. Vance , Jr.**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Shauna M. Curphey**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Plaintiff**
**Rafael Mancebo**                         represented by **Robert T. Vance , Jr.**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Shauna M. Curphey**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Plaintiff**
**Carlos Manuel Alcantara**                represented by **Robert T. Vance , Jr.**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Shauna M. Curphey**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Plaintiff**
**Ruth D. Sena**                           represented by **Robert T. Vance , Jr.**
(See above for address)
*PRO HAC VICE*

3a

*ATTORNEY TO BE NOTICED*

Shauna M. Curphey
(See above for address)
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**Ana Rosa Almonte**                          represented by    **Robert T. Vance , Jr.**
                                                                (See above for address)
                                                                *PRO HAC VICE*
                                                                *ATTORNEY TO BE NOTICED*

                                                                **Shauna M. Curphey**
                                                                (See above for address)
                                                                *ATTORNEY TO BE NOTICED*

**Plaintiff**

**Annoris Morales Jimenez**                   represented by    **Robert T. Vance , Jr.**
*on her own behalf and as the Guardian of*                      (See above for address)
*her minor child Eliani Vicente Morales*                        *PRO HAC VICE*
                                                                *ATTORNEY TO BE NOTICED*

                                                                **Shauna M. Curphey**
                                                                (See above for address)
                                                                *ATTORNEY TO BE NOTICED*

**Plaintiff**

**Domingo Mejia**                             represented by    **Robert T. Vance , Jr.**
                                                                (See above for address)
                                                                *PRO HAC VICE*
                                                                *ATTORNEY TO BE NOTICED*

                                                                **Shauna M. Curphey**
                                                                (See above for address)
                                                                *ATTORNEY TO BE NOTICED*

**Plaintiff**

**Emely Sierra**                              represented by    **Robert T. Vance , Jr.**
*on her own behalf and as the Guardian of*                      (See above for address)
*her minor children Yeidi Sierra and Andreili*                  *PRO HAC VICE*
*Sierra*                                                        *ATTORNEY TO BE NOTICED*

                                                                **Shauna M. Curphey**
                                                                (See above for address)
                                                                *ATTORNEY TO BE NOTICED*

**Plaintiff**

**Edi Luis Jean**                             represented by    **Robert T. Vance , Jr.**
*on his own behalf and as the Guardian of*                      (See above for address)
*his minor children Yeidi Sierra and Andreili*                  *PRO HAC VICE*
*Sierra*                                                        *ATTORNEY TO BE NOTICED*

                                                                **Shauna M. Curphey**

4a

*(See above for address)*
*ATTORNEY TO BE NOTICED*

**<u>Plaintiff</u>**

**Jhonsi Arrollo**                                    represented by  **Robert T. Vance , Jr.**
*on her own behalf and as the Guardian of*                        (See above for address)
*her minor children Jendri Arroyo, Jhosito*                        *PRO HAC VICE*
*Arroyo and Jhojan Arroyo*                                         *ATTORNEY TO BE NOTICED*

                                                                  **Shauna M. Curphey**
                                                                  (See above for address)
                                                                  *ATTORNEY TO BE NOTICED*

**<u>Plaintiff</u>**

**Gertrudis Veloz Gomez**                             represented by  **Robert T. Vance , Jr.**
                                                                  (See above for address)
                                                                  *PRO HAC VICE*
                                                                  *ATTORNEY TO BE NOTICED*

                                                                  **Shauna M. Curphey**
                                                                  (See above for address)
                                                                  *ATTORNEY TO BE NOTICED*

**<u>Plaintiff</u>**

**Yefry Sierra Doroteo**                              represented by  **Robert T. Vance , Jr.**
                                                                  (See above for address)
                                                                  *PRO HAC VICE*
                                                                  *ATTORNEY TO BE NOTICED*

                                                                  **Shauna M. Curphey**
                                                                  (See above for address)
                                                                  *ATTORNEY TO BE NOTICED*

**<u>Plaintiff</u>**

**Juanita Coffils**                                   represented by  **Robert T. Vance , Jr.**
                                                                  (See above for address)
                                                                  *ATTORNEY TO BE NOTICED*

                                                                  **Shauna M. Curphey**
                                                                  (See above for address)
                                                                  *ATTORNEY TO BE NOTICED*

**<u>Plaintiff</u>**

**Dania Chala**                                       represented by  **Robert T. Vance , Jr.**
                                                                  (See above for address)
                                                                  *PRO HAC VICE*
                                                                  *ATTORNEY TO BE NOTICED*

                                                                  **Shauna M. Curphey**
                                                                  (See above for address)
                                                                  *ATTORNEY TO BE NOTICED*

**<u>Plaintiff</u>**

5a

**Nanci Avila**
*on her own behalf and as the Guardian of*
*her minor children Leslie Castillo, Fabela*
*Alcantara and Daniel Alcantara*

represented by **Robert B. Vance , Jr.**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Shauna M. Curphey**
(See above for address)
*ATTORNEY TO BE NOTICED*

V.

**Defendant**

**Fanjul Corp.**
*a Florida corporation*

represented by **Richard David Shane**
Duane Morris LLP
201 South Biscayne Boulevard
Suite 3400
Miami, FL 33131
305 960 2336
Fax: 305 397 2405
Email: rdshane@duanemorris.com
*ATTORNEY TO BE NOTICED*

**Robert M. Palumbos**
Duane Morris, LLP
30 South 17th Street
Philadelphia, PA 19101
(215) 979-1000
Email: rmpalumbos@duanemorris.com
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Defendant**

**Central Romana Corporation, Ltd.**
*TERMINATED: 05/11/2021*

represented by **Joseph Peter Klock , Jr.**
RASCO KLOCK PEREZ NIETO
2555 Ponce de Leon Blvd.
Suite 600
Coral Gables, FL 33134-6712
305 476-7111
Fax: 305 675-7707
Email: jklock@rascoklock.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**JuanCarlos Antorcha**
Rasco Klock Perez Nieto, P.L.
2555 Ponce de Leon Blvd., Suite 600
Coral Gables, FL 33134
(305) 476-7105
Fax: (305) 476-7102
Email: jantorcha@rascoklock.com
*ATTORNEY TO BE NOTICED*

**Susan Elizabeth Klock**

6a

2555 Ponce De Leon Blvd, Suite 600
Coral Gables, FL 33134
305-476-7100
Email: sklock@rascoklock.com
*ATTORNEY TO BE NOTICED*

| Date Filed | # | Docket Text |
|---|---|---|
| 01/27/2020 | 1 | COMPLAINT against All Defendants. Filing fees $ 400.00 receipt number AFLSDC-12350852, filed by Luz Clarita Sanchez, Gertrudis Veloz Gomez, Manuel Sterling, Domingo Mejia, Maria Altagracia Calderon, Yefry Sierra Doroteo, Maria Magdalena Alvarez Galvez, Emely Sierra, Annoris Morales Jimenez, Carlos Manuel Alcantara, Juanita Coffils, Nanci Avila, Francisco Herrera de la Cruz, Carline Paul, Ariana Marrero Altagracia, Rafael Mancebo, Ruth D. Sena, Ana Rosa Almonte, Jhonsi Arrollo, Ana Alvarez Monte, Domitila Mejia, Dania Chala, Edi Luis Jean, Maria Jimenez, Severa Jimenez. (Attachments: # 1 Civil Cover Sheet, # 2 Summon(s))(Curphey, Shauna) (Entered: 01/27/2020) |
| 01/27/2020 | 2 | Clerks Notice of Judge Assignment to Judge Rodolfo A Ruiz.<br><br>Pursuant to 28 USC 636(c), the parties are hereby notified that the U.S. Magistrate Judge Bruce E. Reinhart is available to handle any or all proceedings in this case. If agreed, parties should complete and file the Consent form found on our website. It is not necessary to file a document indicating lack of consent.<br><br>Pro se (NON-PRISONER) litigants may receive Notices of Electronic Filings (NEFS) via email after filing a Consent by Pro Se Litigant (NON-PRISONER) to Receive Notices of Electronic Filing. The consent form is available under the forms section of our website. (pcs) (Entered: 01/28/2020) |
| 01/28/2020 | 3 | Clerks Notice to Filer re: Summons(es) cannot be issued. Summons NOT issued for the following reason - Attached form is not a Summons. (pcs) (Entered: 01/28/2020) |
| 01/28/2020 | 4 | Bar Letter re: Admissions sent to attorney Robert T. Vance, Jr., mailing date January 28, 2020, (pt) (Entered: 01/28/2020) |
| 01/29/2020 | 5 | NOTICE of Filing Proposed Summons(es) by Carlos Manuel Alcantara, Ana Rosa Almonte, Ariana Marrero Altagracia, Maria Magdalena Alvarez Galvez, Jhonsi Arrollo, Nanci Avila, Maria Altagracia Calderon, Dania Chala, Juanita Coffils, Yefry Sierra Doroteo, Gertrudis Veloz Gomez, Francisco Herrera de la Cruz, Edi Luis Jean, Annoris Morales Jimenez, Maria Jimenez, Severa Jimenez, Rafael Mancebo, Domingo Mejia, Domitila Mejia, Ana Alvarez Monte, Carline Paul, Luz Clarita Sanchez, Ruth D. Sena, Emely Sierra, Manuel Sterling (Curphey, Shauna) (Entered: 01/29/2020) |
| 01/29/2020 | 6 | Clerks Notice to Filer re: Summons(es) cannot be issued. Attorney or Pro Se party's return address is not listed (jas) (Entered: 01/29/2020) |
| 01/30/2020 | 7 | NOTICE of Filing Proposed Summons(es) by Carlos Manuel Alcantara, Ana Rosa Almonte, Ariana Marrero Altagracia, Maria Magdalena Alvarez Galvez, Jhonsi Arrollo, Nanci Avila, Maria Altagracia Calderon, Dania Chala, Juanita Coffils, Yefry Sierra Doroteo, Gertrudis Veloz Gomez, Francisco Herrera de la Cruz, Edi Luis Jean, Annoris Morales Jimenez, Maria Jimenez, Severa Jimenez, Rafael Mancebo, Domingo Mejia, Domitila Mejia, Ana Alvarez Monte, Carline Paul, Luz Clarita Sanchez, Ruth D. Sena, Emely Sierra, Manuel Sterling (Curphey, Shauna) (Entered: 01/30/2020) |

7a

| 01/30/2020 | | Summons Issued as to Central Romana Corporation 2:18. (jd ) (Entered: 01/30/2020) |
|---|---|---|
| 02/14/2020 | 9 | First MOTION to Appear Pro Hac Vice, Consent to Designation, and Request to Electronically Receive Notices of Electronic Filing for Robert T. Vance, Jr.. Filing Fee $ 75.00 Receipt # AFLSDC-12459183 by Carlos Manuel Alcantara, Ana Rosa Almonte, Ariana Marrero Altagracia, Maria Magdalena Alvarez Galvez, Jhonsi Arrollo, Nanci Avila, Maria Altagracia Calderon, Dania Chala, Juanita Coffils, Yefry Sierra Doroteo, Gertrudis Veloz Gomez, Francisco Herrera de la Cruz, Edi Luis Jean, Annoris Morales Jimenez, Maria Jimenez, Severa Jimenez, Rafael Mancebo, Domingo Mejia, Domitila Mejia, Ana Alvarez Monte, Carline Paul, Luz Clarita Sanchez, Ruth D. Sena, Emely Sierra, Manuel Sterling. Responses due by 2/28/2020 (Attachments: # 1 Text of Proposed Order)(Curphey, Shauna) (Entered: 02/14/2020) |
| 02/18/2020 | 10 | PAPERLESS ORDER granting 9 Plaintiffs' Motion to Appear Pro Hac Vice, Consent to Designation, and Request to Electronically Receive Notices of Electronic Filing. Attorney Robert T. Vance, Jr., Esq. is permitted to appear before this Court on behalf of Plaintiffs for all purposes relating to this action. The Clerk is directed to provide Notice of Electronic Filings to Robert T. Vance, Jr., Esq. at rvance@vancelf.com. Signed by Judge Rodolfo A Ruiz on 2/18/2020. (mhn) (Entered: 02/18/2020) |
| 02/27/2020 | 11 | ORDER TO PERFECT SERVICE. On or before April 27, 2020, Plaintiff shall perfect service upon Defendants or show good cause as to why this action should not be dismissed for failure to perfect service of process. *See attached document for full details*. Signed by Judge Rodolfo A Ruiz on 2/27/2020. (mhn) (Entered: 02/27/2020) |
| 03/25/2020 | 12 | WAIVER OF SERVICE Returned Executed by Luz Clarita Sanchez, Gertrudis Veloz Gomez, Manuel Sterling, Domingo Mejia, Maria Altagracia Calderon, Yefry Sierra Doroteo, Maria Magdalena Alvarez Galvez, Emely Sierra, Annoris Morales Jimenez, Carlos Manuel Alcantara, Juanita Coffils, Nanci Avila, Francisco Herrera de la Cruz, Carline Paul, Ariana Marrero Altagracia, Rafael Mancebo, Ruth D. Sena, Ana Rosa Almonte, Jhonsi Arrollo, Ana Alvarez Monte, Domitila Mejia, Dania Chala, Edi Luis Jean, Maria Jimenez, Severa Jimenez. Fanjul Corp. waiver sent on 3/20/2020, answer due 5/19/2020. (Curphey, Shauna) (Entered: 03/25/2020) |
| 03/27/2020 | 13 | MOTION to Appear Pro Hac Vice, Consent to Designation, and Request to Electronically Receive Notices of Electronic Filing for Robert M. Palumbos. Filing Fee $ 200.00 Receipt # AFLSDC-12663132 by Fanjul Corp.. Attorney Richard David Shane added to party Fanjul Corp.(pty:dft). Responses due by 4/10/2020 (Shane, Richard) (Entered: 03/27/2020) |
| 03/27/2020 | 14 | PAPERLESS ORDER granting 13 Defendant Fanjul Corp.'s Motion to Appear Pro Hac Vice, Consent to Designation, and Request to Electronically Receive Notices of Electronic Filing. Attorney Robert M. Palumbos, Esq. is permitted to appear before this Court on behalf of Defendant Fanjul Corp. for all purposes relating to this action. The Clerk is directed to provide Notice of Electronic Filings to Robert M. Palumbos, Esq. at RMPalumbos@duanemorris.com. Signed by Judge Rodolfo A Ruiz on 3/27/2020. (mhn) (Entered: 03/27/2020) |
| 03/27/2020 | 15 | ORDER REQUIRING COMBINED RESPONSES. Defendant Fanjul Corp. shall not file a response until Defendant Central Romana Corporation, Ltd. has been served with process. After all Defendants have been served, Defendants shall submit a **single combined response or separate answers** within the time allowed for the last-served Defendant to respond. *See attached document for full details*. Signed by Judge Rodolfo A Ruiz on 3/27/2020. (mhn) (Entered: 03/27/2020) |
| 03/31/2020 | 16 | Defendant's Corporate Disclosure Statement by Fanjul Corp. (Shane, Richard) (Entered: 03/31/2020) |

8a

| | | |
|---|---|---|
| | | Plaintiffs' MOTION to Amend/Correct Order to Show Cause, by Carlos Manuel Alcantara, Ana Rosa Almonte, Ariana Marrero Altagracia, Maria Magdalena Alvarez Galvez, Jhonsi Arrollo, Nanci Avila, Maria Altagracia Calderon, Dania Chala, Juanita Coffils, Yefry Sierra Doroteo, Gertrudis Veloz Gomez, Francisco Herrera de la Cruz, Edi Luis Jean, Annoris Morales Jimenez, Maria Jimenez, Severa Jimenez, Rafael Mancebo, Domingo Mejia, Domitila Mejia, Ana Alvarez Monte, Carline Paul, Luz Clarita Sanchez, Ruth D. Sena, Emely Sierra, Manuel Sterling. Responses due by 5/6/2020 (Attachments: # 1 Memorandum, # 2 Exhibit Dominican Republic Presidential Decree No. 148-20, # 3 Exhibit Council of the Judiciary Power of the Dominican Republic Reminder of Preventive Measures Against COVID-19, # 4 Text of Proposed Order)(Curphey, Shauna) (Entered: 04/22/2020) |
| 04/22/2020 | 18 | NOTICE of Change of Address by Shauna M. Curphey (Curphey, Shauna) (Entered: 04/22/2020) |
| 04/23/2020 | 19 | CLERK'S NOTICE - Attorney Admissions has updated the contact information for attorney Shauna M. Curphey re 18 Notice of Change of Address. (cw) (Entered: 04/23/2020) |
| 04/23/2020 | 20 | PAPERLESS ORDER granting 17 Plaintiffs' Motion to Amend 11 Order to Perfect Service. On or before **May 29, 2020**, Plaintiffs shall serve Defendant Central Romana Corporation, Ltd. with process. Failure to do so will result in a **dismissal** *without prejudice* as to the claims against Defendant Central Romana Corporation, Ltd. and without further notice. Signed by Judge Rodolfo A Ruiz on 4/23/2020. (mhn) (Entered: 04/23/2020) |
| 05/29/2020 | 21 | Second MOTION to Amend/Correct 11 Order to Show Cause, by Carlos Manuel Alcantara, Ana Rosa Almonte, Ariana Marrero Altagracia, Maria Magdalena Alvarez Galvez, Jhonsi Arrollo, Nanci Avila, Maria Altagracia Calderon, Dania Chala, Juanita Coffils, Yefry Sierra Doroteo, Gertrudis Veloz Gomez, Francisco Herrera de la Cruz, Edi Luis Jean, Annoris Morales Jimenez, Maria Jimenez, Severa Jimenez, Rafael Mancebo, Domingo Mejia, Domitila Mejia, Ana Alvarez Monte, Carline Paul, Luz Clarita Sanchez, Ruth D. Sena, Emely Sierra, Manuel Sterling. Responses due by 6/12/2020 (Attachments: # 1 Memorandum, # 2 Exhibit Dominican Republic Presidential Decree No. 160-20, # 3 Exhibit Exhibit Council of the Judiciary Power of the Dominican Republic Reminder of Preventive Measures Against COVID-19, # 4 Text of Proposed Order)(Curphey, Shauna) (Entered: 05/29/2020) |
| 05/29/2020 | 22 | PAPERLESS ORDER granting 21 Plaintiffs' Motion to Amend 20 Amended Order to Perfect Service. On or before **July 15, 2020**, Plaintiffs shall serve Defendant Central Romana Corporation, Ltd. with process. Failure to do so will result in a **dismissal** *without prejudice* as to the claims against Defendant Central Romana Corporation, Ltd. and without further notice. Signed by Judge Rodolfo A Ruiz on 5/29/2020. (mhn) -Modified text on 5/29/2020 (gp). (Entered: 05/29/2020) |
| 05/29/2020 | 23 | ORDER ADMINISTRATIVELY CLOSING CASE. The above-styled action is administratively CLOSED without prejudice to the parties to file a *Motion to Reopen* after Plaintiffs have perfected service of process on Defendant Central Romana Corporation, Ltd., or if otherwise necessary. For the avoidance of doubt, Plaintiffs must still serve Defendant Central Romana Corporation, Ltd. with process on or before **July 15, 2020** or show good cause for their failure to do so. Signed by Judge Rodolfo A Ruiz on 5/29/2020. *See attached document for full details*. (mhn) (Entered: 05/29/2020) |
| 07/15/2020 | 24 | CERTIFICATE OF SERVICE by Carlos Manuel Alcantara, Ana Rosa Almonte, Ariana Marrero Altagracia, Maria Magdalena Alvarez Galvez, Jhonsi Arrollo, Nanci Avila, Maria Altagracia Calderon, Dania Chala, Juanita Coffils, Yefry Sierra Doroteo, Gertrudis Veloz Gomez, Francisco Herrera de la Cruz, Edi Luis Jean, Annoris Morales Jimenez, Maria Jimenez, Severa Jimenez, Rafael Mancebo, Domingo Mejia, Domitila Mejia, Ana Alvarez |

on Defendant *Central Romana Corp., Ltd.* (Curphey, Shauna) (Entered: 07/15/2020)

| | | |
|---|---|---|
| 07/15/2020 | 25 | SUMMONS (Affidavit) Returned Executed for Service Abroad by Luz Clarita Sanchez, Gertrudis Veloz Gomez, Manuel Sterling, Domingo Mejia, Maria Altagracia Calderon, Yefry Sierra Doroteo, Maria Magdalena Alvarez Galvez, Emely Sierra, Annoris Morales Jimenez, Carlos Manuel Alcantara, Juanita Coffils, Nanci Avila, Francisco Herrera de la Cruz, Carline Paul, Ariana Marrero Altagracia, Rafael Mancebo, Ruth D. Sena, Ana Rosa Almonte, Jhonsi Arrollo, Ana Alvarez Monte, Domitila Mejia, Dania Chala, Edi Luis Jean, Maria Jimenez, Severa Jimenez. Central Romana Corporation, Ltd. served on 7/8/2020, answer due 7/29/2020.(See DE# 24 for image). (jas) (Entered: 07/16/2020) |
| 07/16/2020 | 26 | Clerks Notice to Filer re 24 Certificate of Service. **Wrong Event Selected**; ERROR - The Filer selected the wrong event. The document was re-docketed by the Clerk, see DE# 24 . It is not necessary to refile this document. (jas) (Entered: 07/16/2020) |
| 07/28/2020 | 27 | MOTION to Reopen Case by Carlos Manuel Alcantara, Ana Rosa Almonte, Ariana Marrero Altagracia, Maria Magdalena Alvarez Galvez, Jhonsi Arrollo, Nanci Avila, Maria Altagracia Calderon, Dania Chala, Juanita Coffils, Yefry Sierra Doroteo, Gertrudis Veloz Gomez, Francisco Herrera de la Cruz, Edi Luis Jean, Annoris Morales Jimenez, Maria Jimenez, Severa Jimenez, Rafael Mancebo, Domingo Mejia, Domitila Mejia, Ana Alvarez Monte, Carline Paul, Luz Clarita Sanchez, Ruth D. Sena, Emely Sierra, Manuel Sterling. (Attachments: # 1 Exhibit, # 2 Exhibit, # 3 Text of Proposed Order)(Curphey, Shauna) (Entered: 07/28/2020) |
| 08/06/2020 | 28 | PAPERLESS ORDER granting 27 Plaintiffs' Motion to Reopen Case. This case is REOPENED. Defendants shall submit a **single combined response or separate answers** on or before **August 26, 2020**. Signed by Judge Rodolfo A. Ruiz, II on 8/6/2020. (as03) (Entered: 08/06/2020) |
| 08/21/2020 | 29 | Unopposed MOTION for Extension of Time to File Response/Reply/Answer as to 1 Complaint,, by Fanjul Corp.. (Attachments: # 1 Exhibit proposed order)(Shane, Richard) (Entered: 08/21/2020) |
| 08/25/2020 | 30 | PAPERLESS ORDER granting 29 Defendants' Unopposed Joint Motion for Extension of Time to Respond to Plaintiff's Complaint. Defendants shall submit a single combined response or separate answers on or before **September 9, 2020**. Signed by Judge Rodolfo A. Ruiz, II on 8/25/2020. (as03) (Entered: 08/25/2020) |
| 09/09/2020 | 31 | MOTION to Dismiss with Prejudice 1 Complaint,, by Fanjul Corp.. Responses due by 9/23/2020 (Attachments: # 1 Declaration of Dr. Leo Matos-Garcia, # 2 Affidavit of Wanda Perdomo)(Shane, Richard) (Entered: 09/09/2020) |
| 09/18/2020 | 32 | Unopposed MOTION for Extension of Time to File Response/Reply/Answer as to 31 MOTION to Dismiss with Prejudice 1 Complaint,, by Carlos Manuel Alcantara, Ana Rosa Almonte, Ariana Marrero Altagracia, Maria Magdalena Alvarez Galvez, Jhonsi Arrollo, Nanci Avila, Maria Altagracia Calderon, Dania Chala, Juanita Coffils, Yefry Sierra Doroteo, Gertrudis Veloz Gomez, Francisco Herrera de la Cruz, Edi Luis Jean, Annoris Morales Jimenez, Maria Jimenez, Severa Jimenez, Rafael Mancebo, Domingo Mejia, Domitila Mejia, Ana Alvarez Monte, Carline Paul, Luz Clarita Sanchez, Ruth D. Sena, Emely Sierra, Manuel Sterling. (Attachments: # 1 Text of Proposed Order)(Curphey, Shauna) (Entered: 09/18/2020) |
| 09/21/2020 | 33 | PAPERLESS ORDER granting 32 Unopposed Motion for Extension of Time for Plaintiffs to Respond to Defendants' Motion to Dismiss Plaintiffs' Complaint. Plaintiffs shall file their response to the motion to dismiss on or before **October 7, 2020**. Signed by Judge Rodolfo A. Ruiz, II on 9/21/2020. (as03) (Entered: 09/21/2020) |

10a

| Date | No. | Description |
|---|---|---|
| 09/21/2020 | 34 | NOTICE of Attorney Appearance by Joseph Peter Klock, Jr on behalf of Central Romana Corporation, Ltd.. Attorney Joseph Peter Klock, Jr added to party Central Romana Corporation, Ltd.(pty:dft). (Klock, Joseph) (Entered: 09/21/2020) |
| 09/21/2020 | 35 | NOTICE of Attorney Appearance by JuanCarlos Antorcha on behalf of Central Romana Corporation, Ltd.. Attorney JuanCarlos Antorcha added to party Central Romana Corporation, Ltd.(pty:dft). (Antorcha, JuanCarlos) (Entered: 09/21/2020) |
| 09/22/2020 | 36 | NOTICE of Attorney Appearance by Susan Elizabeth Klock on behalf of Central Romana Corporation, Ltd.. Attorney Susan Elizabeth Klock added to party Central Romana Corporation, Ltd.(pty:dft). (Klock, Susan) (Entered: 09/22/2020) |
| 10/05/2020 | 37 | Unopposed MOTION for Extension of Time to File Response/Reply/Answer as to 31 MOTION to Dismiss with Prejudice 1 Complaint,, by Carlos Manuel Alcantara, Ana Rosa Almonte, Ariana Marrero Altagracia, Maria Magdalena Alvarez Galvez, Jhonsi Arrollo, Nanci Avila, Maria Altagracia Calderon, Dania Chala, Juanita Coffils, Yefry Sierra Doroteo, Gertrudis Veloz Gomez, Francisco Herrera de la Cruz, Edi Luis Jean, Annoris Morales Jimenez, Maria Jimenez, Severa Jimenez, Rafael Mancebo, Domingo Mejia, Domitila Mejia, Ana Alvarez Monte, Carline Paul, Luz Clarita Sanchez, Ruth D. Sena, Emely Sierra, Manuel Sterling. (Attachments: # 1 Text of Proposed Order)(Curphey, Shauna) (Entered: 10/05/2020) |
| 10/07/2020 | 38 | PAPERLESS ORDER granting 37 Unopposed Motion for Further Extension of Time for Plaintiffs to Answer Fanjul Corp.'s and Central Romana Corporation, Ltd.'s Motion to Dismiss Plaintiffs' Complaint. Plaintiffs shall file their response to the Motion to Dismiss on or before **October 21, 2020**. Signed by Judge Rodolfo A. Ruiz, II on 10/7/2020. (as03) (Entered: 10/07/2020) |
| 10/21/2020 | 39 | RESPONSE in Opposition re 31 MOTION to Dismiss with Prejudice 1 Complaint,, filed by Carlos Manuel Alcantara, Ana Rosa Almonte, Ariana Marrero Altagracia, Maria Magdalena Alvarez Galvez, Jhonsi Arrollo, Nanci Avila, Maria Altagracia Calderon, Dania Chala, Juanita Coffils, Yefry Sierra Doroteo, Gertrudis Veloz Gomez, Francisco Herrera de la Cruz, Edi Luis Jean, Annoris Morales Jimenez, Maria Jimenez, Severa Jimenez, Rafael Mancebo, Domingo Mejia, Domitila Mejia, Ana Alvarez Monte, Carline Paul, Luz Clarita Sanchez, Ruth D. Sena, Emely Sierra, Manuel Sterling. Replies due by 10/28/2020. (Attachments: # 1 Memorandum of Law, # 2 Exhibit, # 3 Text of Proposed Order) (Curphey, Shauna) (Entered: 10/21/2020) |
| 10/23/2020 | 40 | Unopposed MOTION for Extension of Time to File Response/Reply/Answer as to 39 Response in Opposition to Motion,, by Fanjul Corp.. (Attachments: # 1 Exhibit proposed order)(Shane, Richard) (Entered: 10/23/2020) |
| 10/23/2020 | 41 | PAPERLESS ORDER granting 40 Defendants' Unopposed Joint Motion for Extension of Time to File Reply in Support of Motion to Dismiss. Defendants shall file their reply on or before **November 9, 2020**. Signed by Judge Rodolfo A. Ruiz, II on 10/23/2020. (as03) (Entered: 10/23/2020) |
| 10/26/2020 | 42 | Order Requiring Joint Scheduling Report. Joint Scheduling Report due by 11/16/2020. Signed by Judge Rodolfo A. Ruiz, II on 10/26/2020. *See attached document for full details*. (as03) (Main Document 42 replaced on 10/27/2020) (gp). (Entered: 10/26/2020) |
| 11/09/2020 | 43 | REPLY to Response to Motion re 31 MOTION to Dismiss with Prejudice 1 Complaint,, filed by Fanjul Corp.. (Shane, Richard) (Entered: 11/09/2020) |
| 11/12/2020 | 44 | Unopposed MOTION to Stay re 42 Order Requiring Joint Scheduling Report by Fanjul Corp.. Responses due by 11/30/2020 (Shane, Richard) (Entered: 11/12/2020) |
| 11/13/2020 | 45 | PAPERLESS ORDER granting 44 Fanjul Corp.'s and Central Romana Corporation, Ltd.'s |

11a

| | | the parties' deadline to file their joint scheduling report are STAYED until this Court issues an order on Defendants' Motion to Dismiss [ECF No. 31]. Signed by Judge Rodolfo A. Ruiz, II on 11/13/2020. (as03) (Entered: 11/13/2020) |
|---|---|---|
| 11/16/2020 | 46 | Defendant's Certificate of Other Affiliates *DEFENDANT FANJUL CORP.S CERTIFICATE OF INTERESTED PARTIES* by Fanjul Corp. identifying Other Affiliate Agro-Industrial Management, Inc. for Fanjul Corp. (Shane, Richard) (Entered: 11/16/2020) |
| 01/10/2021 | 47 | Plaintiff's MOTION for Leave to File *SUPPLEMENT TO PLAINTIFFS RESPONSE IN OPPOSITION TO DEFENDANTS MOTION TO DISMISS PLAINTIFFS COMPLAINT* by Carlos Manuel Alcantara, Ana Rosa Almonte, Ariana Marrero Altagracia, Maria Magdalena Alvarez Galvez, Jhonsi Arrollo, Nanci Avila, Maria Altagracia Calderon, Dania Chala, Juanita Coffils, Yefry Sierra Doroteo, Gertrudis Veloz Gomez, Francisco Herrera de la Cruz, Edi Luis Jean, Annoris Morales Jimenez, Maria Jimenez, Severa Jimenez, Rafael Mancebo, Domingo Mejia, Domitila Mejia, Ana Alvarez Monte, Carline Paul, Luz Clarita Sanchez, Ruth D. Sena, Emely Sierra, Manuel Sterling. (Attachments: # 1 Memorandum, # 2 Supplement, # 3 Exhibit, # 4 Text of Proposed Order)(Curphey, Shauna) (Entered: 01/10/2021) |
| 01/13/2021 | 48 | RESPONSE in Opposition re 47 Plaintiff's MOTION for Leave to File *SUPPLEMENT TO PLAINTIFFS RESPONSE IN OPPOSITION TO DEFENDANTS MOTION TO DISMISS PLAINTIFFS COMPLAINT* filed by Fanjul Corp.. Replies due by 1/20/2021. (Shane, Richard) (Entered: 01/13/2021) |
| 01/22/2021 | 49 | REPLY to Defendants' Opposition to Plaintiffs Motion re 48 RESPONSE in Opposition re 47 Plaintiff's MOTION for Leave to File SUPPLEMENT TO PLAINTIFFS RESPONSE IN OPPOSITION TO DEFENDANTS MOTION TO DISMISS PLAINTIFFS COMPLAINT filed by Fanjul Corp. by Carlos Manuel Alcantara,, Ana Rosa Almonte, Ariana Marrero Altagracia, Maria Magdalena Alvarez Galvez, Jhonsi Arrollo, Nanci Avila, Maria Altagracia Calderon, Dania Chala, Juanita Coffils, Yefry Sierra Doroteo, Gertrudis Veloz Gomez, Francisco Herrera de la Cruz, Edi Luis Jean, Annoris Morales Jimenez, Maria Jimenez, Severa Jimenez, Rafael Mancebo, Domingo Mejia, Domitila Mejia, Ana Alvarez Monte, Carline Paul, Luz Clarita Sanchez, Ruth D. Sena, Emely Sierra, Manuel Sterling. (Curphey, Shauna) Modified document link on 1/25/2021 (ebz). (Entered: 01/22/2021) |
| 01/22/2021 | 50 | Clerks Notice to Filer re 49 Reply to Response to Motion,,,,. **Incorrect Document Link**; ERROR - The filed document was not correctly linked to the related docket entry. The correction was made by the Clerk. It is not necessary to refile this document but future filings must comply with the instructions in the CM/ECF Attorney User's Manual. (ebz) (Entered: 01/25/2021) |
| 03/27/2021 | 51 | PAPERLESS ORDER requiring Defendant Fanjul Corp. to supplement 31 Motion to Dismiss Plaintiffs' Complaint. Defendants seek dismissal of Plaintiffs' Complaint based on forum non conveniens, but Defendant Fanjul Corp. has not stipulated that it consents to the jurisdiction of the courts of the Dominican Republic and is amenable to process in the Dominican Republic. The Motion to Dismiss only states that "Central Romana...consents and stipulates that it will submit to the jurisdiction of the courts of the Dominican Republic as if the case had been filed in the Dominican Republic on January 27, 2020..." Mot. at 12. To establish the availability of the Dominican Republic as an alternative forum, Defendants are required to show that *all* Defendants are subject to the jurisdiction of the Dominican courts. *See In re W. Carribean Crew Members*, No. 07-22015-CIV, 2008 WL 11331752, at *4 (S.D. Fla. Oct. 1, 2008) ("The moving defendant must establish that an adequate and available forum exists as to all defendants if there are several."); *Rodriguez v. Ocean Motion Watersports, Ltd.*, No. 13-21606-CIV, 2014 WL 11880982, at *3 (S.D. Fla. Mar. |

12a

| | | |
|---|---|---|
| | | it...Accordingly, by **March 29, 2021**, Defendant Fanjul Corp. shall supplement the Motion indicating whether the Dominican courts can assert jurisdiction over it and whether it will submit to the jurisdiction of the courts in the Dominican Republic as if the case had been filed there on January 27, 2020 as Central Romana has done. Signed by Judge Rodolfo A. Ruiz, II on 3/27/2021. (as03) (Entered: 03/27/2021) |
| 03/29/2021 | 52 | SUPPLEMENT to 51 Order,,,,,, *Defendant Fanjul Corp.'s Supplement to the Motion to Dismiss* by Fanjul Corp. (Shane, Richard) (Entered: 03/29/2021) |
| 04/12/2021 | 53 | ORDER granting 31 Motion to Dismiss; denying as moot 47 Motion for Leave to File. Signed by Judge Rodolfo A. Ruiz, II on 4/12/2021. *See attached document for full details.* (as03) (Entered: 04/12/2021) |
| 04/30/2021 | 54 | Unopposed MOTION for Extension of Time to Amend 1 Complaint,, by Carlos Manuel Alcantara, Ana Rosa Almonte, Ariana Marrero Altagracia, Maria Magdalena Alvarez Galvez, Jhonsi Arrollo, Nanci Avila, Maria Altagracia Calderon, Dania Chala, Juanita Coffils, Yefry Sierra Doroteo, Gertrudis Veloz Gomez, Francisco Herrera de la Cruz, Edi Luis Jean, Annoris Morales Jimenez, Maria Jimenez, Severa Jimenez, Rafael Mancebo, Domingo Mejia, Domitila Mejia, Ana Alvarez Monte, Carline Paul, Luz Clarita Sanchez, Ruth D. Sena, Emely Sierra, Manuel Sterling. Responses due by 5/14/2021 (Attachments: # 1 Text of Proposed Order)(Curphey, Shauna) (Entered: 04/30/2021) |
| 04/30/2021 | 55 | PAPERLESS ORDER granting 54 Plaintiffs' Unopposed Motion for Extension of Time to File First Amended Complaint. Plaintiffs shall file their First Amended Complaint on or before **May 10, 2021**. Signed by Judge Rodolfo A. Ruiz, II on 4/30/2021. (as03) (Entered: 04/30/2021) |
| 05/10/2021 | 56 | First AMENDED COMPLAINT against All Plaintiffs, filed by Luz Clarita Sanchez, Gertrudis Veloz Gomez, Manuel Sterling, Domingo Mejia, Maria Altagracia Calderon, Yefry Sierra Doroteo, Maria Magdalena Alvarez Galvez, Emely Sierra, Annoris Morales Jimenez, Carlos Manuel Alcantara, Juanita Coffils, Nanci Avila, Francisco Herrera de la Cruz, Carline Paul, Ariana Marrero Altagracia, Rafael Mancebo, Ruth D. Sena, Ana Rosa Almonte, Jhonsi Arrollo, Ana Alvarez Monte, Domitila Mejia, Dania Chala, Edi Luis Jean, Maria Jimenez, Severa Jimenez. (Attachments: # 1 Exhibit A, # 2 Exhibit B, # 3 Exhibit C, # 4 Exhibit D)(Curphey, Shauna) (Entered: 05/10/2021) |
| 05/12/2021 | 57 | Order Requiring Joint Scheduling Report. Joint Scheduling Report due by 6/7/2021. Signed by Judge Rodolfo A. Ruiz, II on 5/12/2021. *See attached document for full details.* (as03) (Entered: 05/12/2021) |
| 05/14/2021 | 58 | Unopposed Motion for Extension of Time to File Response/Reply/Answer as to 56 Amended Complaint/Amended Notice of Removal by Fanjul Corp.. Responses due by 5/28/2021 (Shane, Richard) Modified Relief on 5/14/2021 (ls). (Entered: 05/14/2021) |
| 05/14/2021 | 59 | Unopposed MOTION to Stay re 57 Order Requiring Joint Scheduling Report by Fanjul Corp.. Responses due by 5/28/2021 (Shane, Richard) (Entered: 05/14/2021) |
| 05/14/2021 | 60 | Clerks Notice to Filer re 58 Defendant's MOTION for Extension of Time to respond to Plaintiffs' Amended Complaint re 56 Amended Complaint/Amended Notice of Removal,,. **Wrong Motion Relief(s) Selected**; ERROR - The Filer selected the wrong motion relief(s) when docketing the motion. The correction was made by the Clerk. It is not necessary to refile this document but future motions filed must include applicable reliefs. (ls) (Entered: 05/14/2021) |
| 05/17/2021 | 61 | PAPERLESS ORDER granting 58 Defendant Fanjul Corp.'s Unopposed Motion for Extension of Time to Respond to Plaintiffs' Amended Complaint. Defendant shall file its response to the Amended Complaint on or before **June 7, 2021**. Signed by Judge Rodolfo A. Ruiz, II on 5/17/2021. (as03) (Entered: 05/17/2021) |

13a

| | | |
|---|---|---|
| | 62 | PAPERLESS ORDER granting 39 Defendant Fanjul Corp.'s unopposed Motion to Stay Deadline for Joint Scheduling Report. Signed by Judge Rodolfo A. Ruiz, II on 5/17/2021. (as03) (Entered: 05/17/2021) |
| 06/07/2021 | 63 | Defendant's MOTION to Dismiss with Prejudice 56 Amended Complaint/Amended Notice of Removal,, by Fanjul Corp.. Responses due by 6/21/2021 (Attachments: # 1 Exhibit Civil Code of the Dominican Republic)(Shane, Richard) (Entered: 06/07/2021) |
| 06/08/2021 | 64 | ORDER REFERRING 63 Defendant's MOTION to Dismiss with Prejudice. Motion referred to Judge Bruce E. Reinhart. Signed by Judge Rodolfo A. Ruiz, II on 6/8/2021. *See attached document for full details.* (as03) (Entered: 06/08/2021) |
| 06/17/2021 | 65 | Joint MOTION for Extension of Time to File Response/Reply/Answer as to 63 Defendant's MOTION to Dismiss with Prejudice 56 Amended Complaint/Amended Notice of Removal,, by Fanjul Corp.. (Shane, Richard) (Entered: 06/17/2021) |
| 06/18/2021 | 66 | PAPERLESS ORDER granting 65 Joint Motion for Extension of Time to File Response/Reply to Motion to Dismiss. Plaintiffs' Response shall be filed no later than 7/9/2021. Defendants' Reply shall be filed no later than 7/23/2021. Signed by Magistrate Judge Bruce E. Reinhart on 6/18/2021. (jgy) (Entered: 06/18/2021) |
| 07/09/2021 | 67 | RESPONSE in Opposition re 63 Defendant's MOTION to Dismiss with Prejudice 56 Amended Complaint/Amended Notice of Removal,, *and CROSS MOTION for Leave to Conduct Jurisdictional Discovery* filed by Carlos Manuel Alcantara, Ana Rosa Almonte, Ariana Marrero Altagracia, Maria Magdalena Alvarez Galvez, Jhonsi Arrollo, Nanci Avila, Maria Altagracia Calderon, Dania Chala, Juanita Coffils, Yefry Sierra Doroteo, Gertrudis Veloz Gomez, Francisco Herrera de la Cruz, Edi Luis Jean, Annoris Morales Jimenez, Maria Jimenez, Severa Jimenez, Rafael Mancebo, Domingo Mejia, Domitila Mejia, Ana Alvarez Monte, Carline Paul, Luz Clarita Sanchez, Ruth D. Sena, Emely Sierra, Manuel Sterling. Replies due by 7/16/2021. (Attachments: # 1 Memorandum, # 2 Exhibit A, # 3 Exhibit B, # 4 Text of Proposed Order)(Curphey, Shauna) (Entered: 07/09/2021) |
| 07/09/2021 | 68 | Cross-MOTION for Leave to Conduct Jurisdictional Discovery on the Issue of Vicarious Liability and to Defer Ruling on Defendant's 63 Motion to Dismiss the Amended Complaint by Carlos Manuel Alcantara, Ana Rosa Almonte, Ariana Marrero Altagracia, Maria Magdalena Alvarez Galvez, Jhonsi Arrollo, Nanci Avila, Maria Altagracia Calderon, Dania Chala, Juanita Coffils, Yefry Sierra Doroteo, Gertrudis Veloz Gomez, Francisco Herrera de la Cruz, Edi Luis Jean, Annoris Morales Jimenez, Maria Jimenez, Severa Jimenez, Rafael Mancebo, Domingo Mejia, Domitila Mejia, Ana Alvarez Monte, Carline Paul, Luz Clarita Sanchez, Ruth D. Sena, Emely Sierra, Manuel Sterling. See DE 67 for image. (kpe) (Entered: 07/12/2021) |
| 07/12/2021 | 69 | Clerks Notice to Filer re 67 Response in Opposition to Motion. **Two or More Document Events Filed as One**; ERROR - Only one event was selected by the Filer but more than one event was applicable to the document filed. The docket entry was corrected by the Clerk, see DE 68 Cross-Motion for Leave. It is not necessary to refile this document but in the future, the Filer must select all applicable events. (kpe) (Entered: 07/12/2021) |
| 07/12/2021 | 70 | ORDER REFERRING 68 MOTION Cross-Motion for Leave to Conduct Jurisdictional Discovery on the Issue of Vicarious Liability and to Defer Ruling on Defendants Motion to Dismiss the Amended Complaint. Motion referred to Judge Bruce E. Reinhart. Signed by Judge Rodolfo A. Ruiz, II on 7/12/2021. *See attached document for full details.* (as03) (Entered: 07/12/2021) |
| 07/23/2021 | 71 | REPLY to Response to Motion re 63 Defendant's MOTION to Dismiss with Prejudice 56 Amended Complaint/Amended Notice of Removal,, filed by Fanjul Corp.. (Shane, Richard) (Entered: 07/23/2021) |

14a

| 07/23/2021 | 72 | RESPONSE in Opposition re 68 MOTION Cross-Motion for Leave to Conduct Jurisdictional Discovery on the Issue of Vicarious Liability and to Defer Ruling on Defendants Motion to Dismiss the Amended Complaint re 63 Defendant's MOTION to Dismiss with Prejudice 56 Amende filed by Fanjul Corp.. Replies due by 7/30/2021. (Shane, Richard) (Entered: 07/23/2021) |
|---|---|---|
| 07/30/2021 | 73 | REPLY to Response to Motion re 68 MOTION Cross-Motion for Leave to Conduct Jurisdictional Discovery on the Issue of Vicarious Liability and to Defer Ruling on Defendants Motion to Dismiss the Amended Complaint re 63 Defendant's MOTION to Dismiss with Prejudice 56 Amende filed by Carlos Manuel Alcantara, Ana Rosa Almonte, Ariana Marrero Altagracia, Maria Magdalena Alvarez Galvez, Jhonsi Arrollo, Nanci Avila, Maria Altagracia Calderon, Dania Chala, Juanita Coffils, Yefry Sierra Doroteo, Gertrudis Veloz Gomez, Francisco Herrera de la Cruz, Edi Luis Jean, Annoris Morales Jimenez, Maria Jimenez, Severa Jimenez, Rafael Mancebo, Domingo Mejia, Domitila Mejia, Ana Alvarez Monte, Carline Paul, Luz Clarita Sanchez, Ruth D. Sena, Emely Sierra. (Curphey, Shauna) (Entered: 07/30/2021) |
| 08/04/2021 | 74 | REPORT AND RECOMMENDATIONS re 63 Defendant Fanjul's MOTION to Dismiss with Prejudice 56 Amended Complaint/Amended Notice of Removal, Plaintiffs' 68 Cross-Motion for Leave to Conduct Jurisdictional Discovery on the Issue of Vicarious Liability and to Defer Ruling on Defendant's Motion to Dismiss the Amended Complaint. Recommending Defendant Fanjul's 63 Motion to dismiss be GRANTED; and, Plaintiffs' 68 Cross-Motion for Leave to Conduct Jurisdictional Discovery on the Issue of Vicarious Liability and to Defer Ruling on Defendant's Motion to Dismiss the Amended Complaint be DENIED. Objections to R&R due by 8/18/2021 Signed by Magistrate Judge Bruce E. Reinhart on 8/4/2021. *See attached document for full details*. (jas) (Entered: 08/04/2021) |
| 08/18/2021 | 75 | OBJECTIONS to 74 Report and Recommendations by Carlos Manuel Alcantara, Ana Rosa Almonte, Ariana Marrero Altagracia, Maria Magdalena Alvarez Galvez, Jhonsi Arrollo, Nanci Avila, Maria Altagracia Calderon, Dania Chala, Juanita Coffils, Yefry Sierra Doroteo, Gertrudis Veloz Gomez, Francisco Herrera de la Cruz, Edi Luis Jean, Annoris Morales Jimenez, Maria Jimenez, Severa Jimenez, Rafael Mancebo, Domingo Mejia, Domitila Mejia, Ana Alvarez Monte, Carline Paul, Luz Clarita Sanchez, Ruth D. Sena, Emely Sierra, Manuel Sterling. (Curphey, Shauna) (Entered: 08/18/2021) |
| 08/31/2021 | 76 | ORDER AFFIRMING AND ADOPTING 74 REPORT AND RECOMMENDATION, DENYING JURISDICTIONAL DISCOVERY, AND DISMISSING CASE. Signed by Judge Rodolfo A. Ruiz, II on 8/31/2021. *See attached document for full details*. (ob) (Entered: 08/31/2021) |
| 09/10/2021 | 77 | Notice of Appeal as to 76 Order on Report and Recommendations, 53 Order on Motion to Dismiss, Order on Motion for Leave to File by Carlos Manuel Alcantara, Ana Rosa Almonte, Ariana Marrero Altagracia, Maria Magdalena Alvarez Galvez, Jhonsi Arrollo, Nanci Avila, Maria Altagracia Calderon, Dania Chala, Juanita Coffils, Yefry Sierra Doroteo, Gertrudis Veloz Gomez, Francisco Herrera de la Cruz, Edi Luis Jean, Annoris Morales Jimenez, Maria Jimenez, Severa Jimenez, Rafael Mancebo, Domingo Mejia, Domitila Mejia, Ana Alvarez Monte, Carline Paul, Luz Clarita Sanchez, Ruth D. Sena, Emely Sierra, Manuel Sterling. Filing fee $ 505.00 receipt number AFLSDC-15002365. Within fourteen days of the filing date of a Notice of Appeal, the appellant must complete the Eleventh Circuit Transcript Order Form regardless of whether transcripts are being ordered [Pursuant to FRAP 10(b)]. For information go to our FLSD website under Transcript Information. (Curphey, Shauna) (Entered: 09/10/2021) |
| 09/13/2021 | | Transmission of Notice of Appeal, Orders under appeal and Docket Sheet to US Court of Appeals re 77 Notice of Appeal, Notice has been electronically mailed. (apz) (Entered: 09/13/2021) |

15a

| | | |
|---|---|---|
| 09/13/2021 | 78 | TRANSCRIPT INFORMATION FORM filed by Carlos Manuel Alcantara, Ana Rosa Almonte, Ariana Marrero Altagracia, Maria Magdalena Alvarez Galvez, Jhonsi Arrollo, Nanci Avila, Maria Altagracia Calderon, Dania Chala, Juanita Coffils, Yefry Sierra Doroteo, Gertrudis Veloz Gomez, Francisco Herrera de la Cruz, Edi Luis Jean, Annoris Morales Jimenez, Maria Jimenez, Severa Jimenez, Rafael Mancebo, Domingo Mejia, Domitila Mejia, Ana Alvarez Monte, Carline Paul, Luz Clarita Sanchez, Ruth D. Sena, Emely Sierra, Manuel Sterling re 77 Notice of Appeal,,,. No Transcript Requested. (Curphey, Shauna) (Entered: 09/13/2021) |
| 09/16/2021 | 79 | Acknowledgment of Receipt of NOA from USCA re 77 Notice of Appeal, filed by Juanita Coffils, Dania Chala, Luz Clarita Sanchez, Ana Alvarez Monte, Gertrudis Veloz Gomez, Yefry Sierra Doroteo, Emely Sierra, Ruth D. Sena, Maria Jimenez, Domingo Mejia, Carline Paul, Manuel Sterling, Domitila Mejia, Severa Jimenez, Jhonsi Arrollo, Maria Magdalena Alvarez Galvez, Maria Altagracia Calderon, Carlos Manuel Alcantara, Edi Luis Jean, Nanci Avila, Ana Rosa Almonte, Annoris Morales Jimenez, Ariana Marrero Altagracia, Francisco Herrera de la Cruz, Rafael Mancebo. Date received by USCA: 9/13/21. USCA Case Number: 21-13130-HH. (hh) (Entered: 09/16/2021) |

**PACER Service Center**

**Transaction Receipt**

11/23/2021 16:19:00

| PACER Login: | rtvancejr | Client Code: | |
|---|---|---|---|
| Description: | Docket Report | Search Criteria: | 9:20-cv-80123-RAR |
| Billable Pages: | 18 | Cost: | 1.80 |

16a

JS 44   (Rev. 06/17) FLSD Revised 06/01/2017

## CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law,  except as provided by local rules of court.  This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet.  *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*  **NOTICE: Attorneys MUST Indicate All Re-filed Cases Below.**

**I. (a)  PLAINTIFFS**  Maria Magdalena Alvarez Galvez, individually and as guardian (See attachment)

**DEFENDANTS**  Fanjul Corporation and Central Romana Corporation, Ltd.

**(b)**  County of Residence of First Listed Plaintiff  Not a U.S Resident
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant  Palm Beach County
*(IN U.S. PLAINTIFF CASES ONLY)*

NOTE:  IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

**(c)**  Attorneys *(Firm Name, Address, and Telephone Number)*

Shauna Curphey, 6300 N. Wickham Road, Ste. 130 #305
Melbourne, FL  32940, 503-241-2848 (see attachment)

Attorneys *(If Known)*

**(d)** Check County Where Action Arose:  ☐ MIAMI- DADE  ☐ MONROE  ☐ BROWARD  ☑ PALM BEACH  ☐ MARTIN  ☐ ST. LUCIE  ☐ INDIAN RIVER  ☐ OKEECHOBEE  ☐ HIGHLANDS

| **II. BASIS OF JURISDICTION** *(Place an "X" in One Box Only)* | | **III. CITIZENSHIP OF PRINCIPAL PARTIES** *(Place an "X" in One Box for Plaintiff)* *(For Diversity Cases Only)* and One Box for Defendant) | | | |
|---|---|---|---|---|---|
| | | | **PTF** **DEF** | | **PTF** **DEF** |
| ☐ 1  U.S. Government Plaintiff | ☑ 3  Federal Question *(U.S. Government Not a Party)* | Citizen of This State | ☐ 1  ☐ 1 | Incorporated *or* Principal Place of Business In This State | ☐ 4  ☐ 4 |
| ☐ 2  U.S. Government Defendant | ☐ 4  Diversity *(Indicate Citizenship of Parties in Item III)* | Citizen of Another State | ☐ 2  ☐ 2 | Incorporated *and* Principal Place of Business In Another State | ☐ 5  ☐ 5 |
| | | Citizen or Subject of a Foreign Country | ☐ 3  ☐ 3 | Foreign Nation | ☐ 6  ☐ 6 |

**IV. NATURE OF SUIT** *(Place an "X" in One Box Only)*          Click here for: Nature of Suit Code Descriptions

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 422 Appeal 28 USC 158 | ☐ 375 False Claims Act |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 365 Personal Injury - Product Liability | ☐ 690 Other | ☐ 423 Withdrawal 28 USC 157 | ☐ 376 Qui Tam (31 USC 3729 (a)) |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 367 Health Care/ Pharmaceutical Personal Injury Product Liability | | | ☐ 400 State Reapportionment |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | | | **PROPERTY RIGHTS** | ☐ 410 Antitrust |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | | | ☐ 820 Copyrights | ☐ 430 Banks and Banking |
| ☐ 151 Medicare Act | | ☐ 368 Asbestos Personal Injury Product Liability | | ☐ 830 Patent | ☐ 450 Commerce |
| ☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans) | ☐ 340 Marine | | | ☐ 835 Patent – Abbreviated New Drug Application | ☐ 460 Deportation |
| | ☐ 345 Marine Product Liability | **PERSONAL PROPERTY** | **LABOR** | ☐ 840 Trademark | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 370 Other Fraud | ☐ 710 Fair Labor Standards Act | **SOCIAL SECURITY** | ☐ 480 Consumer Credit |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability | ☐ 371 Truth in Lending | ☐ 720 Labor/Mgmt. Relations | ☐ 861 HIA (1395ff) | ☐ 490 Cable/Sat TV |
| ☐ 190 Other Contract | ☐ 360 Other Personal Injury | ☐ 380 Other Personal Property Damage | ☐ 740 Railway Labor Act | ☐ 862 Black Lung (923) | ☐ 850 Securities/Commodities/ Exchange |
| ☐ 195 Contract Product Liability | ☐ 362 Personal Injury - Med. Malpractice | ☐ 385 Property Damage Product Liability | ☐ 751 Family and Medical Leave Act | ☐ 863 DIWC/DIWW (405(g)) | ☐ 890 Other Statutory Actions |
| ☐ 196 Franchise | | | ☐ 790 Other Labor Litigation | ☐ 864 SSID Title XVI | ☐ 891 Agricultural Acts |
| | | | ☐ 791 Empl. Ret. Inc. Security Act | ☐ 865 RSI (405(g)) | ☐ 893 Environmental Matters |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | | | ☐ 895 Freedom of Information Act |
| ☐ 210 Land Condemnation | ☐ 440 Other Civil Rights | **Habeas Corpus:** | | **FEDERAL TAX SUITS** | ☐ 896 Arbitration |
| ☐ 220 Foreclosure | ☐ 441 Voting | ☐ 463 Alien Detainee | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 899 Administrative Procedure Act/Review or Appeal of Agency Decision |
| ☐ 230 Rent Lease & Ejectment | ☐ 442 Employment | ☐ 510 Motions to Vacate Sentence | | ☐ 871 IRS—Third Party 26 USC 7609 | |
| ☐ 240 Torts to Land | ☐ 443 Housing/ Accommodations | **Other:** | | | ☐ 950 Constitutionality of State Statutes |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/Disabilities - Employment | ☐ 530 General | | | |
| ☐ 290 All Other Real Property | ☐ 446 Amer. w/Disabilities - Other | ☐ 535 Death Penalty | **IMMIGRATION** | | |
| | ☐ 448 Education | ☐ 540 Mandamus & Other | ☐ 462 Naturalization Application | | |
| | | ☐ 550 Civil Rights | ☐ 465 Other Immigration Actions | | |
| | | ☐ 555 Prison Condition | | | |
| | | ☐ 560 Civil Detainee – Conditions of Confinement | | | |

**V. ORIGIN**  *(Place an "X" in One Box Only)*

☑ 1 Original Proceeding  ☐ 2 Removed from State Court  ☐ 3 Re-filed *(See VI below)*  ☐ 4 Reinstated or Reopened  ☐ 5 Transferred from another district *(specify)*  ☐ 6 Multidistrict Litigation Transfer  ☐ 7 Appeal to District Judge from Magistrate Judgment  ☐ 8 Multidistrict Litigation – Direct File  ☐ 9 Remanded from Appellate Court

| **VI. RELATED/ RE-FILED CASE(S)** | *(See instructions):* a) Re-filed Case ☐YES ☑ NO     b) Related Cases ☐YES ☑ NO | |
|---|---|---|
| | **JUDGE:** | **DOCKET NUMBER:** |

**VII. CAUSE OF ACTION**  Cite the U.S. Civil Statute under which you are filing and Write a Brief Statement of Cause *(Do not cite jurisdictional statutes unless diversity)*:
The Alien Tort Claims Act, 28 U.S.C. §1350

LENGTH OF TRIAL via  5  days estimated (for both sides to try entire case)

| **VIII. REQUESTED IN COMPLAINT:** | ☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23 | **DEMAND $** | CHECK YES only if demanded in complaint: |
|---|---|---|---|
| | | | **JURY DEMAND:**  ☑ Yes  ☐ No |

**ABOVE INFORMATION IS TRUE & CORRECT TO THE BEST OF MY KNOWLEDGE**

DATE  January 27, 2020

SIGNATURE OF ATTORNEY OF RECORD

**FOR OFFICE USE ONLY**

RECEIPT #          AMOUNT          IFP          JUDGE          MAG JUDGE

17a

I.(a) Plaintiffs continued:

Maria Magdalena Alvarez Galvez, individually and as the Guardian of her minor children, Heisha Munoz and Clamil Munoz;
Maria Altagracia Calderon;
Carline Paul;
Domitila Mejia, individually and as the the as the Guardian of her minor grandchildren Erica de la Cruz Mejia, Erik de la Cruz Mejia, Nayeli de la Cruz Mejia and Yeri de la Cruz Mejia;
Severa Jimenez;
Francisco Herrera de la Cruz;
Manuel Sterling;
Ana Alvarez Monte;
Ariana Marrero Altagracia;
Maria Jimenez;
Luz Clarita Sanchez;
Rafael Mancebo;
Carlos Manuel Alcantara;
Ruth D. Sena;
Ana Rosa Almonte;
Annoris Morales Jimenez, individually and as the Guardian of her minor child Eliani Vicente Morales;
Domingo Mejia;
Emely Sierra and Edi Luis Jean, on their own behalf and as the Guardians of their minor children Yeidi Sierra and Andreili Sierra;
Jhonsi Arrollo, individually and as the Guardian of her minor children Jendri Arroyo, Jhosito Arroyo and Jhojan Arroyo;
Gertrudis Veloz Gomez;
Yefry Sierra Doroteo;
Juanita Coffils;
Dania Chala;
Nanci Avila individually and as the Guardian of her minor children Leslie Castillo, Fabela Alcantara and Daniel Alcantara;

I.(c) Plaintiffs' Attorneys continued:

Robert T Vance Jr
Law Offices of Robert T Vance Jr
100 South Broad Street, Suite 1525
Philadelphia, PA  19110
215 557 9550 tel / 215 278 7992 fax

18a

AO 398 (Rev. 01/09) Notice of a Lawsuit and Request to Waive Service of a Summons

# UNITED STATES DISTRICT COURT
### for the
Southern District of Florida
District of

| | | |
|---|---|---|
| Maria Magdalena Alvarez Galvez, et al., | ) | |
| *Plaintiff* | ) | |
| v. | ) | Civil Action No. |
| Fanjul Corp. and Central Romana Corp., Ltd, | ) | |
| *Defendant* | ) | |

## NOTICE OF A LAWSUIT AND REQUEST TO WAIVE SERVICE OF A SUMMONS

To: Alfonso Fanjul Jr., Chairman, President and Director of Central Romana Corp., Ltd.

    *(Name of the defendant or - if the defendant is a corporation, partnership, or association - an officer or agent authorized to receive service)*

**Why are you getting this?**

    A lawsuit has been filed against you, or the entity you represent, in this court under the number shown above. A copy of the complaint is attached.

    This is not a summons, or an official notice from the court. It is a request that, to avoid expenses, you waive formal service of a summons by signing and returning the enclosed waiver. To avoid these expenses, you must return the signed waiver within _____ days *(give at least 30 days, or at least 60 days if the defendant is outside any judicial district of the United States)* from the date shown below, which is the date this notice was sent. Two copies of the waiver form are enclosed, along with a stamped, self-addressed envelope or other prepaid means for returning one copy. You may keep the other copy.

**What happens next?**

    If you return the signed waiver, I will file it with the court. The action will then proceed as if you had been served on the date the waiver is filed, but no summons will be served on you and you will have 60 days from the date this notice is sent (see the date below) to answer the complaint (or 90 days if this notice is sent to you outside any judicial district of the United States).

    If you do not return the signed waiver within the time indicated, I will arrange to have the summons and complaint served on you. And I will ask the court to require you, or the entity you represent, to pay the expenses of making service.

    Please read the enclosed statement about the duty to avoid unnecessary expenses.

    I certify that this request is being sent to you on the date below.

Date: _____

                                  _____
                                  *Signature of the attorney or unrepresented party*

                                  Shauna Curphey
                                  *Printed name*

                                  6300 North Wickham Road
                                  Suite 130 #305
                                  Melbourne, FL 32940
                                  *Address*

                                  scurphey@curpheylaw.com
                                  *E-mail address*

                                  503-241-2848
                                  *Telephone number*

19a

AO 398 (Rev. 01/09) Notice of a Lawsuit and Request to Waive Service of a Summons

# UNITED STATES DISTRICT COURT

for the

Southern District of Florida

| | | |
|---|---|---|
| Maria Magdalena Alvarez Galvez, et al., | ) | |
| *Plaintiff* | ) | |
| v. | ) | Civil Action No. |
| Fanjul Corp. and Central Romana Corp., Ltd, | ) | |
| *Defendant* | ) | |

## NOTICE OF A LAWSUIT AND REQUEST TO WAIVE SERVICE OF A SUMMONS

To:  Alfonso Fanjul Jr., Chairman, President and Director of Central Romana Corp., Ltd.

*(Name of the defendant or - if the defendant is a corporation, partnership, or association - an officer or agent authorized to receive service)*

**Why are you getting this?**

A lawsuit has been filed against you, or the entity you represent, in this court under the number shown above. A copy of the complaint is attached.

This is not a summons, or an official notice from the court.  It is a request that, to avoid expenses, you waive formal service of a summons by signing and returning the enclosed waiver.  To avoid these expenses, you must return the signed waiver within _____ days *(give at least 30 days, or at least 60 days if the defendant is outside any judicial district of the United States)* from the date shown below, which is the date this notice was sent.   Two copies of the waiver form are enclosed, along with a stamped, self-addressed envelope or other prepaid means for returning one copy. You may keep the other copy.

**What happens next?**

If you return the signed waiver, I will file it with the court.  The action will then proceed as if you had been served on the date the waiver is filed, but no summons will be served on you and you will have 60 days from the date this notice is sent (see the date below) to answer the complaint (or 90 days if this notice is sent to you outside any judicial district of the United States).

If you do not return the signed waiver within the time indicated, I will arrange to have the summons and complaint served on you.  And I will ask the court to require you, or the entity you represent, to pay the expenses of making service.

Please read the enclosed statement about the duty to avoid unnecessary expenses.

I certify that this request is being sent to you on the date below.

Date:  _____

_____
*Signature of the attorney or unrepresented party*

Shauna Curphey
*Printed name*

6300 North Wickham Road
Suite 130 #305
Melbourne, FL 32940
*Address*

scurphey@curpheylaw.com
*E-mail address*

503-241-2848
*Telephone number*

*20a*

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

| | | |
|---|---|---|
| Maria Magdalena Alvarez Galvez, individually | : | |
| and as the Guardian of her minor children, Heisha | : | |
| Munoz and Clamil Munoz, et al. | : | |
| | : | |
| Plaintiffs, | : | |
| | : | |
| vs | : | Case No. |
| | : | |
| Fanjul Corporation and Central Romana | : | |
| Corporation, Ltd., | : | |
| | : | |
| Defendants. | : | |

### *Complaint*

Plaintiffs, Maria Magdalena Alvarez Galvez, et al., hereby bring a series of claims against the defendants, of which the following is a statement:

### *Parties*

1.      Plaintiff Maria Magdalena Alvarez Galvez is an adult citizen and resident of the Dominican Republic.  She sues on her own behalf and as the Guardian of her minor children, Heisha Munoz and Clamil Munoz.

2.      Plaintiff Maria Altagracia Calderon is an adult citizen and resident of the Dominican Republic.

3.      Plaintiff Carline Paul is an adult citizen and resident of the Dominican Republic.

4.      Plaintiff Domitila Mejia is an adult citizen and resident of the Dominican Republic.  She sues on her own behalf and as the Guardian of her minor grandchildren Erica de la Cruz Mejia, Erik de la Cruz Mejia, Nayeli de la Cruz Mejia and Yeri de la Cruz Mejia.

5.      Plaintiff Severa Jimenez is an adult citizen and resident of the Dominican Republic.

6.      Plaintiff Francisco Herrera de la Cruz is an adult citizen and resident of the Dominican Republic.

7.      Plaintiff Manuel Sterling is an adult citizen and resident of the Dominican Republic.

8.      Plaintiff Ana Alvarez Monte is an adult citizen and resident of the Dominican Republic.

9.      Plaintiff Ariana Marrero Altagracia is an adult citizen and resident of the Dominican Republic.

10.     Plaintiff Maria Jimenez is an adult citizen and resident of the Dominican Republic.

11.     Plaintiff Luz Clarita Sanchez is an adult citizen and resident of the Dominican Republic.

12.     Plaintiff Rafael Mancebo is an adult citizen and resident of the Dominican Republic.

13.     Plaintiff Carlos Manuel Alcantara is an adult citizen and resident of the Dominican Republic.

14.     Plaintiff Ruth D. Sena is an adult citizen and resident of the Dominican Republic.

15.     Plaintiff Ana Rosa Almonte is an adult citizen and resident of the Dominican Republic.

16.     Plaintiff Annoris Morales Jimenez is an adult citizen and resident of the Dominican Republic. She sues on her own behalf and as the Guardian of her minor child Eliani Vicente Morales.

17.     Plaintiff Domingo Mejia is an adult citizen and resident of the Dominican Republic.

18.     Plaintiffs Emely Sierra and Edi Luis Jean, husband and wife, are adult citizens and residents of the Dominican Republic. They sue on their own behalf and as the Guardians of their minor children Yeidi Sierra and Andreili Sierra.

19.     Plaintiff Jhonsi Arrollo is an adult citizen and resident of the Dominican Republic. She sues on her own behalf and as the Guardian of her minor children Jendri Arroyo, Jhosito Arroyo and Jhojan Arroyo.

20.     Plaintiff Gertrudis Veloz Gomez is an adult citizen and resident of the Dominican Republic.

21.     Plaintiff Yefry Sierra Doroteo is an adult citizen and resident of the Dominican Republic.

22.     Plaintiff Juanita Coffils is an adult citizen and resident of the Dominican Republic.

23.     Plaintiff Dania Chala is an adult citizen and resident of the Dominican Republic.

24.     Plaintiff Nanci Avila is an adult citizen and resident of the Dominican Republic. She sues on her own behalf and as the Guardian of her minor children Leslie Castillo, Fabela Alcantara and Daniel Alcantara.

25.     Defendant Fanjul Corp. ("Fanjul") is a Florida corporation with a principal place of business located in West Palm Beach, Florida.

23a

26.     Defendant Central Romana Corporation, Ltd. ("Central Romana"), is incorporated under the laws of the British Virgin Islands and has a principal place of business located in the Dominican Republic.

### *Jurisdiction and Venue*

27.     This Court has subject matter jurisdiction over the international law and Dominican law claims asserted herein pursuant to 28 U.S.C. §1331 and the Alien Tort Claims Act, 28 U.S.C. §1350. This Court may exercise supplemental jurisdiction over the state law claims asserted herein pursuant to 28 U.S.C. §1367.

28.     Venue is proper in this judicial district pursuant to 28 U.S.C. §1391(b)(1) and (b)(2).

### *Personal Jurisdiction*

29.     This Court may exercise personal jurisdiction over Fanjul because, *inter alia*, it is a Florida corporation and transacts business in Florida and in this judicial district. Thus, this Court's exercise of personal jurisdiction over it does not offend traditional notions of fair play and substantial justice.

30.     Fanjul is and was, at all relevant times, engaged in commercial transactions throughout the United States, including in Florida. Fanjul markets and distributes its products in Florida and through the Internet worldwide. Fanjul's products enter the stream of commerce in Florida and it has availed itself of Florida's markets.

31.     Florida is the center of Fanjul's business activities.

32.     This Court may exercise personal jurisdiction over Central Romana pursuant to the Florida Long-Arm Statute, Fla. Stat. §48.193(1)(a) and (2), because, *inter alia*, Central Romana, on its own and through its agent and alter ego Fanjul, operates, conducts, engages in, and carries on a business and business ventures in Florida and throughout the United States and has an office in Florida, and is engaged in substantial activity within Florida and throughout the United States. In addition, Central Romana maintains sufficient contacts with Florida such that this Court's exercise of personal jurisdiction over it does not offend traditional notions of fair play and substantial justice.

33.     Central Romana produces and distributes sugar throughout Florida and the United States under the brand names Domino, C&H, Redpath, Tate & Lyle and Florida Crystals. Central Romana has sugar refineries in New York, Maryland, Louisiana and California. Central Romana markets its products in Florida, its products enter and exit the stream of commerce in Florida, and Florida residents are consumers of its sugar products. Central Romana avails itself of Florida markets by placing its product in the stream of commerce in Florida with the intention that Florida consumers purchase them.

34.     Central Romana markets and distributes its products in retail stores throughout Florida, and through the Internet worldwide.

35.     Central Romana is and was, at all relevant times, engaged in commercial transactions in Florida and throughout the United States.

### *Background Facts*

36.     In two separate military-style incursions during the early morning hours of January 26, 2016, a public holiday in the Dominican Republic in honor of Juan Pablo Duarte, one of the founding fathers of the Dominican Republic, heavily armed agents, servants and/or

25a

5

employees of Central Romana (the "Central Romana force") forcibly evicted approximately 60 families, including the Plaintiffs, from their homes in the Villa Guerrero neighborhood of El Seibo, without legal authority and without their consent. After evicting the Plaintiffs and their neighbors, the Central Romana force destroyed their homes and personal property.

37. While the Central Romana force was destroying their homes, they forcibly prevented the Plaintiffs and their neighbors from leaving the area.

38. In carrying out the evictions and destruction of the Plaintiffs' homes, in some instances while the Plaintiffs and their children were still physically present in the homes, the Central Romana force physically injured many people, including some of the Plaintiffs. For example:

a. Plaintiff Maria Magdalena Alvarez Galvez, a single mother of two small children at the time of the evictions, one of whom suffers from asthma, did not want to leave the house during the evictions to avoid triggering an asthma attack for him. The Central Romana force began destroying her home when she was still inside with her children, resulting in her son having being injured by a nail in his foot. The Central Romana force threatened her directly: "They told us that they will come with a bulldozer and destroy our houses even if we are inside."

b. Morena Then Sanchez, a single mother of four children at the time of the evictions, one of whom was sick that night, asked the Central Romana force not to destroy her home. They ordered her out of the house and destroyed it.

c. Plaintiff Francisco Herrera had surgery on his leg shortly before the evictions, and as a result, used crutches and had severely limited mobility. The Central Romana force began destroying his home while he was still inside, and had he not screamed at them to allow him to leave his home before they destroyed it, he would have suffered serious injury.

d.      Plaintiffs Emily Sierra and Edi Luis Jean were the parents of two young girls at the time of the evictions.  Their daughters were sleeping inside their home when the Central Romana force began to destroy it.

e.      Manuel Isaias had an operation for cataracts in his eyes a few days before the evictions.  Due to the sudden movements he was subjected to by the Central Romana force during the evictions, he lost the sight in one of his eyes.

39.     The Central Romana force aimed their weapons at the Plaintiffs and others, including children, and made direct threats of physical harm.

40.     Plaintiffs have experienced severe psychological and emotional trauma and harm as a direct result of the actions of the Central Romana force.

***Fanjul and Central Romana are Interconnected and Interrelated to Such an Extent That the Acts of one are Tantamount to the Acts of the Other and Fanjul is Vicariously Liable for the Actions of Central Romana Under Both Agency and Alter Ego Theory***

41.     Fanjul is the head of a sugar empire owned, operated and/or controlled by the Fanjul family, which consists of the following entities:

> Fanjul Corp.
> Central Romana Corporation Ltd.
> Florida Crystals Food Corp.
> Florida Crystals Corporation[1]
> American Sugar Refining, Inc.
> ASR Group International, Inc.
> Agro-Industrial Management, Inc.
> Agro-Industrial Management II, Inc.
> Domino Foods, Inc.
> C & H Sugar Company, Inc.
> Sugar Farms Co-op[2]
> America's Export Corporation

---

[1] Fanjul played a principal role in the creation of Florida Crystals Corporation in 1997.  Florida Crystals Corporation was created by combining and consolidating the Florida sugar operations of various entities, with Fanjul contributing stock in its subsidiaries to Florida Crystals Corporation.  The principal entities involved in the creation of Florida Crystals Corporation, in addition to Fanjul, were Okeelanta Corporation, New Hope Sugar Company and other indirect subsidiaries of Fanjul.

[2] Sugar Farms Co-op is involved in the cultivation of sugar cane in Florida.

Okeelanta Corporation[3]
New Hope Sugar Company

The interconnectedness of these entities in terms of their ownership is clear:

a.      Fanjul (the successor of Flo-Sun, Inc.) owns 5,100 shares of Agro-Industrial
        Management, Inc. (the successor of Flo-Sun Sugar Company).

b.      Fanjul owns 673,640 shares (72%) of Florida Crystals Corporation.

c.      Agro-Industrial Management, Inc. owns 1,050 shares (35%) of Central Romana

d.      Sugar Farms Co-op is an indirect subsidiary of Fanjul because Fanjul owns 72%
        of Florida Crystals Corporation, and through a series of subsidiaries, Florida
        Crystals Corporation controls Sugar Farms Co-op.

e.      Okeelanta Corporation operates as a subsidiary of Florida Crystals
        Corporation.

e.      Americas Export Corporation is a subsidiary of Florida Crystals
        Corporation.

f.      Agro-Industrial Management II, Inc. is a subsidiary of Florida Crystals
        Corporation.

42.     The interconnectedness of these entities in terms of their governance (as between

the officers and directors of Fanjul on the one hand, and the entities that comprise the Fanjul

sugar empire on the other) is also clear, and most striking with respect to the members of the

Fanjul family (Alfonso Fanjul Jr., Jose Fanjul Sr., Jose Fanjul Jr., Alexander Fanjul and Andres

Fanjul) and Armando A. Tabernilla:

**Alfonso Fanjul Jr.**

Chairman, CEO and Director of Fanjul Corp.
Chairman, CEO and Director of Florida Crystals Corporation
Chairman, President and Director of Central Romana Corporation Ltd
Chairman of Okeelanta Corporation

**Jose Fanjul Sr.**

---

[3] Okeelanta Corporation is engaged in the farming, milling, packaging and distribution of sugar cane.

28ᴀ

8

Vice Chairman, President, Chief Operating Officer and Director of Fanjul Corp.
Vice Chairman, President, Chief Operating Officer and Director of Florida Crystals Corp.
Vice President and Director of Central Romana Corporation Ltd

**Jose Fanjul Jr.**

Vice President of Fanjul Corp.
Executive Vice President and Director of Florida Crystals Corporation
Director of Central Romana Corporation Ltd
Director of ASR Group International, Inc.
Director of American Sugar Refining, Inc.
Director of Domino Foods, Inc.

**Andres Fanjul**

Vice President and Director of Fanjul Corp.
Vice President of Florida Crystals Corporation

**Alexander Fanjul**

Director of Fanjul Corp.
Sr. Vice President of Florida Crystals Corporation

**Armando A. Tabernilla**

Vice President, General Counsel, Secretary and Director of Florida Crystals Corporation
Vice President, General Counsel, Secretary and Director of ASR Group International Inc.
Vice President, General Counsel and Secretary of American Sugar Refining, Inc.
Vice President, General Counsel, Secretary and Director of Domino Foods, Inc.
Vice President, General Counsel and Secretary of C & H Sugar Company, Inc.
Vice President and General Counsel of Agro-Industrial Management, Inc.
Registered Agent for Sugar Farms Co-op
Registered Agent for Okeelanta Corporation
Registered Agent for Agro-Industrial Management II, Inc.
Registered Agent for Americas Export Corporation
Registered Agent for New Hope Sugar Company

**Luis Fernandez**

Vice President of Fanjul Corp.
Officer and Director of Florida Crystals Corporation
Co-President and Director of ASR Group International, Inc.
Co-President and Director of American Sugar Refining, Inc.
Co-President and Director of Domino Foods, Inc.

Director of Central Romana Corporation, Ltd.

**Philip Zukowski**

Vice President of Taxation of Fanjul Corp.
Vice President of Taxation of Florida Crystals Corporation
Vice President of Taxation of ASR Group International, Inc.
Vice President of Taxation of American Sugar Refining, Inc.
Vice President of Taxation of Domino Foods, Inc.
Vice President of Taxation of C & H Sugar Company, Inc.

**William F. Tarr**

Vice President of Fanjul Corp.
Vice President of Florida Crystals Corporation
Vice President of Agro-Industrial Management, Inc.
Vice President of Florida Crystals Food Corporation

**Erik J. Blomqvst**

Vice President and Treasurer of Fanjul Corporation
Sr. Vice President, Treasurer and Director of Florida Crystals Corporation
Director of Domino Foods, Inc.

**Alfonso Fierro**

Director of Fanjul Corp.
Director of Florida Crystals Corporation

**Lillian Azqueta**

Director of Fanjul Corp.
Director of Florida Crystals Corporation

**David Patterson**

Director of Fanjul Corp.
Director of Florida Crystals Corporation

**Christine M. Winterburg**

Vice President of Fanjul Corp.
Vice President of Florida Crystals Corporation

*30a*

**Parks D. Shackelford**

Vice President of Fanjul Corp.
Vice President of Florida Crystals Corporation

43.    In documents filed with the Chamber of Commerce and Trade in La Romana,

Dominican Republic, Alfonso Fanjul and Jose Fanjul are identified as two officials of Central

Romana with authority to borrow from financial institutions in the name of Central Romana.

44.    The interconnectedness of these entities in terms of their operations is also clear:

a.    The principal function of Agro-Industrial Management, Inc. is to provide management services to Florida Crystals Corporation (and its 20-50 subsidiaries), ASR Group International, Inc. (and its approximately 20 subsidiaries), American Sugar Refining, Inc., Domino Foods, Inc., C & H Sugar Company and Senshi Rice Products, Inc.

b.    Florida Crystals Corporation pays on behalf of Fanjul "the normal payments that Fanjul would have to make by virtue of being in existence and operating as a corporation." Such payments include payments to Fanjul's independent auditor of its annual audit fee, and payments of tax advice and legal fees on behalf of Fanjul. Fanjul reimburses Florida Crystals Corporation for the payments. Florida Crystals Corporation also assists in the administration of Fanjul's bank accounts at Wells Fargo and Bank of America.

c.    Domino Foods, Inc. is the sales and marketing entity for American Sugar Refining, Inc., C & H Sugar Company, Inc. and Florida Crystals Food Corp.

d.    American Sugar Refining, Inc. periodically indirectly buys raw sugar from Central Romana, who offers the sugar it is allowed to import into the United States for bid. ASR Commodities LLC, a subsidiary of American Sugar Refining, Inc. bids on the sugar, and periodically is the successful bidder.

e.    The raw sugar American Sugar Refining, Inc. purchases from Central Romana is loaded in the Dominican Republic, shipped in ocean-going vessels, and off-loaded at one of American Sugar Refining, Inc.'s refineries along the East Coast (Yonkers, New York or Baltimore, Maryland).

f.    At any point in time, there are payables and receivables among ASR Group International, Inc., American Sugar Refining, Inc., C & H Sugar Company, Inc. and Domino Foods, Inc.

g.    At any point in time, there are payables and receivables (intercompany balances) between Florida Crystals Corporation and Florida Crystals Food Corporation.

h.     Florida Crystals Corporation consolidates its tax returns with Florida Crystals Food Corporation. ASR Group International, Inc. files a tax return that includes the financial performance of American Sugar Refining, Inc. and C & H Sugar Company, Inc.

i.     Employees of American Sugar Refining, Inc. travel to the Dominican Republic to inspect or have discussions with Central Romana employees regarding the raw sugar it purchases and quality issues related to that sugar.

j.     Americas Export Corporation purchases equipment and goods for resale to Central Romana. It purchases equipment that would be used in the sugar operations of Central Romana and purchases goods that would be used in the resort business of a subsidiary of Central Romana.

45.     These entities are also connected in other ways relevant to personal jurisdiction

vicarious liability:

a.     Mr. Tabernilla has traveled to Central Romana's offices in the Dominican Republic in connection with a proposed Florida Crystals Corporation investment there.

b.     American Sugar Refining, Inc. owns real property in New York, Maryland, Louisiana, California and Ohio. The properties in New York, Maryland, Louisiana and California are sugar refineries and the property in Ohio is a packaging plant.

c.     Domino Foods, Inc. leases office space in New Jersey for its headquarters. Its sales force is located in a variety of locations, with some working from home. They create and disseminate promotional material relating to Domino products, do some advertising in newspapers and magazines, and advertise on social media. The sales force is organized based on the types of customers that are solicited (i.e., industrial, food service, retail and specialty).

d.     American Sugar Refining, Inc. owns the trademark "Domino."

e.     The Consignee on a representative shipment of raw sugar from Central Romana to the American Sugar Refining, Inc. refinery in Baltimore, MD, ASR Group Commodities, has the same address (1 Federal Street, Yonkers NY) as the American Sugar Refining, Inc. refinery in Yonkers NY.

### *This Case Must be Tried in This Court Because the Dominican Republic is not an Adequate Forum for This Case*

46.     The Dominican Republic is not an adequate forum for this case.

*32a*

47.     The Dominican courts are notoriously corrupt. That corruption has even been acknowledged by the Dominican government itself, which chose to file suit in an American court against an American corporation for environmental harm caused by an illegal dumping of toxic material on a beach in the Dominican Republic. *See*, *generally*, *Dominican Republic v. The AES Corporation, et al.*, 466 F. Supp. 2d 680 (E.D. Va. 2006).

48.     Fanjul is the largest landholder and largest employer in the Dominican Republic, as well as the leading producer of sugar in the Dominican Republic. Fanjul wields outsized influence in the Dominican Republic, including in government and the judicial system. Given its influence, Plaintiffs would not have a fair opportunity to fully litigate their claims.

49.     The so-called private factors, which are relevant to whether the Dominican Republic is an adequate forum, indicate that this case must remain in this Court.

a.     Access to evidence and relevant sites.

The evidence necessary for Plaintiffs to prove their claims is located both in the United States and the Dominican Republic. Evidence concerning the basis of the decision to utilize the Central Romana agents to forcibly evict the Plaintiffs from their homes is in the possession of Fanjul (in Florida) and Central Romana (in the Dominican Republic). Evidence concerning the specifics of the military-style operations mounted by the Central Romana force principally is located in the Dominican Republic. Evidence concerning the physical and emotional injuries suffered by the Plaintiffs can be obtained from the Plaintiffs in the Dominican Republic. Although some of the relevant documents may be in Spanish is of minor significance. The use of translators in court proceedings is a normal practice, particularly in Florida, which has a large Spanish-speaking population, as is the translation of documents from Spanish to English. And although a site visit might be desired, traveling to the Dominican Republic to inspect the site of

33a

the forcible evictions poses no particular problems. The Dominican Republic is no more convenient than Florida with respect to access to sources of proof in this case, and no more expensive.

      b.     Access to witnesses.

The key liability and damages witnesses are located in both the Dominican Republic and the United States. These witnesses include the Plaintiffs, employees of Central Romana, and employees of Fanjul. It is not possible to quantify the number of key witnesses located in the Dominican Republic and the number located in the United States. Nor can it be said that any key witnesses would be beyond the jurisdiction of this Court or subject only to the authority of the Dominican courts, or would not otherwise agree to provide testimony in this case.

      c.     Practicalities and expenses associated with litigation.

Although discovery and trial of this case will be expensive and time-consuming, the challenges presented by this case exist regardless of whether it is litigated here or in the Dominican Republic. Expert witnesses would be required in both jurisdictions, as would translators and translation services, as well as travel and lodging expenses. The only significant logistical and cost difference between trial in Florida and trial in the Dominican Republic would be those associated with securing the attendance of the Plaintiffs at trial in Florida.

      50.     The so-called public factors, which also are relevant to whether the Dominican Republic is an adequate forum, indicate that this case must remain in this Court.

      a.     This action has a substantial connection to Florida.

Despite the fact the Plaintiffs reside in the Dominican Republic and were injured in the Dominican Republic, some of the decisions that resulted in their injuries were made in Florida. Specifically, decisions concerning whether and why to assemble the Central Romana force and

to forcibly evict the Plaintiffs, critical decisions which resulted in injury to the Plaintiffs, likely were made in part by Fanjul employees in Florida.

      b.      Florida has an interest in the outcome of this case.

Because critical decisions that resulted in injury to the Plaintiffs likely were made by Florida residents, Florida has an interest in ensuring that its residents act in a manner that does not unnecessarily cause injury to others and in punishing wrongdoers. Florida has an interest in overseeing the conduct of entities and individuals who carry out activities in Florida that have an adverse impact outside of Florida. These interests justify having a local jury decide this case, with the attendant impact on local judicial resources.

      c.      This Court is competent to resolve issues of Dominican law.

For this Court to apply Dominican law will not be a substantial undertaking. This Court can obtain its own expert on Dominican law to provide guidance, and doing so will not be an onerous burden. Moreover, the Plaintiffs will be severely prejudiced if they are forced to refile this case in the Dominican Republic.

51.      As a direct and proximate result of the foregoing actions of defendants, the Plaintiffs have suffered the injuries and damages alleged above, as well as:

      a.      continuing mental anguish, psychological and emotional injury;

      b.      loss of enjoyment of life's pleasures;

      c.      medical and healthcare expenses;

      d.      moral damages; and

      e.      such other damages as may be allowed by law or equity.

***Count I***
***Violation of Article 59 of the Dominican Republic Constitution***

*35a*

52.     Plaintiffs incorporate herein by reference as if set forth in full paragraphs 1-51, inclusive, of this Complaint.

53.     Article 59 of the Dominican Republic Constitution provides as follows:

Article 59: Right to Housing

All persons have the right to dignified housing with basic essential services.  The State should determine the necessary conditions to make effective this right and promote plans for housing and human settlements in the social interest.  Legal access to titled real estate is a fundamental priority of public policy and the advancement of housing.

54.     Under Dominican law, evictions without a court order violate the right to housing provided for in Article 59 of the Dominican Republic Constitution.

55.     Defendants forcibly evicted the Plaintiffs from their homes without a valid court order, and thereby violated Article 59 of the Dominican Republic Constitution.

56.     Because defendants destroyed the Plaintiffs' homes as part of the forcible eviction operations, defendants are liable to the Plaintiffs for monetary damages.

Wherefore, Plaintiffs hereby demand judgment in their favor and against defendants on Count I, awarding them all damages available under law and equity.

### Count II
### Violation of the right to judicial process and due process codified in Article 8.1 of the Inter-American Convention on Human Rights and Article 14 of the International Covenant on Civil and Political Rights

57.     Plaintiffs incorporate herein by reference as if set forth in full paragraphs 1-56, inclusive, of this Complaint.

58.     The right to judicial process and due process is fundamental to the ability of individuals to enjoy a life of dignity and is firmly established in international human rights law.

59.     For example, Article 8.1 of the Inter-American Convention on Human Rights provides:

3ba

Article 8. Right to a Fair Trial

1. Every person has the right to a hearing, with due guarantees and within a reasonable time, by a competent, independent, and impartial tribunal, previously established by law, in the substantiation of any accusation of a criminal nature made against him or for the determination of his rights and obligations of a civil, labor, fiscal, or any other nature.

60.     The Dominican Republic signed the Inter-American Convention on Human

Rights, without reservation, on September 7, 1977 and ratified it on January 21, 1978.

61.     Article 14.1 of the International Covenant on Civil and Political Rights provides:

Article 14.  1.  All persons shall be equal before the courts and tribunals.  In the determination of any criminal charge against him, or of his rights and obligations in a suit at law, everyone shall be entitled to a fair and public hearing by a competent, independent and impartial tribunal established by law.  The Press and the public may be excluded from all or part of a trial for reasons of morals, public order (ordre public) or national security in a democratic society, or when the interest of the private lives of the parties so requires, or to the extent strictly necessary in the opinion of the court in special circumstances where publicity would prejudice the interests of justice; but any judgment rendered in a criminal case or in a suit at law shall be made public except where the interest of juvenile persons otherwise requires or the proceedings concern matrimonial disputes or the guardianship of children.

62.     The Dominican Republic ratified the International Covenant on Civil and Political

Rights on January 4, 1978 and it entered into force on April 4, 1978.

63.     The international instruments discussed above all confirm the right to judicial

process and due process as part of the fabric of established international human rights law.

64.     Defendants planned, organized and implemented the forcible eviction operations

without a valid court order and without affording the Plaintiffs the right to judicial process and

due process to which they were entitled under generally accepted norms of international law.

65.     The actions and omissions of the defendants described above violated the

Plaintiffs' right to judicial process and due process, which violation is actionable under the Alien

Tort Claims Act, 28 U.S.C. §1350.

66.     As a direct and proximate result of the defendants' violation of their right to

judicial process and due process, the Plaintiffs sustained the injuries and damages described

above.

Wherefore, Plaintiffs hereby demand judgment in their favor and against defendants on

Count II, awarding them all damages available under law and equity.

### Count III
### Violation of Article 1382 of the Dominican Civil Code

67.     Plaintiffs incorporate herein by reference as if set forth in full paragraphs 1-66,

inclusive, of this Complaint.

68.     Article 1382 of the Civil Code of the Dominican Republic provides:

Art. 1382.  Every act of a person that causes injury to another obligates the one by
whose fault it occurred to compensate it.

69.     Under Dominican law, Article 1382 of the Civil Code provides a cause of action

for intentional wrongdoing.

70.     A defendant is liable under Article 1382 when the defendant commits an act

against the right of another or the defendant exercises his own right in an abusive manner.

71.     Based upon the actions and omissions of the defendants alleged above, defendants

are liable to the Plaintiffs under Article 1382.

Wherefore, Plaintiffs hereby demand judgment in their favor and against defendants on

Count III, awarding them all damages available under law and equity.

### Count IV
### Violation of Article 1383 of the Dominican Civil Code

72.     Plaintiffs incorporate herein by reference as if set forth in full paragraphs 1-71,

inclusive, of this Complaint.

73.     Article 1383 of the Civil Code of the Dominican Republic provides:

*38 a*

Art. 1383. Everyone is responsible for the damage that he causes not only by his own act, but also by his negligence or imprudence.

74.     Under Dominican law, Article 1383 provides a cause of action for unintentional acts or omissions.

75.     Under Dominican law and Article 1383, the standard for determining fault or negligence is an error of conduct that would not have been committed by a normal person under equal exterior conditions or by a careful person placed under the same circumstances.

76.     Based upon the actions and omissions alleged above, defendants are liable to the Plaintiffs under Article 1383.

Wherefore, Plaintiffs hereby demand judgment in their favor and against defendants under Count IV, awarding them all damages available under law and equity.

### Count V
### Assault

77.     Plaintiffs incorporate herein by reference as if set forth in full paragraphs 1-76, inclusive, of this Complaint.

78.     The actions of the defendants against the Plaintiffs alleged above demonstrate a) an intentional, unlawful threat, b) the apparent ability to carry out the threat, and c) creation of a well-founded fear that violence was imminent.

79.     The Central Romana force intended to destroy the Plaintiffs' homes while they were present and could observe the destruction of their homes, and intended to do so regardless of the physical danger that doing so might cause to the Plaintiffs and with the knowledge that doing so would cause an imminent fear of violence amongst the Plaintiffs.

80.     The actions of the defendants created a well-founded fear of physical violence in the Plaintiffs, as it would have in any reasonable person under similar circumstances.

*39a*

81.   The actions of the defendants constitute assault under Florida law.

Wherefore, Plaintiffs hereby demand judgment in their favor and against defendants on Count V, awarding them all damages available under law and equity.

### Count VI
### *Battery*

82.   Plaintiffs incorporate herein by reference as if set forth in full paragraphs 1-81, inclusive, of this Complaint.

83.   Based upon the actions of the defendants alleged above, defendants intended to cause, and did cause, a harmful and offensive contact, and/or the imminent apprehension that such contact would occur, with the Plaintiffs.

84.   The actions of the defendants constitute battery under Florida law.

Wherefore, Plaintiffs hereby demand judgment in their favor and against defendants on Count VI, awarding them all damages available under law and equity.

### Count VII
### *False Imprisonment*

85.   Plaintiffs incorporate herein by reference as if set forth in full paragraphs 1-84, inclusive, of this Complaint.

86.   In connection with the forcible eviction operations, defendants imprisoned Plaintiffs against their will.

87.   Defendants' detention of the Plaintiffs in connection with the forcible eviction operations was unreasonable and unwarranted under the circumstances.  Specifically, there was no legitimate reason for defendants to refuse to allow Plaintiffs to leave while the Central Romana force destroyed their homes.

*40a*

Wherefore, Plaintiffs hereby demand judgment in their favor and against defendants on Count VII, awarding them all damages available under law and equity.

### Count VIII
### Forcible Entry and Detainer

88.     Plaintiffs incorporate herein by reference as if set forth in full paragraphs 1-87, inclusive, of this Complaint.

89.     Defendants destroyed Plaintiffs' homes and dispossessed them of their real property without consent or legal process.

90.     Plaintiffs were in peaceful possession of their homes prior to the forcible eviction operations.

91.     Plaintiffs were forcibly evicted from their homes

92.     Plaintiffs were forcibly evicted from their homes without consent or legal authorization.

93.     In the alternative, even if the Plaintiffs did not have lawful possession of their homes, as defendants claim, defendants are liable to the Plaintiffs because the forcible eviction operations were not peaceable.

94.     In the alternative, even if the Plaintiffs were transient occupants of their homes, they are entitled to recover damages against defendants because defendants unreasonably withheld access to the Plaintiffs' personal belongings.

Wherefore, Plaintiffs here by demand judgment in their favor and against defendants on Count VIII of the Complaint, awarding them all damages available under law and equity.

### Count IX
### Intentional Infliction of Emotional Distress

4/a

21

95.     Plaintiffs incorporate herein by reference as if set forth in full paragraphs 1-94, inclusive, of this Complaint.

96.     Defendants deliberately and/or recklessly inflicted mental suffering on the Plaintiffs as a result of the forcible eviction operations.

97.     Defendants' conduct was outrageous.

98.     Defendants' conduct caused extreme emotional distress to the Plaintiffs.

Wherefore, Plaintiffs hereby demand judgment in their favor and against defendants on Count IX of the Complaint, awarding them all damages available under law and equity.

### *Jury Trial Demand*

99.     Plaintiffs demand a trial by jury as to all claims so triable.

_s/ Shauna Curphey_
Shauna Curphey, Florida Bar No. 0109667
scurphey@curpheylaw.com
Curphey Law, LLC
6300 North Wickham Road, Suite 130 #305
Melbourne, FL  32940
Telephone: 503-241-2848

and

Robert T Vance Jr
rvance@vancelf.com
Law Offices of Robert T Vance Jr
100 South Broad Street, Suite 1525
Philadelphia PA 19110
Telephone: 215 557 9550 / Fax: 215 278 7992

*Attorneys for the Plaintiffs*

42a

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**CASE NO. 20-CIV-80123-RAR**

MARIA MAGDALENA
ALVAREZ GALVEZ, *et al.*,

     Plaintiffs,

v.

FANJUL CORPORATION, *et al.*,

     Defendants.

_____/

<u>**ORDER GRANTING MOTION TO DISMISS**</u>

In the early morning of January 26, 2016, Central Romana—a sugar company based in the Dominican Republic—allegedly launched two "military-style incursions" to forcibly evict Plaintiffs from their homes in the Villa Guerrero neighborhood of El Seibo, a province in the eastern Dominican Republic. Insisting that the Dominican courts are "notoriously corrupt" and that Central Romana is the alter-ego of Florida company Fanjul Corp., Plaintiffs sued in this Court alleging violations of Dominican law and international human rights law, as well as several common law torts. Plaintiffs contend that this Court has jurisdiction under the Alien Tort Statute and federal question jurisdiction despite the extraterritorial nature of the events at issue in this case.

Currently before the Court is Defendants' Motion to Dismiss [ECF No. 31] ("Motion"), filed on September 9, 2020, which seeks dismissal of this action for lack of subject matter jurisdiction and on *forum non conveniens* grounds, among other reasons. Plaintiffs filed a response to the Motion on October 21, 2020 [ECF No. 39] ("Response") and Defendants filed their reply on November 9, 2020 [ECF No. 43]. On January 10, 2021, Plaintiffs filed a motion to supplement their Response [ECF No. 47] ("Motion to Supplement"), which Defendants opposed [ECF No.

48].  The Court having reviewed the parties' written submissions, the record, and the applicable law, and being otherwise fully advised, it is hereby

**ORDERED AND ADJUDGED** that Defendants' Motion to Dismiss [ECF No. 31] is **GRANTED** and Plaintiffs' Motion to Supplement [ECF No. 47] is **DENIED AS MOOT** for the reasons set forth herein.

## **BACKGROUND**

Plaintiffs allege that on January 26, 2016, while the Dominican Republic was celebrating a national holiday in honor of one of its founding fathers, Juan Pablo Duarte, Central Romana sent heavily armed agents to forcibly remove Plaintiffs and their families from their homes in Villa Guerrero.  *See* Compl. [ECF No. 1] ¶ 36.  According to the Complaint, Central Romana evicted over 60 families and destroyed their homes and personal property.  *See id.*  In some instances, Plaintiffs or their family members were still inside the homes at the time they were destroyed and sustained physical injuries.  *Id.* ¶ 38.  Plaintiffs allege violations of the Dominican Republic Constitution, the American Convention on Human Rights, the International Covenant on Civil and Political Rights (ICCPR), and the Dominican Civil Code.  *Id.*, Counts I-IV, at 15-19.  They also plead assault, battery, false imprisonment, forcible entry and detainer, and intentional infliction of emotional distress.  *Id.*, Counts V-IX, at 19-22.

A significant portion of Plaintiffs' Complaint is devoted to describing the purported "sugar empire" of which Defendants are a part.  *Id.* at 7-12.  Plaintiffs indicate that the sugar empire is headed by Fanjul—a Florida corporation with its principal place of business in West Palm Beach— and includes fourteen entities.  *Id.* ¶¶ 25, 41.  One of those entities is Central Romana, which is incorporated under the laws of the British Virgin Islands and has its principal place of business in the Dominican Republic.  *Id.* ¶¶ 26, 41.  Plaintiffs assert that Fanjul Corp. owns 35% of Central

Romana's shares through a subsidiary, Agro-Industrial Management, Inc., and that Fanjul and Central Romana have four overlapping officers and directors. *Id.* ¶¶ 41-42.

The Complaint avers that this Court has subject matter jurisdiction over Plaintiffs' international law and Dominican law claims under the Alien Tort Statute, 28 U.S.C. section 1350 ("ATS"), and under 28 U.S.C. section 1331 (federal question jurisdiction)—and that the Court can therefore also exercise supplemental jurisdiction over the state law claims. *Id.* ¶ 27. Plaintiffs further assert that the Dominican Republic is not an adequate forum for this case because "[t]he Dominican courts are notoriously corrupt" and Fanjul "wields outsized influence" as the country's largest landowner, employer, and sugar producer. *Id.* ¶¶ 47-48. Plaintiffs acknowledge that "[e]vidence concerning the specifics of military-style operations mounted by the Central Romana force principally is located in the Dominican Republic," but maintain that Florida-based Fanjul likely possesses some of the evidence concerning the decision-making that led to the forcible evictions. *Id.* ¶¶ 49-50. Plaintiffs allege that relevant witnesses are located in both the Dominican Republic and the United States, *id.* ¶ 49, and that it will not be an "onerous burden" for this Court to obtain an expert to provide guidance on applying Dominican law. *Id.* ¶ 50.

In the Motion, Defendants seek dismissal of the Complaint on four grounds. First, Defendants maintain that the Court lacks subject matter jurisdiction under the ATS because the statute does not apply to torts committed extraterritorially. *See* Mot. at 2-3. Defendants also contend that Plaintiffs improperly allege federal question jurisdiction without pleading a cause of action arising under the Constitution, laws, or treaties of the United States. *Id.* at 3. Second, Defendants assert that the Court does not have personal jurisdiction over Central Romana. *Id.* at 3-6. Third, Defendants argue that Plaintiffs fail as a matter of law to allege any basis on which to hold Fanjul liable for the alleged conduct of Central Romana. *Id.* at 7-11. Finally, Defendants

45a

contend that this Court should decline to exercise jurisdiction over this action under the doctrine of *forum non conveniens*.

In their Response, Plaintiffs maintain that the facts alleged in the Complaint "touch and concern" the United States with sufficient force to overcome the presumption against extraterritorial application of the ATS. *See* Resp. at 3-4. Specifically, Plaintiffs insist that their allegations that Fanjul is Central Romana's alter-ego, a U.S. citizen, and likely participated in decisions that led to Plaintiffs' evictions are enough to overcome the presumption. *Id.* Plaintiffs seek leave to amend the Complaint to more clearly allege Fanjul's involvement in the decisions that violated "Plaintiffs' right to judicial process and due process," *id.* at 4, n.1, and to assert alienage jurisdiction under 28 U.S.C. section 1332(a)(2). *Id.* at 2. Plaintiffs also reiterate the arguments raised in their Complaint for why the Dominican Republic is an inadequate forum for this dispute. *Id.* at 15-20. Additionally, Plaintiffs seek leave to conduct limited discovery to establish the Court's personal jurisdiction over Central Romana and support their alter-ego theory. *Id.* at 8.[1]

Further, in an effort to demonstrate Central Romana's contacts with Florida for personal jurisdiction purposes, Plaintiffs subsequently moved to supplement their Response with a document showing sugar shipments Central Romana made to the United States. *See* Mot. to Supplement, Ex. 2 [ECF No. 47-2].

## ANALYSIS

For the reasons set forth below, the Court finds that it lacks subject matter jurisdiction over this action. The Court further finds that Plaintiffs have inadequately alleged that Central Romana

---

[1] On November 13, 2020, the Court stayed discovery in this case pending resolution of this Motion. *See* Paperless Order [ECF No. 45].

is Fanjul's alter-ego. Amendment of Plaintiffs' Complaint as to the ATS would be futile, but the Court will nevertheless grant Plaintiffs leave to amend their Complaint to the extent they are able to assert an alternative ground for subject matter jurisdiction. Moreover, given that Plaintiffs may only be able to establish subject matter jurisdiction by dropping Central Romana as a party, the Court finds it unnecessary at this juncture to reach Defendants' *forum non conveniens* arguments[2] or the question of whether the Court has personal jurisdiction over Central Romana.

## I. Subject Matter Jurisdiction

Federal courts are courts of limited jurisdiction and "possess only that power authorized by Constitution and statute, . . . which is not to be expanded by judicial decree." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994) (internal citations omitted). It is presumed that an action lies outside this limited jurisdiction and the party asserting jurisdiction bears the burden of establishing the contrary. *Id.* Because a federal court is "powerless to act beyond its statutory grant of subject matter jurisdiction," the court must "zealously insure that jurisdiction exists over a case . . . ." *Smith v. GTE Corp.*, 236 F.3d 1292, 1299 (11th Cir. 2001).

Under Federal Rule of Civil Procedure 12(b)(1), a defendant may challenge subject matter jurisdiction either facially or factually. *See McElmurray v. Consol. Gov't of Augusta-Richmond Cty.*, 501 F.3d 1244, 1251 (11th Cir. 2007). A facial attack requires the Court to merely look at the complaint to see if the plaintiff has sufficiently alleged a basis for subject matter jurisdiction,

---

[2] To establish the availability of the Dominican Republic as an alternative forum, Defendants are required to show that all Defendants are subject to the jurisdiction of the Dominican courts. *See In re W. Caribbean Crew Members*, No. 07-22015, 2008 WL 11331752, at *4 (S.D. Fla. Oct. 1, 2008) ("The moving defendant must establish that an adequate and available forum exists as to all defendants if there are several."); *Rodriguez v. Ocean Motion Watersports, Ltd.*, No. 13-21606, 2014 WL 11880982, at *3 (S.D. Fla. Mar. 11, 2014). In a supplement to their Motion, Defendants clarified that Fanjul "does not consent to the jurisdiction of the courts in the Dominican Republic." Defendant Fanjul Corp.'s Supplement to the Motion to Dismiss [ECF No. 52]. Thus, consideration of *forum non conveniens* is only warranted if Fanjul is dismissed as a defendant and Central Romana remains in the case.

and the allegations in the complaint are accepted as true for purposes of the motion to dismiss. *Id.* (quoting *Lawrence v. Dunbar*, 919 F.2d 1525, 1529 (11th Cir. 1990)). A factual attack, on the other hand, challenges "the existence of subject matter jurisdiction in fact, irrespective of the pleadings, and matters outside the pleadings, such as testimony and affidavits are considered." *Id.* (citation omitted).

Although Defendants submit two declarations with their Motion [ECF Nos. 31-1 and 31-2], the declarations focus on challenging the Court's personal jurisdiction over Central Romana and establishing that dismissal based on *forum non conveniens* is warranted. Because Defendants contest the Court's subject matter jurisdiction solely by reference to the allegations in Plaintiffs' Complaint, the Court construes Defendants' attack on subject matter jurisdiction to be a facial one.

As mentioned above, Plaintiffs' Complaint asserts two bases for subject matter jurisdiction—jurisdiction under the ATS and federal question jurisdiction under section 1331. In their Response, Plaintiffs maintain that the Court has jurisdiction under the ATS but appear to abandon their assertion of federal question jurisdiction, instead seeking leave to plead alienage jurisdiction as an alternative to the ATS. *See* Resp. at 2. For the sake of thoroughness, the Court analyzes the three jurisdictional grounds advanced by Plaintiffs and, as explained below, finds that Plaintiffs have failed to establish subject matter jurisdiction under all three.

### a. Alien Tort Statute

#### i. *Background on the ATS*

In an oft-quoted characterization, Judge Friendly referred to the ATS as "a kind of legal Lohengrin"—like the mysterious knight in Richard Wagner's opera, "no one seems to know whence it came." *IIT v. Vencap, Ltd.*, 519 F.2d 1001, 1015 (2d Cir. 1975). The ATS was enacted as part of the Judiciary Act of 1789 and provides that "[t]he district courts shall have original

jurisdiction of any civil action by an alien for a tort only, committed in violation of the law of nations or a treaty of the United States." *Jesner v. Arab Bank, PLC*, 138 S. Ct. 1386, 1396-97 (2018) (quoting 28 U.S.C. § 1350).  The purpose and history of the ATS has been analyzed at length by the Supreme Court and need not be reiterated in detail here, except to note that "[t]he principal objective of the statute, when first enacted, was to avoid foreign entanglements by ensuring the availability of a federal forum where the failure to provide one might cause another nation to hold the United States responsible for an injury to a foreign citizen." *Id.* at 1397.  The ATS remained largely dormant for nearly 200 years and reemerged in the late twentieth century, when courts began to provide some redress to plaintiffs under the ATS for "violations of international human-rights protections that are clear and unambiguous." *Id.*

Since then, the Supreme Court has issued several key decisions clarifying the scope of the ATS that are pertinent here.  First, in *Sosa v. Alvarez-Machain*, the Court explained that the ATS is a strictly jurisdictional statute that did not establish new causes of action for violations of international law.  542 U.S. 692, 724 (2004).  The Court also found, however, that "Congress did not intend the ATS to sit on the shelf until some future time when it might enact further legislation." *Id.*  Rather, the first Congress intended the ATS to provide a remedy for a limited category of international law violations recognized under the common law as it existed in 1789— namely, acts of piracy, injury to ambassadors, and violations of obligations of safe conduct. *Id.* The Court further held that in narrow circumstances, courts may recognize new causes of action under the ATS if the claim "rest[s] on a norm of international character accepted by the civilized world and defined with a specificity comparable to the features of the 18th century paradigms we have recognized." *Id.* at 725.  But the Court was quite explicit that federal courts should maintain "vigilant doorkeeping" and exercise "great caution" when considering new causes of action. *Id.*

at 128-129; *see also Aldana v. Del Monte Fresh Produce, N.A., Inc.*, 416 F.3d 1242, 1246-47 (11th Cir. 2005).

Then, in *Kiobel v. Royal Dutch Petroleum Co.*, the Court held that an ATS claim may not reach conduct occurring exclusively in the territory of a foreign sovereign. 569 U.S. 108, 124 (2013). The Court relied on the canon of statutory interpretation known as the presumption against extraterritorial application, which provides that "when a statute gives no clear indication of an extraterritorial application, it has none." *Id.* at 115 (quotation and alteration omitted). Emphasizing concerns over the separation of powers and intrusion on the political branches' monopoly over foreign policy, the Court found that this presumption applies to the ATS and nothing in the text of the ATS rebuts it. *Id.* at 124. The Court then added that "even where the [ATS] claims touch and concern the territory of the United States, they must do so with sufficient force to displace the presumption against extraterritorial application," and "mere corporate presence" in the United States does not suffice. *Id.* at 125.

Finally, in *Jesner*, the Court resolved a question that it expressly left open in *Kiobel*: can foreign corporations ever be proper defendants under the ATS? The Court concluded that they cannot. *Jesner*, 138 S. Ct. at 1403. As in *Kiobel*, the Court rested its decision on separation of powers and foreign affairs concerns, reasoning that Congress is in a better position to weigh the foreign policy implications of imposing ATS liability on foreign corporations.[3] *See id.* Although the Court granted certiorari to hear *Jesner* on the broader question of whether *any* corporation is subject to ATS liability, the Court limited its holding to foreign corporations. *See Al Shimari v.*

---

[3] The Court noted that "[i]n light of the foreign-policy and separation-of-powers concerns inherent in ATS litigation, there is an argument that a proper application of *Sosa* would preclude courts from ever recognizing any new causes of action under the ATS." *Id.* However, the Court stopped short of adopting that narrower application of *Sosa*, finding it unnecessary to resolve *Jesner*. *Id.*

*CACI Premier Tech., Inc.*, 320 F. Supp. 3d 781, 783 (E.D. Va. 2018).   Whether domestic corporations are similarly immune from ATS liability is an issue presently pending before the Supreme Court.  *See Doe v. Nestle, S.A.*, 929 F.3d 623 (9th Cir. 2019), cert. granted sub nom. *Cargill, Inc. v. Doe I*, 141 S. Ct. 184 (2020), and cert. granted sub nom. *Nestle USA, Inc. v. Doe I*, 141 S. Ct. 188 (2020).

### ii.  *Plaintiffs' Failure to Establish Subject Matter Jurisdiction Under the ATS*

With these principles in mind, the Court finds that Plaintiffs have failed to establish subject matter jurisdiction under the ATS.  For starters, the Court agrees with Defendants that Plaintiffs have pleaded insufficient facts that "touch and concern the territory of the United States . . . with sufficient force to displace the presumption against extraterritorial application." *Kiobel*, 569 U.S. at 125.  Plaintiffs' sole allegations connecting Central Romana's forcible evictions to the United States are that: (i) "decisions concerning whether and why to assemble the Central Romana force and to forcibly evict the Plaintiffs . . . likely were made in part by Fanjul employees in Florida"; and (ii) Fanjul is a U.S. citizen and Central Romana is its alter ego. *See* Compl. ¶¶ 25, 32, 50; *see also* Resp. at 3-4.  These allegations are not enough to overcome the presumption against extraterritorial application of the ATS.

In cases applying the *Kiobel*'s touch and concern test, the Eleventh Circuit has made clear that "claims will only displace the presumption against extraterritoriality if enough of the relevant conduct occurs domestically and if the allegations of domestic conduct are supported by a minimum factual predicate." *Doe v. Drummond Co.*, 782 F.3d 576, 598 (11th Cir. 2015) ("*Doe*").  For example, in *Baloco v. Drummond Co.*, the children of former union leaders who were murdered in Colombia brought an ATS lawsuit against an Alabama-based coal mining company, Drummond Company, Inc.  767 F.3d 1229, 1233 (11th Cir. 2014).  The *Baloco* plaintiffs alleged

that the murders were committed by paramilitaries of the AUC, an organization affiliated with Colombia's military that provided security against guerilla attacks for Drummond's coal mining facility and operations. *Id.* They contended that Drummond aided and abetted or conspired with the AUC by directly funding some of its operations and that it collaborated with the AUC to commit the assassinations of the union leaders. *Id.* The Complaint in *Baloco* alleged that Drummond officials "attended meetings in Colombia in 2000–2001 where there were discussions of paying the AUC to commit the murders and where money allegedly was paid," as well as "a meeting in which an AUC leader congratulated AUC members for carrying out the murders . . . ." *Id.* at 1236.

The Eleventh Circuit found that although the conduct by the Drummond officials, if true, was "extremely disturbing," "the allegations in the First Amended Complaint . . . fall short of the minimum factual predicate warranting the extraterritorial application of the ATS." *Id.* The Court reasoned that "the extrajudicial killings and war crimes asserted in the First Amended Complaint occurred in Colombia" and the fact that the Drummond entities were U.S. nationals did not carry significant weight. *Id.* The Court further noted that the plaintiffs failed "to allege any facts supporting a purported express agreement between Defendants and the AUC" to carry out the assassinations and found that "mere consent to support the AUC does not necessarily suggest any conduct in the United States directed at the murders of the union leaders . . . ." *Id.*

In *Doe*, which involved similar allegations, the Eleventh Circuit provided further guidance on the application of *Kiobel*'s touch and concern test. The *Doe* plaintiffs sued Drummond and others on behalf of over one hundred Colombian citizens killed by violent paramilitaries. 782 F.3d at 579. They averred that Drummond engaged the paramilitaries to eliminate suspected guerilla groups from around the company's mining operations in Colombia, and that the innocent

decedents were incidental casualties of Defendants' arrangement with the AUC.  *Id.*  The Court

held that in ATS cases with an extraterritorial component, displacement of the presumption against

extraterritorial application is "warranted if the claims have a U.S. focus and adequate relevant

conduct occurs within the United States."  *Id.* at 592.  The Court explained that in this "fact-

intensive inquiry," the site of the relevant conduct alleged carries significant weight—and other

relevant factors include the U.S. citizenship of the defendants, the U.S. interests implicated by

plaintiffs' claims, and the U.S. conduct alleged.  *Id.* at 592, 594-600.

      The Court concluded, however, that the *Doe* plaintiffs' general allegations that defendants

had made funding and policy decisions in the United States were insufficient to displace the

presumption where "the agreements between Defendants and the perpetrators of the killings, the

planning and execution of the extrajudicial killings and war crimes, the collaboration by

Defendants' employees with the AUC, and the actual funding of the AUC all took place in

Colombia."  *Id.* at 598.  The Court emphasized that claims will only displace the presumption "if

enough of the relevant conduct occurs domestically and if the allegations of domestic conduct are

supported by a minimum factual predicate" and found that "[p]laintiffs' allegations of domestic

conduct and connections are not particularly extensive or specific."  *Id.*

      So too here.  The only allegation in Plaintiffs' Complaint that so much as alludes to any

conduct within the United States is Plaintiffs' assertion that "decisions concerning whether and

why to assemble the Central Romana force and to forcibly evict the Plaintiffs … likely were made

in part by Fanjul employees in Florida."  Compl. ¶ 50.  Allowing Plaintiffs' claims to proceed on

such "a speculative assertion of domestic conduct would run counter to *Kiobel*'s requirement that

claims must touch and concern [the United States] with 'sufficient force.'"  *Doe*, 782 F.3d at 588

(citing *Mujica v. AirScan Inc.*, 771 F.3d 580, 591-92 (9th Cir. 2014)); *see also Jara v. Nunez*, 878

F.3d 1268, 1273 (11th Cir. 2018) (reiterating the requirement articulated in *Doe* that allegations of relevant domestic conduct must be "extensive" and "specific."). All of the non-speculative allegations in Plaintiffs' Complaint relate to conduct that occurred in the Dominican Republic— *i.e.*, Central Romana's forcible evictions of Plaintiffs, the destruction of Plaintiffs' homes, the physical and emotional injuries Plaintiffs experienced, Central Romana's detention of Plaintiffs, and so on. And although Fanjul's U.S. citizenship is relevant to the touch and concern test, it does not alone displace the presumption against extraterritoriality. *Doe*, 782 F.3d at 600.[4] If the defendants' U.S. citizenship did not carry the day in *Baloco* and *Doe*—where the allegations of U.S. conduct were at least slightly more detailed than they are in this action—it is certainly not enough to displace the presumption here.[5]

Although Defendants' challenge to ATS subject matter jurisdiction focuses solely on the extraterritorial nature of the conduct in this case, Plaintiffs' invocation of the ATS poses two additional and arguably deeper problems. First, as discussed above, the Supreme Court has foreclosed lawsuits against foreign corporations under the ATS. *Jesner*, 138 S. Ct. at 1403. Thus, because Central Romana is a British Virgin Islands corporation with its principal place of business in the Dominican Republic, it is not an appropriate ATS defendant.

---

[4] The Court notes that in finding that U.S. citizenship is a relevant factor, the Eleventh Circuit reasoned that the risk of international discord—fundamental to the extraterritoriality concerns expressed in *Kiobel*— is substantially reduced when the defendant is a U.S. citizen because the plaintiff in such a case "would not be haling foreign nationals into U.S. courts to defend themselves." *Id.* at 595. Here, given that the second defendant Central Romana is a foreign corporation, the Court is particularly mindful of the foreign policy concerns raised in *Kiobel*.

[5] Nor does Plaintiffs' alter-ego theory change this conclusion. Even if the Court were to find that Central Romana is Fanjul's alter-ego, the circumstances would be the same: allegations of conduct occurring entirely in the Dominican Republic coupled with mere conjecture regarding decision-making in the United States.

Second, although the Court certainly does not condone the conduct alleged in the Complaint, it sees no basis to recognize a cause of action under the ATS for the acts Plaintiffs have alleged. Plaintiffs assert that Defendants—who are non-state actors—"planned, organized and implemented the forcible eviction operations without a valid court order and without affording the Plaintiffs the right to judicial process and due process to which they were entitled under generally accepted norms of international law." Compl. ¶ 64. Plaintiffs contend that the American Convention on Human Rights[6] and the ICCPR "confirm the right to judicial process and due process." *Id.* ¶ 63. They quote, for example, the following language from Article 8.1 of the American Convention on Human Rights:

> Every person has the right to a hearing, with due guarantees and within a reasonable time, by a competent, independent, and impartial tribunal, previously established by law, in the substantiation of any accusation of a criminal nature made against him or for the determination of his rights and obligations of a civil, labor, fiscal, or any other nature.

*Id.* ¶ 59. They also quote Article 14.1 of the ICCPR, which provides that "[a]ll persons shall be equal before the courts and tribunals" and "[i]n the determination of any criminal charge against him, or of his rights and obligations in any suit at law, everyone shall be entitled to a fair and public hearing by a competent, independent and impartial tribunal established by law." *Id.* ¶ 61. Plaintiffs insist that Defendants' violations of their right to judicial and due process are actionable under the ATS. *Id.* ¶ 65.

---

[6] Plaintiffs refer to the convention as the "Inter-American Convention on Human Rights." Based on the language quoted from Article 8.1 of the Convention, the Court presumes that Plaintiffs are referring to the American Convention on Human Rights, carried out by the Inter-American Commission on Human Rights and the Inter-American Court of Human Rights. *See* American Convention on Human Rights, Articles 8, 33, *available at* https://www.cidh.oas.org/basicos/english/basic3.american%20convention.htm (last visited April 12, 2021).

Before considering a cause of action under the ATS, the Court must apply the two-part test announced in *Sosa*. *See Jesner*, 138 S. Ct. at 1399. The Court must first ask whether Plaintiffs can demonstrate that the alleged violation is a norm that is "specific, universal, and obligatory." *Id.* (quoting *Sosa*, 542 U.S. at 732). Then, even if there is a specific norm under international law that is controlling, the Court must determine whether allowing the case to proceed under the ATS is a proper exercise of judicial discretion, "or instead whether caution requires the political branches to grant specific authority before corporate liability can be imposed." *Id.*

In *Estate of Amergi ex rel. Amergi v. Palestinian Authority*, the Eleventh Circuit described several characteristics that "may suggest that a norm falls within the narrow sphere of the ATS":

> For one, the existence of a treaty reflecting an overwhelming international consensus on certain norms may be evidence of the specificity and international scope of concern required by the ATS . . . Moreover, state action, or complicity therewith, may also be a powerful indicia of a violation that is sufficiently definite to support a cause of action under the ATS.

611 F.3d 1350, 1357 (11th Cir. 2010). The *Amergi* suit arose from the murder of an Israeli citizen who was shot and killed as she drove her car through the Gaza strip. *Id.* at 1353. Plaintiffs alleged that the decedent was killed in the course of an armed conflict between the defendants and the state of Israel and that the district court therefore had subject matter jurisdiction under the ATS. *Id.* at 1358. The Eleventh Circuit affirmed the district court's dismissal of the case for lack of subject matter jurisdiction, finding that "a single killing by non-state actors purportedly in the course of an armed conflict" failed to satisfy the ATS's high bar. *Id.* at 1353. The Court recognized that "[s]ome acts, such as torture and murder committed in the course of war crimes, violate the law of nations regardless of whether the perpetrator acted under color of law of a foreign nation or only as a private individual," but found that the plaintiffs had not alleged any war crimes independent

of the single attack on the decedent. *Id.* at 1361 (quoting *Sinaltrainal v. Coca-Cola Co.*, 578 F.3d 1252, 1266-67 (11th Cir. 2009)).

Other cases similarly suggest that in the absence of state action, the ATS typically only imposes liability on private parties for violations of the most serious international norms, such as war crimes, slave trading, and genocide. *See Romero v. Drummond Co.*, 552 F.3d 1303, 1316 (11th Cir. 2008) ("Under the Alien Tort Statute, state actors are the main objects of the law of nations, but individuals may be liable, under the law of nations, for some conduct, such as war crimes, regardless of whether they acted under color of law of a foreign nation."); *Aldana*, 416 F.3d at 1247 ("State-sponsored torture, unlike torture by private actors, likely violates international law and is therefore actionable under the Alien Tort Act."); *Kadic v. Karadzic*, 70 F.3d 232, 241-44 (2d Cir.1995) (holding that private individuals may be held liable under the ATS for genocide and war crimes but not torture or summary execution); *Bao Ge v. Li Peng*, 201 F. Supp. 2d 14, 22 (D.D.C. 2000), aff'd sub nom. *Bao v. Li*, 35 F. App'x 1 (D.C. Cir. 2002) (noting that "[t]he cases recognizing an [ATS] cause of action against private individuals or corporations have done so in the context of the most egregious kinds of human rights violations," such as genocide, war crimes, and systematic killing and rape).

Here, Plaintiffs' expressed theory of ATS liability is essentially that Defendants, which are private actors, deprived Plaintiffs of the "judicial process and due process to which they were entitled under generally accepted norms of international law." Compl. ¶ 64. Given that courts have sharply circumscribed ATS liability for private actors to the most heinous violations of international norms, the Court finds that Plaintiffs' generalized allegations of "due process" violations by private corporations are not actionable under the ATS. And even setting aside Plaintiffs' articulated theory of ATS liability—which centers on due process violations—and

focusing more broadly on the conduct alleged in the Complaint, the Court does not see a basis for

recognizing a cause of action under the ATS. Plaintiffs' allegations focus on assault, battery, false

imprisonment, and intentional infliction of emotional distress occurring in the course of forced

evictions at the hands of private actors. The Court has not located any authority suggesting that

forced evictions by private parties are actionable under the ATS—and is highly reluctant to create

such a cause of action considering that courts have not recognized ATS liability for more serious

conduct like torture and murder in the absence of state involvement. Nor do Plaintiffs have a

viable ATS claim based on their allegations of assault, battery, false imprisonment, and intentional

infliction of emotional distress. *See Saleh v. Titan Corp.*, 580 F.3d 1, 15 (D.C. Cir. 2009) (finding

that plaintiff's claim that assault and battery violates a settled consensus of international law is "an

untenable, even absurd, articulation of a supposed consensus of international law."); *Sosa*, 542

U.S. at 738 (holding that jurisdiction would not lie under the ATS for a "single illegal detention of

less than a day"); *Aldana*, 416 F.3d at 1247 (finding no basis in law to recognize plaintiffs' claim

for "arbitrary detention").

The treaties Plaintiffs cite in support of their ATS claim do not compel a different result.

As mentioned above, when applying the *Sosa* test, courts are urged to consider international treaty

obligations governing the conduct at issue. However, here, Plaintiffs rely on general provisions in

the ICCPR and the American Convention on Human Rights relating to the right to a fair trial and

equality before the courts. In *Aldana*, the Eleventh Circuit held that jurisdiction would not lie

under the ATS for plaintiffs' claims of "cruel, inhuman, degrading treatment or punishment" where

plaintiffs alleged that a security force hired by the defendant's subsidiary in Guatemala held

plaintiffs hostage, threatened to kill them, shoved them with guns, and forced them at gunpoint to

denounce their union activity and resign. 416 F.3d at 1245. The Eleventh Circuit reasoned that

district courts that had permitted such causes of action had relied on the ICCPR but that, as the Supreme Court explained in *Sosa*, the ICCPR did not "create obligations enforceable in the courts" because it was not self-executing.[7] *Id.* at 1247 (quoting *Sosa*, 542 U.S. at 736); *see also Sairras v. Schleffer*, No. 07-23295, 2009 WL 10708747, at *3 (S.D. Fla. Sept. 21, 2009). Likewise, the American Convention on Human Rights has been signed but not ratified by the United States, and therefore does create binding obligations in United States courts. *See Garza v. Lappin*, 253 F.3d 918, 925 (7th Cir. 2001); *Flores v. S. Peru Copper Corp.*, 414 F.3d 233, 258 (2d Cir. 2003); *Mitchell v. United States*, No. 01-CR-01062, 2020 WL 4940909, at *5 (D. Ariz. Aug. 22, 2020); *see also* American Convention on Human Rights, General Information of the Treaty: B-32, *available at* https://www.oas.org/dil/treaties_b-32_american_convention_on_human_rights _sign.htm (last visited April 12, 2021). Thus, Plaintiffs' reliance on these covenants and conventions does not support jurisdiction under the ATS.[8]

Even if Plaintiffs had identified a specific, controlling international law norm, allowing this case to proceed under the ATS without specific authority from the political branches would not be a prudent exercise of judicial discretion. *See Jesner*, 138 S. Ct. at 1399. Of course, freeing people from violence is an "ageless dream," *Amergi*, 611 F.3d at 1365 (quotation omitted), and the Court would hope that evictions—both domestically and abroad—are carried out as peacefully

---

[7] Notably, the Eleventh Circuit also found the district court had appropriately dismissed the plaintiff's ATS claim based on "crimes against humanity." *Id.* The Court held that "to the extent that crimes against humanity are recognized as violations of international law, they occur as a result of 'widespread or systematic attack' against civilian populations." *Id.* (quoting *Cabello v. Fernandez–Larios*, 402 F.3d 1148, 1161 (11th Cir. 2005)).

[8] Additionally, the Court notes that the provisions Plaintiffs cite from these documents appear to have little connection to the conduct described in the Complaint. The cited provisions concern the right to a fair hearing and equality before judicial tribunals, but Plaintiffs factual allegations do not relate to attempts to avail themselves of judicial functions.

as possible. But recognizing a cause of action under the ATS for forced evictions by private parties abroad in the absence of allegations of state involvement would have drastic practical consequences and run afoul of the vigilant gatekeeping role that *Sosa* contemplated for the courts.[9] For example, our courts would effectively be open to any alien who was injured in the course of an eviction by a private landlord on foreign territory, assuming the alien can plead sufficient U.S.-based conduct to satisfy the *Kiobel* touch-and-concern test. The Court sympathizes with Plaintiffs' plight but finds it inappropriate to exercise the residual common law discretion it is afforded under *Sosa* in this dramatic fashion.

The Court thus finds that it lacks subject matter jurisdiction under the ATS because (i) Plaintiffs have not overcome the presumption against extraterritorial application of the statute; (ii) Plaintiffs do not have a viable ATS claim against Central Romana because it is a foreign corporation; and (iii) the acts alleged in Plaintiffs' Complaint are not actionable under the ATS.

### b. Federal Question Jurisdiction Under 28 U.S.C. § 1331

The Court now turns to whether it has subject matter jurisdiction under 28 U.S.C. section 1331, which provides that "[t]he district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States." Plaintiffs assert section 1331 as a basis for subject matter jurisdiction but do not explain how their action arises under the Constitution, laws, or treaties of the United States. The Court assumes that Plaintiffs are invoking section 1331 based on their claim that Defendants violated the ICCPR and the American Convention on Human Rights. However, "courts have . . . held consistently that only treaties with a specific provision permitting a private action, or one to be clearly inferred, may suffice as the

---

[9] The Court need not analyze at this time whether jurisdiction would lie under the ATS for forced evictions at the hands of state actors or with state involvement.

basis for federal jurisdiction. Otherwise, no cause of action is stated and no federal law is applicable." *Honey Holdings I, Ltd. v. Alfred L. Wolff, Inc.*, 81 F. Supp. 3d 543, 551 (S.D. Tex. 2015) (quotations and alterations omitted); *see also Hanoch Tel-Oren v. Libyan Arab Republic*, 517 F. Supp. 542, 546 (D.D.C. 1981), aff'd sub nom. *Tel-Oren v. Libyan Arab Republic*, 726 F.2d 774 (D.C. Cir. 1984).

Here, Plaintiffs do not have a privately enforceable claim under the ICCPR or the American Convention on Human Rights. The former was ratified with a declaration by Congress that the substantive provisions of the document were not self-executing and the latter has not been ratified by the United States. *See Sosa*, 542 U.S. at 735 (indicating that "[f]or any treaty to be susceptible to judicial enforcement it must both confer individual rights and be self-executing" and the ICCPR meets neither requirement); *Fernando v. Haekkerup*, No. 13-3176, 2013 WL 11318853, at *2 (E.D.N.Y. Sept. 23, 2013), aff'd, 596 F. App'x 40 (2d Cir. 2015) (finding plaintiff did not have a privately enforceable claim under the ICCPR or the UN Convention on the Rights of the Child, which had not been ratified); *Mitchell*, 2020 WL 4940909, at *5 ("An unratified treaty has no binding effect within the U.S."). Accordingly, these documents cannot serve as a basis for federal question jurisdiction.

### c.   Alienage Jurisdiction Under 28 U.S.C. § 1332(a)(2)

Although not alleged in the Complaint, Plaintiffs' Response raises alienage jurisdiction as an alternative ground for subject matter jurisdiction in this case. However, Plaintiffs' reliance on section 1332(a)(2) is also unavailing. Alienage jurisdiction is a form of diversity jurisdiction under which federal courts may hear cases between "citizens of a State and citizens or subjects of a foreign state." *Molinos Valle Del Cibao, C. por A. v. Lama*, 633 F.3d 1330, 1340 (11th Cir. 2011) (quoting 28 U.S.C. § 1332(a)(2)). Like general diversity under section 1332(a)(1), alienage

6/a

diversity must be complete—"an alien on both sides of a dispute will defeat jurisdiction." *Caron v. NCL (Bahamas), Ltd.*, 910 F.3d 1359, 1364 (11th Cir. 2018). Here, Plaintiffs are all citizens of the Dominican Republic and are suing Central Romana, which "is incorporated under the laws of the British Virgin Islands and has a principal place of business located in the Dominican Republic." Compl. ¶¶ 1-26. Because both Plaintiffs and Central Romana are aliens, section 1332(a)(2) does not support the exercise of jurisdiction in this case.

## II. Insufficiency of Alter-Ego and Agency Allegations

To survive a motion to dismiss under Fed. R. Civ. P. 12(b)(6), "a complaint must include 'enough facts to state a claim to relief that is plausible on its face.'" *Hunt v. Aimco Properties, L.P.*, 814 F.3d 1213, 1221 (11th Cir. 2016) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). When reviewing a motion to dismiss pursuant to Rule 12(b)(6), a court must accept as true all factual allegations contained in the complaint, and the plaintiff should receive the benefit of all favorable inferences that can be drawn from the facts alleged. *See Chaparro v. Carnival Corp.*, 693 F.3d 1333, 1335 (11th Cir. 2012); *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). While the court is required to accept as true all allegations contained in the complaint, courts "are not bound to accept as true a legal conclusion couched as a factual allegation." *Twombly*, 550 U.S. at 555 (quotation omitted); *Iqbal*, 556 U.S. at 678.

A parent company can be held liable for the acts of its subsidiaries in three ways: "(1) an alter ego theory to 'pierce the corporate veil;' (2) vicarious liability based on general agency principles; or (3) direct liability where the parent directly participated in the wrong complained of." *Salinero v. Johnson & Johnson*, No. 18-23643, 2019 WL 4585215, at *2 (S.D. Fla. Sept. 20, 2019). To establish a claim for piercing the corporate veil under Florida law, a plaintiff must allege that "(1) the shareholder dominated and controlled the corporation to such an extent that the

corporation's independent existence, was in fact non-existent and the shareholders were in fact alter egos of the corporation; (2) the corporate form [was] used fraudulently or for an improper purpose; and (3) the fraudulent or improper use of the corporate form caused injury to the claimant." *Molinos*, 633 F.3d at 1349 (quoting *Gasparini v. Pordomingo*, 972 So. 2d 1053, 1055 (Fla. 3d DCA 2008)); *see also Johnson Enterprises of Jacksonville, Inc. v. FPL Grp., Inc.*, 162 F.3d 1290, 1320 (11th Cir. 1998). Because the veil-piercing elements under federal common law are substantially similar,[10] the Court need not engage in a choice of law analysis at this stage to determine whether Florida law or federal common law governs the alter ego analysis.

Plaintiffs allege that Fanjul is liable for the actions of Central Romana under agency and alter-ego theories because the companies are "interconnected and interrelated to such an extent that the acts of one are tantamount to the acts of the other." Compl. at 7. Specifically, Plaintiffs assert that Fanjul owns 35% of Central Romana's shares through a subsidiary, Agro-Industrial Management, Inc., and that Fanjul and Central Romana have four overlapping officers and directors. *Id.* ¶¶ 41-42. These allegations—which are buried among seemingly irrelevant facts

---

[10] The federal common law alter ego rule requires that three elements be proved in order to pierce the corporate veil:

(1) Control, not mere majority or complete stock control, but complete domination, not only of finances, but of policy and business practices in respect to the transaction attacked so that the corporate entity as to this transaction had at the time no separate mind, will or existence of its own; and

(2) Such control must have been used by the defendant to commit fraud or wrong, to perpetrate the violation of a statutory or other positive legal duty, or a dishonest and unjust act in contravention of plaintiff's legal rights; and

(3) The aforesaid control and breach of duty must proximately cause the injury or unjust loss complained of.

*MCI Telecommunications Corp. v. O'Brien Mktg., Inc.*, 913 F. Supp. 1536, 1541 (S.D. Fla. 1995) (citing *United Steelworkers of America, AFL–CIO–CLC v. Connors Steel Co.*, 855 F.2d 1499, 1506 (11th Cir. 1988)).

63a

relating to the other non-defendant entities that are part of the Fanjul's "sugar empire"—are insufficient to plead an alter ego theory. *See, e.g., First Auto. Serv. Corp., N.M. v. First Colonial Ins. Co.*, No. 07-00682, 2008 WL 816973, at \*6 (M.D. Fla. Mar. 25, 2008) ("Common ownership and common management, without more, are insufficient to override corporate separateness and pave the way for alter ego liability.") (quoting *Weiss Capital Management, Inc. v. Crowder*, 964 So. 2d 865, 866 (Fla. 4th DCA 2007)). Plaintiffs do not allege how Fanjul controls or dominates Central Romana to such an extent that the Court should disregard the corporate entity. Nor do Plaintiffs advance any allegations of improper or fraudulent use of the corporate form.

Plaintiffs have also alleged insufficient facts to support Fanjul's vicarious liability based on general agency principles. Under Florida law, to hold a parent liable as the principal of a subsidiary-agent, Plaintiffs must establish: "(1) acknowledgement by the principal that the agent will act for it, (2) the agent's acceptance of the undertaking, and (3) control by the principal over the actions of the agent." *Salinero*, 2019 WL 4585215, at \*3 (quoting *State v. Am. Tobacco Co.*, 707 So. 2d 851, 854 (Fla. 4th DCA 1998)); *see also Brusherd v. Ford Motor Co.*, No. 08-513, 2009 WL 10670567, at \*4 (M.D. Fla. Sept. 18, 2009). The parent corporation "must exercise control to the extent the subsidiary manifests no separate corporate interests of its own and functions solely to achieve the purposes of the dominant corporation." *Salinero*, 2019 WL 4585215, at \*3 (internal quotation marks omitted). Similarly, under federal common law,

> the relationship of principal and agent does not obtain unless the parent has manifested its desire for the subsidiary to act upon the parent's behalf, the subsidiary has consented so to act, the parent has the right to exercise control over the subsidiary with respect to matters entrusted to the subsidiary, and the parent exercises its control in a manner more direct than by voting a majority of the stock in the subsidiary or making appointments to the subsidiary's Board of Directors.

*In re S. Afr. Apartheid Litig.*, 633 F. Supp. 2d 117, 121 (S.D.N.Y. 2009) (quoting *Transamerica Leasing, Inc. v. Republica de Venezuela*, 200 F.3d 843, 849 (D.C. Cir. 2000)).

Here, Plaintiffs' Complaint is devoid of allegations that would support these elements of acknowledgment, acceptance, or control. All Plaintiffs assert to establish vicarious liability is common management between Fanjul and Central Romana and Fanjul's ownership of a minority of Central Romana's shares. The Court therefore concludes that Plaintiffs have insufficiently alleged a basis to find Fanjul liable for the actions of Central Romana.

### III. Plaintiffs' Request for Leave to Amend Complaint

As mentioned above, Plaintiffs request leave to amend the Complaint to more clearly plead that "[d]ecisions regarding why to forcibly evic[t] the Plaintiffs from their homes and the manner in which to do it, and similar decisions, were made by Fanjul in the United States." Resp. at 3-4. They have also requested leave to amend to plead alienage jurisdiction. *Id.* at 2.

Under Fed. R. Civ. P. 15(a)(2), leave to amend should be freely given "when justice so requires." However, a Court may deny leave "if amendment would be futile." *L.S. ex rel. Hernandez v. Peterson*, 982 F.3d 1323, 1332 (11th Cir. 2020). Leave to amend is futile "if an amended complaint would still fail at the motion-to-dismiss or summary-judgment stage." *Id.* (citation omitted). "In other words, the question is whether 'the underlying facts or circumstances relied upon by a plaintiff may be a proper subject of relief.'" *Id.* (quoting *Hall v. United Ins. Co. of Am.*, 367 F.3d 1255, 1262 (11th Cir. 2004)).

Because the Court finds that the acts alleged by Plaintiffs are not actionable under the ATS, granting Plaintiffs leave to amend their allegations of U.S. conduct to establish ATS jurisdiction would be futile. Even if Plaintiffs were to better plead that Fanjul was involved in decisions about whether and how to evict the Plaintiffs, this would not bring Plaintiffs' claims within the scope of

the ATS.  *See, e.g., Jara*, 878 F.3d at 1274 (finding that amendment of the complaint to replead

ATS claim would be futile because amended complaint would not allege conduct focused in the

United States to a degree necessary to overcome the presumption against extraterritoriality); *Haim*

*v. Neeman*, No. 12-351, 2013 WL 12157279, at *4 (D.N.J. Jan. 23, 2013), aff'd sub nom. *Ben-*

*Haim v. Neeman*, 543 F. App'x 152 (3d Cir. 2013) (finding that leave to amend would be futile

where claims were not actionable under the ATS); *see also Nicholl v. Bd. of Regents of Univ. Sys.*

*of Georgia*, 706 F. App'x 493, 499 (11th Cir. 2017) (finding that district court did not err by

denying motion for leave to amend because plaintiff did not show that proposed amendment would

have avoided dismissal).  Nor would Plaintiffs' proposed amendment change the fact that based

on the Supreme Court's holding in *Jesner*, Plaintiffs cannot bring an ATS claim against Central

Romana, a foreign corporation.   The Court therefore denies Plaintiffs' request to replead

jurisdiction under the ATS.

However, although Plaintiffs' current Complaint does not support jurisdiction under

section 1332(a)(2), it would not necessarily be futile to grant Plaintiffs leave to amend their

Complaint to plead this basis for jurisdiction.  For example, it is possible that Plaintiffs would drop

Central Romana as a party to maintain alienage jurisdiction.  *See Rivas v. The Bank of New York*

*Mellon*, 676 F. App'x 926, 931 (11th Cir. 2017) (finding that district court erred when it denied

leave to amend complaint because it was "distinctly possible that an amended complaint would

allege that the parties are citizens of states other than the states of residence listed in the original

complaint" or "would drop certain parties in an effort to maintain diversity jurisdiction.").

The Court still perceives several potential issues with Plaintiffs' case were they to amend

the Complaint in this manner.  For instance, the Court is doubtful that the state common law claims

Plaintiffs assert, Counts V-IX, are viable based on the extraterritorial nature of the acts alleged in

the Complaint. *See In re Chiquita Brands Int'l, Inc. Alien Tort Statute & S'holder Derivative Litig.*, 190 F. Supp. 3d 1100, 1112-13 (S.D. Fla. 2016). Further, it is likely that Central Romana is an indispensable party under Fed. R. Civ. P. 19 and therefore cannot be dropped from this action. Nevertheless, in an abundance of caution, and because these specific issues were not briefed by the parties in connection with this Motion, the Court will allow Plaintiffs to amend their Complaint to the extent they wish to assert a basis for jurisdiction other than the ATS.

To be clear, if Plaintiffs proceed with amending their Complaint, they shall not assert jurisdiction under the ATS or allege causes of action under the ICCPR and the American Convention on Human Rights for the reasons explained herein.

## **CONCLUSION**

For the foregoing reasons, it is hereby **ORDERED AND ADJUDGED** as follows:

1. Defendants' Motion to Dismiss [ECF No. 31] is **GRANTED** *without prejudice*.

2. If Plaintiffs wish to file an Amended Complaint in conformance with this Order, they shall do so on or before **May 3, 2021**.

3. Plaintiffs' Motion to Supplement [ECF No. 47] is **DENIED AS MOOT**.

**DONE AND ORDERED** in Fort Lauderdale, Florida this 12th day of April, 2021.

**RODOLFO A. RUIZ II**
**UNITED STATES DISTRICT JUDGE**

**United States District Court for the Southern District of Florida**

| | | |
|---|---|---|
| Maria Magdalena Alvarez Galvez, individually and as the Guardian of her minor children, Heisha Munoz and Clamil Munoz, et al., | : : : : | |
| v. | : : | Case No. 9:20-cv-80123-RAR |
| Fanjul Corp. | : : | |

### *Amended Complaint*

Plaintiffs, Maria Magdalena Alvarez Galvez, et al., hereby bring a series of claims against defendant, Fanjul Corp., of which the following is a statement:

### *Parties*

1.      Plaintiff Maria Magdalena Alvarez Galvez is an adult citizen and resident of the Dominican Republic.  She sues on her own behalf and as the Guardian of her minor children, Heisha Munoz and Clamil Munoz.

2.      Plaintiff Maria Altagracia Calderon is an adult citizen and resident of the Dominican Republic.

3.      Plaintiff Carline Paul is an adult citizen and resident of the Dominican Republic.

4.      Plaintiff Domitila Mejia is an adult citizen and resident of the Dominican Republic.  She sues on her own behalf and as the Guardian of her minor grandchildren Erica de la Cruz Mejia, Erik de la Cruz Mejia, Nayeli de la Cruz Mejia and Yeri de la Cruz Mejia.

5.      Plaintiff Severa Jimenez is an adult citizen and resident of the Dominican Republic.

6.      Plaintiff Francisco Herrera de la Cruz is an adult citizen and resident of the Dominican Republic.

68a

7.      Plaintiff Manuel Sterling is an adult citizen and resident of the Dominican Republic.

8.      Plaintiff Ana Alvarez Monte is an adult citizen and resident of the Dominican Republic.

9.      Plaintiff Ariana Marrero Altagracia is an adult citizen and resident of the Dominican Republic.

10.      Plaintiff Maria Jimenez is an adult citizen and resident of the Dominican Republic.

11.      Plaintiff Luz Clarita Sanchez is an adult citizen and resident of the Dominican Republic.

12.      Plaintiff Rafael Mancebo is an adult citizen and resident of the Dominican Republic.

13.      Plaintiff Carlos Manuel Alcantara is an adult citizen and resident of the Dominican Republic.

14.      Plaintiff Ruth D. Sena is an adult citizen and resident of the Dominican Republic.

15.      Plaintiff Ana Rosa Almonte is an adult citizen and resident of the Dominican Republic.

16.      Plaintiff Annoris Morales Jimenez is an adult citizen and resident of the Dominican Republic.  She sues on her own behalf and as the Guardian of her minor child Eliani Vicente Morales.

17.      Plaintiff Domingo Mejia is an adult citizen and resident of the Dominican Republic.

*69a*

18.     Plaintiffs Emely Sierra and Edi Luis Jean, husband and wife, are adult citizens and residents of the Dominican Republic.  They sue on their own behalf and as the Guardians of their minor children Yeidi Sierra and Andreili Sierra.

19.     Plaintiff Jhonsi Arrollo is an adult citizen and resident of the Dominican Republic.  She sues on her own behalf and as the Guardian of her minor children Jendri Arroyo, Jhosito Arroyo and Jhojan Arroyo.

20.     Plaintiff Gertrudis Veloz Gomez is an adult citizen and resident of the Dominican Republic.

21.     Plaintiff Yefry Sierra Doroteo is an adult citizen and resident of the Dominican Republic.

22.     Plaintiff Juanita Coffils is an adult citizen and resident of the Dominican Republic.

23.     Plaintiff Dania Chala is an adult citizen and resident of the Dominican Republic.

24.     Plaintiff Nanci Avila is an adult citizen and resident of the Dominican Republic. She sues on her own behalf and as the Guardian of her minor children Leslie Castillo, Fabela Alcantara and Daniel Alcantara.

25.     Defendant Fanjul Corp. ("Fanjul") is a Florida corporation with a principal place of business located in West Palm Beach, Florida.

### *Jurisdiction and Venue*

26.     This Court has subject matter jurisdiction over the claims asserted herein pursuant to 28 U.S.C. §1332(a)(2).  This Court may exercise supplemental jurisdiction over the state law claims asserted herein pursuant to 28 U.S.C. §1367.

*70a*

27.     Venue is proper in this judicial district by reason of 28 U.S.C. §1391(b)(1) and (b)(2).

### Personal Jurisdiction

28.     This Court may exercise personal jurisdiction over Fanjul because, *inter alia*, it is a Florida corporation and transacts business in Florida and in this judicial district. Thus, this Court's exercise of personal jurisdiction over it does not offend traditional notions of fair play and substantial justice.

### Background Facts

### A. The Unlawful Forcible Evictions

29.     In two separate military-style incursions during the early morning hours of January 26, 2016, a public holiday in the Dominican Republic in honor of Juan Pablo Duarte, one of the founding fathers of the Dominican Republic, heavily armed agents, servants and/or employees of Central Romana Corporation, Ltd. (the "Central Romana force") forcibly evicted approximately 60 families, including the Plaintiffs, from their homes in the Villa Guerrero neighborhood of El Seibo, Dominican Republic, without legal authority and without their consent. After evicting the Plaintiffs and their neighbors, the Central Romana force destroyed their homes and personal property.

30.     While the Central Romana force was destroying their homes, they forcibly prevented the Plaintiffs and their neighbors from leaving the area.

31.     In carrying out the evictions and destruction of the Plaintiffs' homes, in some instances while the Plaintiffs and their children were still physically present in the homes, the Central Romana force physically injured many people, including some of the Plaintiffs. For example:

7/a

    a.     Plaintiff Maria Magdalena Alvarez Galvez, a single mother of two small children at the time of the evictions, one of whom suffers from asthma, did not want to leave the house during the evictions to avoid triggering an asthma attack for him. The Central Romana force began destroying her home when she was still inside with her children, resulting in her son having being injured by a nail in his foot. The Central Romana force threatened her directly: "They told us that they will come with a bulldozer and destroy our houses even if we are inside."

    b.     Morena Then Sanchez, a single mother of four children at the time of the evictions, one of whom was sick that night, asked the Central Romana force not to destroy her home. They ordered her out of the house and destroyed it.

    c.     Plaintiff Francisco Herrera had surgery on his leg shortly before the evictions, and as a result, used crutches and had severely limited mobility. The Central Romana force began destroying his home while he was still inside, and had he not screamed at them to allow him to leave his home before they destroyed it, he would have suffered serious injury.

    d.     Plaintiffs Emily Sierra and Edi Luis Jean were the parents of two young girls at the time of the evictions. Their daughters were sleeping inside their home when the Central Romana force began to destroy it.

    e.     Manuel Isaias had an operation for cataracts in his eyes a few days before the evictions. Due to the sudden movements he was subjected to by the Central Romana force during the evictions, he lost the sight in one of his eyes.

    32.     The Central Romana force aimed their weapons at the Plaintiffs and others, including children, and made direct threats of physical harm.

    33.     Plaintiffs have experienced severe psychological and emotional trauma and harm as a direct result of the actions of the Central Romana force.

72a

34. Central Romana's purpose in undertaking the unlawful forcible evictions was to improperly obtain additional land at no cost in order to expand its sugar cane operations and substantially increase the revenues it derives from the ultimate sale of raw sugar and refined sugar products.

### B. Fanjul is Vicariously Liable for Central Romana's Actions

35. Historically and at all times relevant to the actions that give rise to this case, Fanjul and Central Romana have been and are interconnected and interrelated to such an extent that Fanjul is vicariously liable to the Plaintiffs for the actions of the Central Romana force that resulted in damage to the Plaintiffs under both agency and alter ego theory.

36. Fanjul controls and dominates Central Romana to such an extent that the Court should disregard Central Romana's purported separate and distinct corporate existence. The basis of Fanjul's control and dominance of Central Romana principally can be found in Fanjul's corporate structure and the control exercised by the members of the Fanjul family, who own and control Fanjul, over the operations of Central Romana.

37. Fanjul is the head of a sugar empire owned, operated and/or controlled by the Fanjul family, which consists of the following entities:

Fanjul Corp.
Central Romana Corporation Ltd.
Florida Crystals Food Corp.
Florida Crystals Corporation[1]
American Sugar Refining, Inc.
ASR Group International, Inc.
Agro-Industrial Management, Inc.
Agro-Industrial Management II, Inc.
Domino Foods, Inc.

---

[1] Fanjul played a principal role in the creation of Florida Crystals Corporation in 1997. Florida Crystals Corporation was created by combining and consolidating the Florida sugar operations of various entities, with Fanjul contributing stock in its subsidiaries to Florida Crystals Corporation. The principal entities involved in the creation of Florida Crystals Corporation, in addition to Fanjul, were Okeelanta Corporation, New Hope Sugar Company and other indirect subsidiaries of Fanjul.

*73a*

C & H Sugar Company, Inc.
Sugar Farms Co-op[2]
America's Export Corporation
Okeelanta Corporation[3]
New Hope Sugar Company

These entities are interconnected in terms of their ownership to such an extent that it can

be said that the Fanjul family controls each of them:

a.    Fanjul (the successor of Flo-Sun, Inc.) owns 5,100 shares of Agro-Industrial
      Management, Inc. (the successor of Flo-Sun Sugar Company).

b.    Fanjul owns 673,640 shares (72%) of Florida Crystals Corporation.

c.    Agro-Industrial Management, Inc. owns 1,050 shares (35%) of Central Romana

d.    Sugar Farms Co-op is an indirect subsidiary of Fanjul because Fanjul owns 72%
      of Florida Crystals Corporation, and through a series of subsidiaries, Florida
      Crystals Corporation controls Sugar Farms Co-op.

e.    Okeelanta Corporation operates as a subsidiary of Florida Crystals
      Corporation.

e.    Americas Export Corporation is a subsidiary of Florida Crystals
      Corporation.

f.    Agro-Industrial Management II, Inc. is a subsidiary of Florida Crystals
      Corporation.

38.    Relevant documents of Florida Crystals and Flo-Sun, Inc. (the predecessor of

Fanjul) show the control and dominance Flo-Sun and Florida Crystals exercised over Central

Romana.  For example, in an organization chart, Central Romana is described as a subsidiary of

Florida Crystals (The Fanjuls).  *See* Exhibit A attached hereto and made a part hereof.

Moreover, in a brochure produced by Flo-Sun and the Fanjul Group, Flo-Sun represents that it

has been involved in the sugar business for 150 years, that it produces 10 million tons of sugar

---

[2] Sugar Farms Co-op is involved in the cultivation of sugar cane in Florida.
[3] Okeelanta Corporation is engaged in the farming, milling, packaging and distribution of sugar cane.

cane and 3.5 million tons of refined sugar, that it is the "leading producer of refined sugar in …

the Dominican Republic," that it owns 250,000 acres of land in the Dominican Republic, and that

its holdings in the Dominican Republic include the Casa de Campo Resort.  _See_ Exhibit B

attached hereto and made a part hereof.  Central Romana purchased the Casa de Campo Resort in

the late 1980s.  _See_ Exhibit C attached hereto and made a part hereof.

    39.    The control and domination Fanjul exercises over Central Romana is evidenced

by the interconnectedness of these entities in terms of their governance (as between the officers

and directors of Fanjul on the one hand, and the entities that comprise the Fanjul sugar empire on

the other) and is most striking with respect to the members of the Fanjul family (Alfonso Fanjul

Jr., Jose Fanjul Sr., Jose Fanjul Jr., Alexander Fanjul and Andres Fanjul).  These five members

of the Fanjul family control and dominate both Fanjul and Central Romana:

**<u>Alfonso Fanjul Jr.</u>**

Chairman, CEO and Director of Fanjul Corp.
Chairman, CEO and Director of Florida Crystals Corporation
Chairman, President and Director of Central Romana Corporation Ltd
Chairman of Okeelanta Corporation

**<u>Jose Fanjul Sr.</u>**

Vice Chairman, President, Chief Operating Officer and Director of Fanjul Corp.
Vice Chairman, President, Chief Operating Officer and Director of Florida Crystals Corp.
Vice President and Director of Central Romana Corporation Ltd

**<u>Jose Fanjul Jr.</u>**

Vice President of Fanjul Corp.
Executive Vice President and Director of Florida Crystals Corporation
Director of Central Romana Corporation Ltd
Director of ASR Group International, Inc.
Director of American Sugar Refining, Inc.
Director of Domino Foods, Inc.

75a

**Andres Fanjul**

Vice President and Director of Fanjul Corp.
Vice President of Florida Crystals Corporation

**Alexander Fanjul**

Director of Fanjul Corp.
Sr. Vice President of Florida Crystals Corporation

40.    By virtue of their positions as senior officers and directors of Central Romana,

Alfonso Fanjul, Jr., Jose Fanjul, Sr. and Jose Fanjul, Jr. control and dominate the Board of

Directors of Central Romana.  Moreover, because they are also senior officers and directors of

Fanjul, and are part of the Fanjul family group that controls Fanjul, Fanjul controls and

dominates Central Romana.

41.    The interlocking directorates and officerships present with respect to the other

companies that comprise the Fanjul sugar empire, set forth below, show that these companies

cannot be considered autonomous:

**Armando A. Tabernilla**

Vice President, General Counsel, Secretary and Director of Florida Crystals Corporation
Vice President, General Counsel, Secretary and Director of ASR Group International Inc.
Vice President, General Counsel and Secretary of American Sugar Refining, Inc.
Vice President, General Counsel, Secretary and Director of Domino Foods, Inc.
Vice President, General Counsel and Secretary of C & H Sugar Company, Inc.
Vice President and General Counsel of Agro-Industrial Management, Inc.

**Luis Fernandez**

Vice President of Fanjul Corp.
Officer and Director of Florida Crystals Corporation
Co-President and Director of ASR Group International, Inc.
Co-President and Director of American Sugar Refining, Inc.
Co-President and Director of Domino Foods, Inc.
Director of Central Romana Corporation, Ltd.

76a

**Philip Zukowski**

Vice President of Taxation of Fanjul Corp.
Vice President of Taxation of Florida Crystals Corporation
Vice President of Taxation of ASR Group International, Inc.
Vice President of Taxation of American Sugar Refining, Inc.
Vice President of Taxation of Domino Foods, Inc.
Vice President of Taxation of C & H Sugar Company, Inc.

**William F. Tarr**

Vice President of Fanjul Corp.
Vice President of Florida Crystals Corporation
Vice President of Agro-Industrial Management, Inc.
Vice President of Florida Crystals Food Corporation

**Erik J. Blomqvst**

Vice President and Treasurer of Fanjul Corporation
Sr. Vice President, Treasurer and Director of Florida Crystals Corporation
Director of Domino Foods, Inc.

**Alfonso Fierro**

Director of Fanjul Corp.
Director of Florida Crystals Corporation

**Lillian Azqueta**

Director of Fanjul Corp.
Director of Florida Crystals Corporation

**David Patterson**

Director of Fanjul Corp.
Director of Florida Crystals Corporation

**Christine M. Winterburg**

Vice President of Fanjul Corp.
Vice President of Florida Crystals Corporation

**Parks D. Shackelford**

Vice President of Fanjul Corp.
Vice President of Florida Crystals Corporation

42.     Through the above-described interlocking directorates and officerships, Fanjul dominates and controls Central Romana to such an extent that Central Romana's purported independent existence is fictitious because Central Romana does not operate autonomously. Moreover, although ostensibly a separate and distinct corporation, Central Romana is in fact a subsidiary of Fanjul, in part, by virtue of Fanjul's ownership of 35% of Central Romana stock.

43.     Fanjul, through at least two member of the Fanjul family, has the right to exercise financial control over Central Romana.  In documents filed with the Chamber of Commerce and Trade in La Romana, Dominican Republic, Alfonso Fanjul and Jose Fanjul are identified as two officials of Central Romana with authority to borrow from financial institutions in the name of Central Romana.

44.     The interconnectedness of the companies that comprise the Fanjul sugar empire in terms of their operations is evidenced by the following facts, which support the conclusion that Fanjul, through the Fanjul family, dominates and controls Central Romana, the primary producer of sugar revenue for Fanjul.  The activities of these entities is directed toward one goal – to maximize revenue from the production of raw sugar and refined sugar products:

a.     The principal function of Agro-Industrial Management, Inc. is to provide management services to Florida Crystals Corporation (and its 20-50 subsidiaries), ASR Group International, Inc. (and its approximately 20 subsidiaries), American Sugar Refining, Inc., Domino Foods, Inc., C & H Sugar Company and Senshi Rice Products, Inc.

b.     Florida Crystals Corporation pays on behalf of Fanjul "the normal payments that Fanjul would have to make by virtue of being in existence and operating as a corporation."  Such payments include payments to Fanjul's independent auditor of its annual audit fee, and payments of tax advice and legal fees on behalf of Fanjul.  Fanjul reimburses Florida Crystals Corporation for the payments.  Florida Crystals Corporation also assists in the administration of Fanjul's bank accounts at Wells Fargo and Bank of America.

*78a*

11

c.    Domino Foods, Inc. is the sales and marketing entity for American Sugar
      Refining, Inc., C & H Sugar Company, Inc. and Florida Crystals Food Corp.

d.    American Sugar Refining, Inc. periodically indirectly buys raw sugar from
      Central Romana, who offers the sugar it is allowed to import into the United
      States for bid.  ASR Commodities LLC, a subsidiary of American Sugar Refining,
      Inc. bids on the sugar, and periodically is the successful bidder.

e.    The raw sugar American Sugar Refining, Inc. purchases from Central Romana is
      loaded in the Dominican Republic, shipped in ocean-going vessels, and off-loaded
      at one of American Sugar Refining, Inc.'s refineries along the East Coast
      (Yonkers, New York or Baltimore, Maryland).

f.    At any point in time, there are payables and receivables among ASR Group
      International, Inc., American Sugar Refining, Inc., C & H Sugar Company, Inc.
      and Domino Foods, Inc.

g.    At any point in time, there are payables and receivables (intercompany balances)
      between Florida Crystals Corporation and Florida Crystals Food Corporation.

h.    Florida Crystals Corporation consolidates its tax returns with Florida Crystals
      Food Corporation.  ASR Group International, Inc. files a tax return that includes
      the financial performance of American Sugar Refining, Inc. and C & H Sugar
      Company, Inc.

i.    Employees of American Sugar Refining, Inc. travel to the Dominican
      Republic to inspect or have discussions with Central Romana employees
      regarding the raw sugar it purchases and quality issues related to that sugar.

j.    Americas Export Corporation purchases equipment and goods for resale to
      Central Romana.  It purchases equipment that would be used in the sugar
      operations of Central Romana and purchases goods that would be used in the
      resort business of a subsidiary of Central Romana.

45.    Fanjul relies almost exclusively on Central Romana to supply raw sugar and

refined sugar products to the entities that comprise its sugar empire.  For example, during the

period November 27, 2019 through April 1, 2021, of the 46 shipments of sugar products Central

Romana made to the United States, 8 were made to Okeelanta Corp. and 1 to the Central

Romana facility in Yonkers, New York.  *See* Exhibit D attached hereto and made a part hereof.

79a

46.   By virtue of these facts, Fanjul had the ability and the right to supervise, and on information and belief did supervise, Central Romana employees and Central Romana ownership, including the aforesaid members of the Fanjul family.

47.   By virtue of these facts, on information and belief, the directors of Fanjul determine the policies of Central Romana with respect to land acquisition and related aspects of its sugar operations, and Central Romana is the vehicle through which Fanjul carries on its activities in the Dominican Republic.

48.   Fanjul engaged in improper conduct with respect to the events that give rise to this case because it used Central Romana to accomplish an illegal purpose – the unlawful eviction of the Plaintiffs from their homes and the unlawful taking of Plaintiffs' land. Fanjul knew that by doing so it would significantly increase its revenues derived from the cultivation of sugar cane by Central Romana on land it unlawfully obtained from the Plaintiffs.

49.   Fanjul ratified Central Romana's unlawful evictions by acquiescing in, ignoring the public and international outcry about the unlawful evictions and failing to direct Central Romana to take any action to remedy them when it had the power and right to do so, in order to obtain a benefit for itself – increased land ownership on which to plant sugar cane and reap the corresponding financial benefit from its cultivation, harvesting, refining and sale.

50.   Fanjul will not be prejudiced and will not breach any duties to Central Romana by paying money damages to the Plaintiffs.

51.   Plaintiffs will not have an adequate remedy if this case is dismissed for nonjoinder of Central Romana because the Dominican authorities have refused to take any action against Central Romana with respect to the unlawful evictions.

80a

52.     Central Romana's title to the lands it unlawfully obtained from the Plaintiffs will not be harmed if Fanjul is required to pay money damages to the Plaintiffs.  In fact, a judgment against Fanjul allowing the Plaintiffs to recover damages would have no effect on Central Romana.

53.     Central Romana is not required to participate in the remedy sought by the Plaintiffs from Fanjul – the payment of money damages.

54.     Fanjul and Central Romana do not have identical interests in the subject matter of this action.

55.     Central Romana was acting as Fanjul's agent with respect to the unlawful evictions, it accepted the undertaking to act as Fanjul's agent in connection with the unlawful evictions, and it was subject to Fanjul's control with respect to the unlawful evictions.

56.     The facts alleged above establish that Fanjul is vicariously liable to the Plaintiffs under both agency and alter ego theory, and that Central Romana is not an indispensable party.

### C. The Dominican Republic is not an Adequate Forum

57.     This case must be tried in this Court because the Dominican Republic is not an adequate forum.

56.     The Dominican courts are notoriously corrupt. That corruption has even been acknowledged by the Dominican government itself, which chose to file suit in an American court against an American corporation for environmental harm caused by an illegal dumping of toxic material on a beach in the Dominican Republic.  *See*, *generally*, *Dominican Republic v. The AES Corporation, et al*., 466 F. Supp. 2d 680 (E.D. Va. 2006).

57.     Fanjul is the largest landholder and largest employer in the Dominican Republic, as well as the leading producer of sugar in the Dominican Republic.  Fanjul wields outsized

influence in the Dominican Republic, including in government and the judicial system.  Given its

influence, Plaintiffs would not have a fair opportunity to fully litigate their claims.

58.     The so-called private factors, which are relevant to whether the Dominican

Republic is an adequate forum, indicate that this case must remain in this Court.

a.     *Access to evidence and relevant sites.*

The evidence necessary for Plaintiffs to prove their claims is located both in the United

States and the Dominican Republic.  Evidence concerning the basis of the decision to utilize the

Central Romana agents to forcibly evict the Plaintiffs from their homes is in the possession of

Fanjul (in Florida) and Central Romana (in the Dominican Republic).  Evidence concerning the

specifics of the military-style operations mounted by the Central Romana force principally is

located in the Dominican Republic.  Evidence concerning the physical and emotional injuries

suffered by the Plaintiffs can be obtained from the Plaintiffs in the Dominican Republic.

Although some of the relevant documents may be in Spanish, that fact is of minor significance.

The use of translators in court proceedings is a normal practice, particularly in Florida, which has

a large Spanish-speaking population, as is the translation of documents from Spanish to English.

And although a site visit might be desired, traveling to the Dominican Republic to inspect the

site of the forcible evictions poses no particular problems. The Dominican Republic is no more

convenient than Florida with respect to access to sources of proof in this case, and no more

expensive.

b.     *Access to witnesses.*

The key liability and damages witnesses are located in both the Dominican Republic and

the United States.  These witnesses include the Plaintiffs, employees of Central Romana, and

employees of Fanjul.  It is not possible at the pleadings stage to quantify the number of key

*82a*

witnesses located in the Dominican Republic and the number located in the United States.  Nor can it be said that any key witnesses would be beyond the jurisdiction of this Court or subject only to the authority of the Dominican courts, or would not otherwise agree to provide testimony in this case.

  c. *Practicalities and expenses associated with litigation.*

  Although discovery and trial of this case will be expensive and time-consuming, the challenges presented by this case exist regardless of whether it is litigated here or in the Dominican Republic.  Expert witnesses would be required in both jurisdictions, as would translators and translation services, as well as travel and lodging expenses.  The only significant logistical and cost difference between trial in Florida and trial in the Dominican Republic would be those associated with securing the attendance of the Plaintiffs at trial in Florida.

  59. The so-called public factors, which also are relevant to whether the Dominican Republic is an adequate forum, indicate that this case must remain in this Court.

  a. *This action has a substantial connection to Florida.*

  Despite the fact the Plaintiffs reside in the Dominican Republic and were injured in the Dominican Republic, some of the decisions that resulted in their injuries were made in Florida.  Specifically, decisions concerning whether and why to assemble the Central Romana force and to forcibly evict the Plaintiffs, critical decisions which resulted in injury to the Plaintiffs, likely were made in part by Fanjul employees in Florida.

  b. *Florida has an interest in the outcome of this case.*

  Because critical decisions that resulted in injury to the Plaintiffs likely were made by Florida residents, Florida has an interest in ensuring that its residents act in a manner that does not unnecessarily cause injury to others and in punishing wrongdoers.  Florida has an interest in

83a

overseeing the conduct of entities and individuals who carry out activities in Florida that have an adverse impact outside of Florida. These interests justify having a local jury decide this case, with the attendant impact on local judicial resources.

      c.    *This Court is competent to resolve issues of Dominican law.*

For this Court to apply Dominican law will not be a substantial undertaking. This Court can obtain its own expert on Dominican law to provide guidance, and doing so will not be an onerous burden. Moreover, the Plaintiffs will be severely prejudiced if they are forced to refile this case in the Dominican Republic.

60.    As a direct and proximate result of the foregoing actions of defendant, the Plaintiffs have suffered the injuries and damages alleged above, as well as:

    a.    continuing mental anguish, psychological and emotional injury;

    b.    loss of enjoyment of life's pleasures;

    c.    medical and healthcare expenses;

    d.    moral damages; and

    e.    such other damages as may be allowed by law or equity.

*Count I*
*Violation of Article 59 of the Dominican Republic Constitution*

61.    Plaintiffs incorporate herein by reference as if set forth in full paragraphs 1-60, inclusive, of this Amended Complaint.

62.    Article 59 of the Dominican Republic Constitution provides as follows:

Article 59: Right to Housing

All persons have the right to dignified housing with basic essential services. The State should determine the necessary conditions to make effective this right and promote plans for housing and human settlements in the social interest. Legal access to titled real estate is a fundamental priority of public policy and the advancement of housing.

*84a*

63. Under Dominican law, evictions without a court order violate the right to housing provided for in Article 59 of the Dominican Republic Constitution.

64. Defendant forcibly evicted the Plaintiffs from their homes without a valid court order, and thereby violated Article 59 of the Dominican Republic Constitution.

65. Because the Central Romana force destroyed the Plaintiffs' homes as part of the forcible eviction operations, defendant is liable to the Plaintiffs for monetary damages.

Wherefore, Plaintiffs hereby demand judgment in their favor and against defendant on Count I, awarding them all damages available under law and equity.

### Count II
### *Violation of Article 1382 of the Dominican Civil Code*

66. Plaintiffs incorporate herein by reference as if set forth in full paragraphs 1-65, inclusive, of this Amended Complaint.

67. Article 1382 of the Civil Code of the Dominican Republic provides:

Art. 1382. Every act of a person that causes injury to another obligates the one by whose fault it occurred to compensate it.

68. Under Dominican law, Article 1382 of the Civil Code provides a cause of action for intentional wrongdoing.

69. A defendant is liable under Article 1382 when the defendant commits an act against the right of another or the defendant exercises his own right in an abusive manner.

70. Based upon the actions and omissions of the defendant alleged above, defendant is liable to the Plaintiffs under Article 1382.

Wherefore, Plaintiffs hereby demand judgment in their favor and against defendant on Count II, awarding them all damages available under law and equity.

*85a*

### Count III
### *Violation of Article 1383 of the Dominican Civil Code*

71.     Plaintiffs incorporate herein by reference as if set forth in full paragraphs 1-70, inclusive, of this Amended Complaint.

72.     Article 1383 of the Civil Code of the Dominican Republic provides:

Art. 1383.  Everyone is responsible for the damage that he causes not only by his own act, but also by his negligence or imprudence.

73.     Under Dominican law, Article 1383 provides a cause of action for unintentional acts or omissions.

74.     Under Dominican law and Article 1383, the standard for determining fault or negligence is an error of conduct that would not have been committed by a normal person under equal exterior conditions or by a careful person placed under the same circumstances.

75.     Based upon the actions and omissions alleged above, defendant is liable to the Plaintiffs under Article 1383.

Wherefore, Plaintiffs hereby demand judgment in their favor and against defendant under Count III, awarding them all damages available under law and equity.

### Count IV
### *Assault*

76.     Plaintiffs incorporate herein by reference as if set forth in full paragraphs 1-75, inclusive, of this Amended Complaint.

77.     The actions of the Central Romana force against the Plaintiffs alleged above demonstrate a) an intentional, unlawful threat, b) the apparent ability to carry out the threat, and c) creation of a well-founded fear that violence was imminent.

78.     The Central Romana force intended to destroy the Plaintiffs' homes while they were present and could observe the destruction of their homes, and intended to do so regardless

*86a*

of the physical danger that doing so might cause to the Plaintiffs and with the knowledge that

doing so would cause an imminent fear of violence amongst the Plaintiffs.

79.    The actions of the Central Romana force created a well-founded fear of physical

violence in the Plaintiffs, as it would have in any reasonable person under similar circumstances.

80.    The actions of the Central Romana force constitute assault under Florida law.

Wherefore, Plaintiffs hereby demand judgment in their favor and against defendant on

Count IV, awarding them all damages available under law and equity.

### Count V
### Battery

81.    Plaintiffs incorporate herein by reference as if set forth in full paragraphs 1-79,

inclusive, of this Amended Complaint.

82.    Based upon the actions of the Central Romana force alleged above, defendant

intended to cause, and did cause, a harmful and offensive contact, and/or the imminent

apprehension that such contact would occur, with the Plaintiffs.

83.    The actions of the Central Romana force constitute battery under Florida law.

Wherefore, Plaintiffs hereby demand judgment in their favor and against defendant on

Count V, awarding them all damages available under law and equity.

### Count VI
### False Imprisonment

84.    Plaintiffs incorporate herein by reference as if set forth in full paragraphs 1-82,

inclusive, of this Amended Complaint.

85.    In connection with the forcible eviction operations, the Central Romana force

imprisoned Plaintiffs against their will.

87a

86.     The detention of the Plaintiffs in connection with the forcible eviction operations was unreasonable and unwarranted under the circumstances. Specifically, there was no legitimate reason to refuse to allow Plaintiffs to leave while the Central Romana force destroyed their homes.

Wherefore, Plaintiffs hereby demand judgment in their favor and against defendant on Count VI, awarding them all damages available under law and equity.

## Count VII
### Forcible Entry and Detainer

87.     Plaintiffs incorporate herein by reference as if set forth in full paragraphs 1-86, inclusive, of this Amended Complaint.

88.     The Central Romana force destroyed Plaintiffs' homes and dispossessed them of their real property without consent or legal process.

89.     Plaintiffs were in peaceful possession of their homes prior to the forcible eviction operations.

90.     Plaintiffs were forcibly evicted from their homes

91.     Plaintiffs were forcibly evicted from their homes without consent or legal authorization.

92.     In the alternative, even if the Plaintiffs did not have lawful possession of their homes, as defendant claims, defendant is liable to the Plaintiffs because the forcible eviction operations were not peaceable.

93.     In the alternative, even if the Plaintiffs were transient occupants of their homes, they are entitled to recover damages against defendant because defendant unreasonably withheld access to the Plaintiffs' personal belongings.

88a

Wherefore, Plaintiffs here by demand judgment in their favor and against defendant on Count VII, awarding them all damages available under law and equity.

### Count VIII
### Intentional Infliction of Emotional Distress

94.    Plaintiffs incorporate herein by reference as if set forth in full paragraphs 1-93, inclusive, of this Amended Complaint.

95.    Defendant deliberately and/or recklessly inflicted mental suffering on the Plaintiffs as a result of the forcible eviction operations.

96.    Defendant's conduct was outrageous.

97.    Defendant's conduct caused extreme emotional distress to the Plaintiffs.

Wherefore, Plaintiffs hereby demand judgment in their favor and against defendant on Count VIII, awarding them all damages available under law and equity.

### Jury Trial Demand

98.    Plaintiffs demand a trial by jury as to all claims so triable.


s/ Shauna M. Curphey
Shauna M. Curphey, Esq. (FBN 0109667)
scurphey@curpheylaw.com
6300 North Wickham Road, Suite 130, #305
Melbourne FL 32940
Tel: (503) 241-2848

Robert T Vance Jr, Esq. (admitted *pro hac vice*)
rvance@vancelf.com
Law Offices of Robert T Vance Jr
100 South Broad Street, Suite 1525
Philadelphia PA 19110
Tel: (215) 557-9550

*Attorneys for the Plaintiffs*

*89a*

# Exhibit A

9Da



# Exhibit B

92a



AND THE FANJUL GROUP

93 a



150 YEARS IN SUGAR

94a

OUR HOLDINGS

95a



MECHANICAL HARVESTING

SUSTAINABLE AGRICULTURE

BIOMASS RENEWABLE ENERGY FACILITY

BALTIMORE SUGAR REFINERY

MARINA VILLAGE

SUGAR BRANDS
FLORIDA CRYSTALS
Domino
C&H

DYE FORE

LA ROMANA INTERNATIONAL AIRPORT

DEEP SEA PORT

96a

97a

## FLO-SUN HOLDINGS AT A GLANCE

$2.5 billion in revenues

400,000 acres

10 million tons of sugar cane

3.5 million tons of refined sugar

Domino®, C&H®, Florida Crystals®

Renewable energy – largest biomass power plant in the U.S.

Casa de Campo Resort

Real estate

5,000 acres of organic farming

50 million gallons of molasses

65 million pounds of furfural alcohol

2.3 million crates of corn

50 million pounds of rice

25,000 employees

The future comes at us at an ever-quickening pace. Our sprawling, energy-hungry world needs sustainable food production and clean, renewable energy.

We see a future where our branded products will expand their reputation and reach, and our products will become an even more important component of the world's energy menu.

Our land holdings are the foundation for our commitment to sustainable agriculture, renewable energy and a future that can address critical community land needs.









99a

## FLO-SUN IS COMMITTED TO QUALITY AND INNOVATION.

We are the leading producer of refined sugar in the United States and the Dominican Republic.

Domino® and C&H® are the top sugar brands in the U.S.

Florida Crystals® is the leading organic and natural sugar brand in the U.S.

We market more than 3.5 million tons of sugar and 50 million gallons of molasses.







NATIONAL DISTRIBUTION SYSTEM

**WE ARE
THE LEADING
PRODUCER
OF REFINED
SUGAR IN THE
UNITED STATES.**

LEGEND



EARTH-FRIENDLY FARMING

# 155,000 ACRES IN FLORIDA
# 250,000 ACRES IN THE DOMINICAN REPUBLIC
# 10 MILLION TONS OF SUGAR CANE



Our environmentally friendly, high-tech farming methods include crop rotation with corn and rice, water-retaining field laser leveling, water-cleansing filter marshes and organic farming.



SUGAR CANE CONVERTS THE SUN'S LIGHT
TO FOOD AND ENERGY MORE EFFICIENTLY
THAN ANY OTHER CROP.

POTENTIAL OF ONE ACRE OF SUGAR CANE

- yields 4.5 tons of sugar
- yields 800 gallons of ethanol
- yields 10,000 kw of electricity*
- displaces 4 tons of $CO_2$**

*One acre of sugar cane with leaves and brush can power a Florida home for 10 months out of the year.

**Using fuel produced from one acre of sugar cane displaces 4 tons of $CO_2$ that would have been emitted by a fossil fuel and contributed to global warming.

RENEWABLE ENERGY

OUR RENEWABLE ENERGY PLANT IS THE
LARGEST BIOMASS POWER PLANT IN THE
UNITED STATES AND REPLACES MORE THAN
ONE MILLION BARRELS OF OIL EACH YEAR.

Flo-Sun produces enough eco-friendly electricity to power 60,000 homes.

Our energy plant reduces $CO_2$ emissions by 260,000 tons per year and helps
alleviate global warming.






OUR RENEWABLE
ENERGY FACILITY SAVES
MORE THAN 3.5 MILLION
CUBIC YARDS OF
LANDFILL SPACE EACH
YEAR BY CONVERTING
URBAN WOOD WASTE
TO ENERGY.

USCA11 Case: 21-13130   Document: 30   Date Filed: 12/13/2021   Page: 110 of 178



COMMUNITIES AND FARMS SIDE BY SIDE

LAND—OUR MOST VALUABLE RESOURCE.
155,000 ACRES





DOMINICAN REPUBLIC

250,000 ACRES

AGRICULTURE

REAL ESTATE

HOTELS AND RESORTS

ECONOMIC DEVELOPMENT




CASA DE CAMPO
81 HOLES OF GOLF
WORLD CLASS MARINA AND VILLAGE
INTERNATIONAL AIRPORT
MAJOR CRUISE SHIP PORT




CASA DEL MAR
763-ROOM BEACH RESORT AND SPA




## HISTORY

The Fanjuls have their sugar origins in Cuba in the 1850s. They immigrated to Florida in 1960 after the communist takeover in Cuba.

Flo-Sun is now the largest sugar producer in the United States.

## COMMUNITY

The Fanjul Family founded New Hope Charities, Everglades Preparatory Academy and Glades Academy to provide educational opportunities, day care and other vital services to low-income families in Western Palm Beach County, Florida. They also partnered with Take Stock in Children to provide four-year, full-tuition college scholarships to students from those communities.

In the Dominican Republic, they founded Misión Internacional Rescate (Mission International Rescue) and provide health clinics, schools, vocational training and an orphanage. They also support Hogar del Niño, which serves children and teens.




FLO-SUN INCORPORATED
ONE NORTH CLEMATIS STREET, SUITE 200
WEST PALM BEACH, FL 33401

WWW.FLO-SUN.COM

# Exhibit C

CASA de CAMPO®
RESORT & VILLAS

(https://www.casadecampo.com.do/)

Q    BOOK



## 1984

Frank Sinatra gave the inaugural performance in Altos de Chavón's 5,000-seat Grecian style amphitheater with an HBO televised special.

## LATE 1980S

*Casa de Campo* was sold to the Central Romana Corporation and underwent a new phase of development and renovations. Dominican designer Oscar de La Renta lent his talents to create a unique and inviting ambiance and many more amenities were added like a sporting clays facility.

# Exhibit D

|   | A | B | C |
|---|---|---|---|
| 1 | Date | Matching Fields | Consignee |
| 2 | 2020-06-19 | Shipper; Shipper (Original Format) | Gabsco |
| 3 | 2020-06-13 | Shipper; Shipper (Original Format) | Odfjell Houston Terminal |
| 4 | 2020-06-12 | Shipper; Shipper (Original Format) | Destileria Serralles Inc. |
| 5 | 2020-06-11 | Shipper; Shipper (Original Format) | Csc Sugar Llc |
| 6 | 2020-06-01 | Shipper; Shipper (Original Format) | Shipper |
| 7 | 2020-06-01 | Shipper; Shipper (Original Format) | Macquarie Commondities Trading |
| 8 | 2020-05-31 | Shipper | Ed & F Man Liquid Products Corp. |
| 9 | 2020-05-27 | Shipper; Shipper (Original Format) | Okeelanta Corp. |
| 10 | 2020-05-06 | Shipper | Destileria Serralles Inc. |
| 11 | 2020-04-22 | Shipper; Shipper (Original Format) | Okeelanta Corp. |
| 12 | 2020-04-15 | Shipper | Destileria Serralles Inc. |
| 13 | 2020-03-27 | Shipper | Odfjell Terminal Baytank |
| 14 | 2020-03-26 | Shipper; Shipper (Original Format) | Destileria Serralles Inc. |
| 15 | 2020-03-25 | Shipper; Shipper (Original Format) | Okeelanta Corp. |
| 16 | 2020-03-19 | Shipper; Shipper (Original Format) | King Ocean Services Ltd. |
| 17 | 2020-03-10 | Shipper; Shipper (Original Format) | Csc Sugar Llc |
| 18 | 2020-03-06 | Shipper | Gabsco |
| 19 | 2020-02-28 | Shipper; Shipper (Original Format) | Shipper |
| 20 | 2020-02-22 | Shipper (Original Format); Shipper | Ed & F Man Liquid Products Corp. |
| 21 | 2020-02-12 | Shipper; Shipper (Original Format) | Okeelanta Corp. |
| 22 | 2020-02-12 | Shipper | Destileria Serralles Inc. |
| 23 | 2020-02-02 | Shipper | Destileria Serralles Inc. |
| 24 | 2020-01-23 | Shipper | Odfjell Terminal Baytank |
| 25 | 2020-01-13 | Shipper | Destileria Serralles Inc. |
| 26 | 2019-11-27 | Shipper; Shipper (Original Format) | King Ocean Services Ltd. |

| | D |
|---|---|
| 1 | **Consignee Full Address** |
| 2 | Calle 10, Yabucoa, Yabucoa 00767, Puerto Rico |
| 3 | 12211 Port Road, Seabrook, TX 77586, USA |
| 4 | MANUF WAREHOUSE MAIN RD 1 MERCEDI MERCEDITA 00715 PUERTO RICO |
| 5 | 36 Grove Street, New Canaan, CT 06840, USA |
| 6 | New Canaan, CT, USA |
| 7 | 125 W 55th St LEVEL 22, New York, NY 10022, USA |
| 8 | 365 Canal Street, New Orleans, LA 70130, USA |
| 9 | 1 North Clematis Street #200, West Palm Beach, FL 33401, USA |
| 10 | MANUF WAREHOUSE MAIN RD 1 MERCEDI MERCEDITA 00715 PUERTO RICO |
| 11 | 1 North Clematis Street #200, West Palm Beach, FL 33401, USA |
| 12 | MANUF WAREHOUSE MAIN RD 1 MERCEDI MERCEDITA 00715 PUERTO RICO |
| 13 | 12211 Port Dr, Seabrook, TX 77586, USA |
| 14 | MANUF WAREHOUSE MAIN RD 1 MERCEDI MERCEDITA 00715 PUERTO RICO |
| 15 | 1 North Clematis Street #200, West Palm Beach, FL 33401, USA |
| 16 | 4000 McIntosh Road, Fort Lauderdale, FL 33316, USA |
| 17 | 36 Grove Street, New Canaan, CT 06840, USA |
| 18 | Calle 10, Yabucoa, Yabucoa 00767, Puerto Rico |
| 19 | EHIME |
| 20 | 365 Canal Street, New Orleans, LA 70130, USA |
| 21 | 1 North Clematis Street #200, West Palm Beach, FL 33401, USA |
| 22 | MANUF WAREHOUSE MAIN RD 1 MERCEDI MERCEDITA 00715 PUERTO RICO |
| 23 | MANUF WAREHOUSE MAIN RD 1 MERCEDI MERCEDITA 00715 PUERTO RICO |
| 24 | 12211 Port Dr, Seabrook, TX 77586, USA |
| 25 | MANUF WAREHOUSE MAIN RD 1 MERCEDI MERCEDITA 00715 PUERTO RICO |
| 26 | 4000 McIntosh Road, Fort Lauderdale, FL 33316, USA |

120a

|   | E | F | G |
|---|---|---|---|
| 1 | **Consignee Email 1** | **Consignee Phone 1** | **Consignee Website 1** |
| 2 | | +1 787 832 4488 | |
| 3 | sedockery@eastman.com | +1 281 291 8328 | |
| 4 | maritza.rios@serralles.com | +1 787 651 1816 | |
| 5 | barmentrout@cscsugar.com | +1 203 846 5610 | cscsugar.com |
| 6 | intllogistics@leggett.com | +1 310 568 0198 | |
| 7 | | | |
| 8 | | +1 504 581 1620 | |
| 9 | info@flo-sun.com | +1 561 366 5100 | floridacrystals.com |
| 10 | maritza.rios@serralles.com | +1 787 651 1816 | |
| 11 | info@flo-sun.com | +1 561 366 5100 | floridacrystals.com |
| 12 | maritza.rios@serralles.com | +1 787 651 1816 | |
| 13 | | +1 713 844 2300 | |
| 14 | maritza.rios@serralles.com | +1 787 651 1816 | |
| 15 | info@flo-sun.com | +1 561 366 5100 | floridacrystals.com |
| 16 | import@k-cargo.com | +1 305 592 4318 | |
| 17 | barmentrout@cscsugar.com | +1 203 846 5610 | cscsugar.com |
| 18 | | +1 787 832 4488 | |
| 19 | | +63 16196712009 | |
| 20 | | +1 504 581 1620 | |
| 21 | info@flo-sun.com | +1 561 366 5100 | floridacrystals.com |
| 22 | maritza.rios@serralles.com | +1 787 651 1816 | |
| 23 | maritza.rios@serralles.com | +1 787 651 1816 | |
| 24 | | +1 713 844 2300 | |
| 25 | maritza.rios@serralles.com | +1 787 651 1816 | |
| 26 | import@k-cargo.com | +1 305 592 4318 | |

| | H | I |
|---|---|---|
| 1 | **Consignee Profile** | **Consignee Trade Roles** |
| 2 | https://panjiva.com/Gabsco/2302766 | |
| 3 | https://panjiva.com/Odfjell-Houston-Terminal/1960 | Logistics |
| 4 | https://panjiva.com/Destileria-Serralles-Inc/383444 | Manufacturer |
| 5 | https://panjiva.com/Csc-Sugar-Llc/1860873 | Wholesale |
| 6 | https://panjiva.com/Shipper/2596721 | Logistics, Wholesale |
| 7 | https://panjiva.com/Macquarie-Commondities-Trad | Trading Company |
| 8 | https://panjiva.com/Ed-F-Man-Liquid-Products-Cor | Trading Company |
| 9 | https://panjiva.com/Okeelanta-Corp/2087823 | |
| 10 | https://panjiva.com/Destileria-Serralles-Inc/383444 | Manufacturer |
| 11 | https://panjiva.com/Okeelanta-Corp/2087823 | |
| 12 | https://panjiva.com/Destileria-Serralles-Inc/383444 | Manufacturer |
| 13 | https://panjiva.com/Odfjell-Terminal-Baytank/4097 | Manufacturer |
| 14 | https://panjiva.com/Destileria-Serralles-Inc/383444 | Manufacturer |
| 15 | https://panjiva.com/Okeelanta-Corp/2087823 | |
| 16 | https://panjiva.com/King-Ocean-Services-Ltd/2042 | Logistics |
| 17 | https://panjiva.com/Csc-Sugar-Llc/1860873 | Wholesale |
| 18 | https://panjiva.com/Gabsco/2302766 | |
| 19 | https://panjiva.com/Shipper/2597466 | Logistics, Wholesale |
| 20 | https://panjiva.com/Ed-F-Man-Liquid-Products-Cor | Trading Company |
| 21 | https://panjiva.com/Okeelanta-Corp/2087823 | |
| 22 | https://panjiva.com/Destileria-Serralles-Inc/383444 | Manufacturer |
| 23 | https://panjiva.com/Destileria-Serralles-Inc/383444 | Manufacturer |
| 24 | https://panjiva.com/Odfjell-Terminal-Baytank/4097 | Manufacturer |
| 25 | https://panjiva.com/Destileria-Serralles-Inc/383444 | Manufacturer |
| 26 | https://panjiva.com/King-Ocean-Services-Ltd/2042 | Logistics |

| | J |
|---|---|
| 1 | **Shipper** |
| 2 | Central Romana Corp. Ltd. |
| 3 | Central Romana Corp. Ltd. |
| 4 | Central Romana Corp. Ltd. |
| 5 | Central Romana Corp. Ltd. |
| 6 | Central Romana Corp. Ltd. |
| 7 | Central Romana Corp. Ltd. |
| 8 | Central Romana Corporation Ltd |
| 9 | Central Romana Corp. Ltd. |
| 10 | Central Romana Corp. Ltd. |
| 11 | Central Romana Corp. Ltd. |
| 12 | Central Romana Corp. Ltd. |
| 13 | Central Romana Corp. Ltd. |
| 14 | Central Romana Corp. Ltd. |
| 15 | Central Romana Corp. Ltd. |
| 16 | Central Romana Corp. Ltd. |
| 17 | Central Romana Corp. Ltd. |
| 18 | Central Romana Corp. Ltd. |
| 19 | Central Romana Corp. Ltd. |
| 20 | Central Romana Corp. Ltd. |
| 21 | Central Romana Corp. Ltd. |
| 22 | Central Romana Corp. Ltd. |
| 23 | Central Romana Corp. Ltd. |
| 24 | Central Romana Corp. Ltd. |
| 25 | Central Romana Corp. Ltd. |
| 26 | Central Romana Corp. Ltd. |

123a

| | K |
|---|---|
| 1 | **Shipper Full Address** |
| 2 | La Romana, Dominican Republic |
| 3 | La Romana, Dominican Republic |
| 4 | La Romana, Dominican Republic |
| 5 | DEPARTAMENTO DE AGENCIA DE VAPORES LA ROMANA DOMINICAN REPUBLIC RNC NO 112-00003-6 |
| 6 | La Romana, Dominican Republic |
| 7 | La Romana, Dominican Republic |
| 8 | Principal 9, La Papelera, 95346 Carlos A. Carrillo, Ver., Mexico |
| 9 | La Romana, Dominican Republic |
| 10 | La Romana, Dominican Republic |
| 11 | La Romana, Dominican Republic |
| 12 | La Romana, Dominican Republic |
| 13 | La Romana, Dominican Republic |
| 14 | La Romana, Dominican Republic |
| 15 | La Romana, Dominican Republic |
| 16 | La Romana, Dominican Republic |
| 17 | La Romana, Dominican Republic |
| 18 | La Romana, Dominican Republic |
| 19 | La Romana, Dominican Republic |
| 20 | Central, Hong Kong |
| 21 | La Romana, Dominican Republic |
| 22 | La Romana, Dominican Republic |
| 23 | La Romana, Dominican Republic |
| 24 | La Romana, Dominican Republic |
| 25 | La Romana, Dominican Republic |
| 26 | La Romana, Dominican Republic |

| | L | M | N |
|---|---|---|---|
| 1 | **Shipper Email 1** | **Shipper Phone 1** | **Shipper Website 1** |
| 2 | m.miolan@crcltd.com.do | +1 809 730 1017 | |
| 3 | m.miolan@crcltd.com.do | +1 809 730 1017 | |
| 4 | m.miolan@crcltd.com.do | +1 809 730 1017 | |
| 5 | | +1 305 856 4234 | |
| 6 | m.miolan@crcltd.com.do | +1 809 730 1017 | |
| 7 | m.miolan@crcltd.com.do | +1 809 730 1017 | |
| 8 | | | |
| 9 | m.miolan@crcltd.com.do | +1 809 730 1017 | |
| 10 | m.miolan@crcltd.com.do | +1 809 730 1017 | |
| 11 | m.miolan@crcltd.com.do | +1 809 730 1017 | |
| 12 | m.miolan@crcltd.com.do | +1 809 730 1017 | |
| 13 | m.miolan@crcltd.com.do | +1 809 730 1017 | |
| 14 | m.miolan@crcltd.com.do | +1 809 730 1017 | |
| 15 | m.miolan@crcltd.com.do | +1 809 730 1017 | |
| 16 | m.miolan@crcltd.com.do | +1 809 730 1017 | |
| 17 | m.miolan@crcltd.com.do | +1 809 730 1017 | |
| 18 | m.miolan@crcltd.com.do | +1 809 730 1017 | |
| 19 | m.miolan@crcltd.com.do | +1 809 730 1017 | |
| 20 | | | |
| 21 | m.miolan@crcltd.com.do | +1 809 730 1017 | |
| 22 | m.miolan@crcltd.com.do | +1 809 730 1017 | |
| 23 | m.miolan@crcltd.com.do | +1 809 730 1017 | |
| 24 | m.miolan@crcltd.com.do | +1 809 730 1017 | |
| 25 | m.miolan@crcltd.com.do | +1 809 730 1017 | |
| 26 | m.miolan@crcltd.com.do | +1 809 730 1017 | |

125a

| | O | P | Q |
|---|---|---|---|
| 1 | **Shipper Profile** | **Shipper Trade Roles** | **Shipment Origin** |
| 2 | https://panjiva.com/Central-Romana-Corp-Ltd/1 | Manufacturer | Dominican Republic |
| 3 | https://panjiva.com/Central-Romana-Corp-Ltd/1 | Manufacturer | Dominican Republic |
| 4 | https://panjiva.com/Central-Romana-Corp-Ltd/1 | Manufacturer | Dominican Republic |
| 5 | https://panjiva.com/Central-Romana-Corp-Ltd/3 | Manufacturer | United States |
| 6 | https://panjiva.com/Central-Romana-Corp-Ltd/1 | Manufacturer | Dominican Republic |
| 7 | https://panjiva.com/Central-Romana-Corp-Ltd/1 | Manufacturer | Dominican Republic |
| 8 | https://panjiva.com/Central-Romana-Corporatio | Manufacturer | Mexico |
| 9 | https://panjiva.com/Central-Romana-Corp-Ltd/1 | Manufacturer | Dominican Republic |
| 10 | https://panjiva.com/Central-Romana-Corp-Ltd/1 | Manufacturer | Dominican Republic |
| 11 | https://panjiva.com/Central-Romana-Corp-Ltd/1 | Manufacturer | Dominican Republic |
| 12 | https://panjiva.com/Central-Romana-Corp-Ltd/1 | Manufacturer | Dominican Republic |
| 13 | https://panjiva.com/Central-Romana-Corp-Ltd/1 | Manufacturer | Dominican Republic |
| 14 | https://panjiva.com/Central-Romana-Corp-Ltd/1 | Manufacturer | Dominican Republic |
| 15 | https://panjiva.com/Central-Romana-Corp-Ltd/1 | Manufacturer | Dominican Republic |
| 16 | https://panjiva.com/Central-Romana-Corp-Ltd/1 | Manufacturer | Dominican Republic |
| 17 | https://panjiva.com/Central-Romana-Corp-Ltd/1 | Manufacturer | Dominican Republic |
| 18 | https://panjiva.com/Central-Romana-Corp-Ltd/1 | Manufacturer | Dominican Republic |
| 19 | https://panjiva.com/Central-Romana-Corp-Ltd/1 | Manufacturer | Dominican Republic |
| 20 | https://panjiva.com/Central-Romana-Corp-Ltd/4 | | Hong Kong |
| 21 | https://panjiva.com/Central-Romana-Corp-Ltd/1 | Manufacturer | Dominican Republic |
| 22 | https://panjiva.com/Central-Romana-Corp-Ltd/1 | Manufacturer | Dominican Republic |
| 23 | https://panjiva.com/Central-Romana-Corp-Ltd/1 | Manufacturer | Dominican Republic |
| 24 | https://panjiva.com/Central-Romana-Corp-Ltd/1 | Manufacturer | Dominican Republic |
| 25 | https://panjiva.com/Central-Romana-Corp-Ltd/1 | Manufacturer | Dominican Republic |
| 26 | https://panjiva.com/Central-Romana-Corp-Ltd/1 | Manufacturer | Dominican Republic |

126a

| | R | S | T |
|---|---|---|---|
| | **Shipment Destination** | **Transport Method** | **HS Code** |
| 1 | | | |
| 2 | United States | Maritime | 1703.10 |
| 3 | United States | Maritime | 2308.00 |
| 4 | United States | Maritime | 1703.10 |
| 5 | United States | Maritime | 1701.99 |
| 6 | United States | Maritime | 1701.99 |
| 7 | United States | Maritime | 1701.14 |
| 8 | United States | Maritime | 1703.10 |
| 9 | United States | Maritime | 8455.90 |
| 10 | United States | Maritime | 1703.10 |
| 11 | United States | Maritime | 8438.90 |
| 12 | United States | Maritime | 1703.10 |
| 13 | United States | Maritime | 2932.12 |
| 14 | United States | Maritime | 1703.10 |
| 15 | United States | Maritime | 8438.90 |
| 16 | United States | Maritime | |
| 17 | United States | Maritime | 1701.99 |
| 18 | United States | Maritime | 1703.10 |
| 19 | United States | Maritime | 1701.14 |
| 20 | United States | Maritime | 1703.10 |
| 21 | United States | Maritime | 8438.90 |
| 22 | United States | Maritime | 1703.10 |
| 23 | United States | Maritime | 1703.10 |
| 24 | United States | Maritime | 2932.12 |
| 25 | United States | Maritime | 1703.10 |
| 26 | United States | Maritime | |

127a

| | U |
|---|---|
| 1 | **Goods Shipped** |
| 2 | 1, 000 MT BLACKSTRAP MOLASSES |
| 3 | 1, 799. 993 METRIC TONS FURFURAL (A LIGHT COLORED ORGANIC LIQUID) |
| 4 | 5, 176 MT BLACKSTRAP MOLASSES |
| 5 | 10, 000. 00 MT OF DOMINICAN REPUBLIC RAW CANE SUGAR IN BULK, OF FAIR AVERAGE QUALITY |
| 6 | DOMINICAN REPUBLIC RAW CANE SUGAR IN BULK |
| 7 | RAW CANE SUGAR |
| 8 | BLACKSTRAP MOLASSES |
| 9 | SUGAR MILL OUTLET ROLL SHELL/CASCO 41" OD X 84 "L |
| 10 | 5, 234. 367 MT BLACKSTRAP MOLASSES |
| 11 | SUGAR MILL FEED ROLL 42" OD X 84 "L X 16'SUGAR MILL FEED ROLL 44" OD X 84" L |
| 12 | 5, 200 MT BLACKSTRAP MOLASSES |
| 13 | 1800. 004 MT FURFURAL |
| 14 | 5, 200 MT BLACKSTRAP MOLASSES |
| 15 | SUGAR MILL BAGASSE ROLL 44" OD X 84" L X 16"SUGAR MILL CANE ROLL 44" OD X 84" L |
| 16 | |
| 17 | DOMINCAN REPUBLIC RAW CANE SUGAR |
| 18 | 5, 000 MT BLACKSTRAP MOLASSES |
| 19 | 27, 750. 00 MT OF DOMINICAN REPUBLIC RAW CANE S UGAR IN BULK, OF FAIR AVERAGE QUALITY, OF TH |
| 20 | MOLASSES |
| 21 | SUGAR MILL BAGASSE ROLLSUGAR MILL BAGASSE ROLL |
| 22 | 5, 200 MT BLACKSTRAP MOLASSES |
| 23 | 4, 800 MT BLACKSTRAP MOLASSES |
| 24 | 1799. 965 MT FURFURAL |
| 25 | 5, 200 MT BLACKSTRAP MOLASSES |
| 26 | |

| | V | W |
|---|---|---|
| 1 | Weight (KG) | Data Source |
| 2 | 1000000 | US Imports |
| 3 | 1799990 | US Imports |
| 4 | 5176000 | US Imports |
| 5 | 10000000 | US Imports |
| 6 | 13380000 | US Imports |
| 7 | 25000000 | US Imports |
| 8 | 6020940 | US Imports |
| 9 | 16601.9 | US Imports |
| 10 | 5234370 | US Imports |
| 11 | 36287.8 | US Imports |
| 12 | 5200000 | US Imports |
| 13 | 1800000 | US Imports |
| 14 | 5200000 | US Imports |
| 15 | 38102.2 | US Imports |
| 16 | 13063.5 | US Imports |
| 17 | 25000 | US Imports |
| 18 | 5000000 | US Imports |
| 19 | 27750000 | US Imports |
| 20 | 11018000 | US Imports |
| 21 | 36560 | US Imports |
| 22 | 5200000 | US Imports |
| 23 | 4800000 | US Imports |
| 24 | 1799960 | US Imports |
| 25 | 5200000 | US Imports |
| 26 | 13063.5 | US Imports |

129a

| Date | Matching Fields |
|------|-----------------|
| 2021-04-01 | Shipper; Shipper (Original Format) |
| 2021-03-01 | Shipper; Shipper (Original Format) |
| 2021-02-14 | Shipper; Shipper (Original Format) |
| 2021-01-31 | Shipper; Consignee; Shipper (Original Format); Consignee (Original Format) |
| 2021-01-30 | Shipper |
| 2021-01-26 | Shipper; Shipper (Original Format) |
| 2020-12-10 | Shipper; Shipper (Original Format) |
| 2020-12-09 | Shipper; Shipper (Original Format) |
| 2020-12-04 | Shipper; Shipper (Original Format) |
| 2020-11-25 | Shipper; Shipper (Original Format) |
| 2020-10-07 | Shipper; Shipper (Original Format) |
| 2020-10-07 | Shipper; Shipper (Original Format) |
| 2020-08-31 | Shipper; Shipper (Original Format) |
| 2020-08-20 | Shipper; Shipper (Original Format) |
| 2020-08-20 | Shipper; Shipper (Original Format) |
| 2020-07-29 | Shipper; Shipper (Original Format) |
| 2020-07-29 | Shipper; Shipper (Original Format) |
| 2020-07-27 | Shipper |
| 2020-07-22 | Shipper; Shipper (Original Format) |
| 2020-07-08 | Shipper; Shipper (Original Format) |

130a

| Consignee | Consignee Address | Consignee City |
|---|---|---|
| King Cargo Corp. | | |
| Csc Sugar Llc | 36 Grove Street | New Canaan |
| Ed & F Man Liquid Products Corp. | 365 Canal Street | New Orleans |
| Central Romana Corp. | 1 Federal Street | Yonkers |
| Ed & F Man Liquid Products Corp. | 365 Canal Street | New Orleans |
| Odfjell Terminal Baytank | 12211 Port Road | Seabrook |
| King Cargo Corp. | | |
| Odfjell Terminals | 12211 Port Road | Seabrook |
| Okeelanta Corp. | 1 North Clematis Street | West Palm Beach |
| Okeelanta Corp. | 1 North Clematis Street | West Palm Beach |
| King Cargo Corp. | | |
| American Global Logistics Llc | 3399 Peachtree Road | Atlanta |
| American Global Logistics Llc | 3399 Peachtree Road | Atlanta |
| American Global Logistics Llc | 3399 Peachtree Road | Atlanta |
| Osceaola Farms Co. | 32298 Hatton Highway | Pahokee |
| Okeelanta Corp. | 1 North Clematis Street | West Palm Beach |
| King Cargo Corp. | | |
| American Global Logistics Llc | 3399 Peachtree Road | Atlanta |
| King Cargo Corp. | | |
| Okeelanta Corp. | 1 North Clematis Street | West Palm Beach |

13/a

| Consignee State/Region | Consignee Postal Code | Consignee Country |
|---|---|---|
| Connecticut | 06840 | United States |
| Louisiana | 70130 | United States |
| New York | 10705 | United States |
| Louisiana | 70130 | United States |
| Texas | 77586 | United States |
| Texas | 77586 | United States |
| Florida | 33401 | United States |
| Florida | 33401 | United States |
| Georgia | 30326 | United States |
| Georgia | 30326 | United States |
| Georgia | 30326 | United States |
| Florida | 33476 | United States |
| Florida | 33401 | United States |
| Georgia | 30326 | United States |
| Florida | 33401 | United States |

| Consignee Full Address |
| --- |
| 4000 MCINTOSH RD PT EVERGLADESF FL |
| 36 Grove St, New Canaan, CT 06840, USA |
| 365 Canal St, New Orleans, LA 70130, USA |
| 1 Federal St, Yonkers, NY 10705, USA |
| 365 Canal St, New Orleans, LA 70130, USA |
| 12211 Port Rd, Seabrook, TX 77586, USA |
| 4000 MCINTOSH RD PT EVERGLADESF FL |
| 12211 Port Rd, Seabrook, TX 77586, USA |
| 1 N Clematis St #200, West Palm Beach, FL 33401, USA |
| 1 N Clematis St #200, West Palm Beach, FL 33401, USA |
| 4000 MCINTOSH RD PT EVERGLADESF FL |
| Lenox Square Mall, 3399 Peachtree Road, Atlanta, GA 30326, USA |
| Lenox Square Mall, 3399 Peachtree Road, Atlanta, GA 30326, USA |
| Lenox Square Mall, 3399 Peachtree Road, Atlanta, GA 30326, USA |
| 32298 Hatton Hwy, Pahokee, FL 33476, USA |
| 1 N Clematis St #200, West Palm Beach, FL 33401, USA |
| 4000 MCINTOSH RD PT EVERGLADESF FL |
| Lenox Square Mall, 3399 Peachtree Road, Atlanta, GA 30326, USA |
| 4000 MCINTOSH RD PT EVERGLADESF FL |
| 1 N Clematis St #200, West Palm Beach, FL 33401, USA |

| Consignee Email 1 | Consignee Email 2 | Consignee Email 3 |
|---|---|---|
| teimport@k-cargo.com | import@k-cargo.com | import@kcargo.com |
| operations@cscsugar.com | | |
| | | |
| | | |
| teimport@k-cargo.com | import@k-cargo.com | import@kcargo.com |
| trade@eastman.com | corintha.jeter@odfjell.com | edockery@eastman.com |
| | | |
| teimport@k-cargo.com | import@k-cargo.com | import@kcargo.com |
| jfazal@americancargoexpres | lax.ops@americancargoexpr | bposton@americancargoexpres |
| jfazal@americancargoexpre | lax.ops@americancargoexpr | bposton@americancargoexpre |
| jfazal@americancargoexpre | lax.ops@americancargoexpr | bposton@americancargoexpres |
| | | |
| teimport@k-cargo.com | import@k-cargo.com | import@kcargo.com |
| jfazal@americancargoexpre | lax.ops@americancargoexpr | bposton@americancargoexpres |
| teimport@k-cargo.com | import@k-cargo.com | import@kcargo.com |

134a

| Consignee Phone 1 | Consignee Phone 2 | Consignee Phone 3 |
|---|---|---|
| +1 305 530 5757 | +1 305 592 4318 | +1 305 964 9477 |
| +1 203 846 5610 | | |
| +1 504 581 1620 | | |
| | | |
| +1 504 581 1620 | | |
| +1 905 685 8560 | +1 713 844 2382 | +1 713 844 6645 |
| +1 305 530 5757 | +1 305 592 4318 | +1 305 964 9477 |
| +1 281 291 8328 | | |
| +1 561 366 5100 | | |
| +1 561 366 5100 | | |
| +1 305 530 5757 | +1 305 592 4318 | +1 305 964 9477 |
| +1 866 285 9610 | | |
| +1 866 285 9610 | | |
| +1 866 285 9610 | | |
| +1 561 655 6303 | | |
| +1 561 366 5100 | | |
| +1 305 530 5757 | +1 305 592 4318 | +1 305 964 9477 |
| +1 866 285 9610 | | |
| +1 305 530 5757 | +1 305 592 4318 | +1 305 964 9477 |
| +1 561 366 5100 | | |

| Consignee Fax | Consignee Website 1 | Consignee Website 2 |
| --- | --- | --- |
| | | |
| | | |
| | | |
| | | |
| +1 713 844 2355 | | |
| +1 561 366 5158 | | |
| +1 561 366 5158 | | |
| | | |
| | | |
| | | |
| | floridacrystals.com | |
| +1 561 366 5158 | | |
| | | |
| | | |
| +1 561 366 5158 | | |

*136a*

| Consignee Profile | Consignee D-U-N-S® |
|---|---|
| https://panjiva.com/King-Cargo-Corp/2042573 | |
| https://panjiva.com/Csc-Sugar-Llc/1860873 | 179030635 |
| https://panjiva.com/Ed-F-Man-Liquid-Products | 792531852 |
| https://panjiva.com/Central-Romana-Corp/390 | |
| https://panjiva.com/Ed-F-Man-Liquid-Products | 792531852 |
| https://panjiva.com/Odfjell-Terminal-Baytank/4 | |
| https://panjiva.com/King-Cargo-Corp/2042573 | |
| https://panjiva.com/Odfjell-Terminals/1960452 | 003911344 |
| https://panjiva.com/Okeelanta-Corp/2087823 | 183282128 |
| https://panjiva.com/Okeelanta-Corp/2087823 | 183282128 |
| https://panjiva.com/King-Cargo-Corp/2042573 | |
| https://panjiva.com/American-Global-Logistics- | 808251966 |
| https://panjiva.com/American-Global-Logistics- | 808251966 |
| https://panjiva.com/American-Global-Logistics- | 808251966 |
| https://panjiva.com/Osceaola-Farms-Co/20817 | |
| https://panjiva.com/Okeelanta-Corp/2087823 | 183282128 |
| https://panjiva.com/King-Cargo-Corp/2042573 | |
| https://panjiva.com/American-Global-Logistics- | 808251966 |
| https://panjiva.com/King-Cargo-Corp/2042573 | |
| https://panjiva.com/Okeelanta-Corp/2087823 | 183282128 |

137a

| Consignee Industry | Consignee Revenue | Consignee Employees |
|---|---|---|
| Food Products | 77,133,296 | 40 |
| | 8,561,299 | 20 |
| | 8,561,299 | 20 |
| Commercial Services and Supplies | 34,661,173 | 200 |
| Food Products | 61,152 | 300 |
| Food Products | 61,152 | 300 |
| | 26,966,539 | 30 |
| | 26,966,539 | 30 |
| | 26,966,539 | 30 |
| Food Products | 457,200,000 | 1,631 |
| Food Products | 61,152 | 300 |
| | 26,966,539 | 30 |
| Food Products | 61,152 | 300 |

| Consignee Market Capitalization | Consignee Incorporation Year | Consignee Trade Roles |
|---|---|---|
| | | Logistics |
| | 1,994 | Wholesale |
| | 1,994 | Trading Company |
| | 1,994 | Trading Company |
| | | Logistics |
| | 1,981 | Manufacturer, Logistics |
| | 1,984 | Manufacturer |
| | 1,984 | Manufacturer |
| | | Logistics |
| | 2,007 | Logistics |
| | 2,007 | Logistics |
| | 2,007 | Logistics |
| | 1,960 | Manufacturer |
| | 1,984 | Manufacturer |
| | | Logistics |
| | 2,007 | Logistics |
| | | Logistics |
| | 1,984 | Manufacturer |

| Consignee SIC Codes | Consignee Stock Tickers |
|---|---|
| 2062, 2063, 5159 | |
| 5149 | |
| 5149 | |
| 4226, 4731 | |
| 0133, 2061, 2062, 5084 | |
| 0133, 2061, 2062, 5084 | |
| 4731 | |
| 4731 | |
| 4731 | |
| 0133, 2061, 2062, 5084 | |
| 4731 | |
| 0133, 2061, 2062, 5084 | |

140a

| Consignee Ultimate Parent | Consignee Ultimate Parent Website |
|---|---|
| King Ocean Services Ltd. | |
| Csc Sugar, Llc. | www.cscsugar.com |
| Ed & F Man Liquid Products Corp | |
| Ed & F Man Liquid Products Corp | |
| King Ocean Services Ltd. | |
| Odfjell Se | www.odfjell.com |
| Fanjul Corp. | |
| Fanjul Corp. | |
| King Ocean Services Ltd. | |
| | |
| Osceola Farms Co | www.floridacrystals.com |
| Fanjul Corp. | |
| King Ocean Services Ltd. | |
| King Ocean Services Ltd. | |
| Fanjul Corp. | |

141a

| Consignee Ultimate Parent Headquarters Address |
| --- |
| 11000 Northwest 29Th Street, Suite 201, Doral Florida 33172-5036, United States |
| 36 Grove Street, New Canaan Connecticut 06840, United States |
| United States |
| |
| United States |
| |
| 11000 Northwest 29Th Street, Suite 201, Doral Florida 33172-5036, United States |
| Conrad Mohrs veg 29, PO Box 6101, Postterminalen, Bergen Hordaland 5892, Norway |
| One North Clematis Street, Suite 200, West Palm Beach Florida 33401, United States |
| One North Clematis Street, Suite 200, West Palm Beach Florida 33401, United States |
| 11000 Northwest 29Th Street, Suite 201, Doral Florida 33172-5036, United States |
| |
| |
| 340 Royal Poinciana Way # 315, Palm Beach Florida 33480-4048, United States |
| One North Clematis Street, Suite 200, West Palm Beach Florida 33401, United States |
| 11000 Northwest 29Th Street, Suite 201, Doral Florida 33172-5036, United States |
| |
| 11000 Northwest 29Th Street, Suite 201, Doral Florida 33172-5036, United States |
| One North Clematis Street, Suite 200, West Palm Beach Florida 33401, United States |

| Consignee Ultimate Parent Profile | Consignee Ultimate Parent Stock Tickers |
| --- | --- |
| https://panjiva.com/King-Ocean-Services-Ltd/65 | |
| https://panjiva.com/CSC-Sugar-LLC/57260198 | |
| https://panjiva.com/Ed-F-Man-Liquid-Products-C | |
| | |
| https://panjiva.com/Ed-F-Man-Liquid-Products-C | |
| | |
| https://panjiva.com/King-Ocean-Services-Ltd/65 | |
| https://panjiva.com/Odfjell-SE/57598449 | OB:ODF, OB:ODFB |
| https://panjiva.com/Fanjul-Corp/57774766 | |
| https://panjiva.com/Fanjul-Corp/57774766 | |
| https://panjiva.com/King-Ocean-Services-Ltd/65 | |
| | |
| | |
| https://panjiva.com/Osceola-Farms-Co/5482386 | |
| https://panjiva.com/Fanjul-Corp/57774766 | |
| https://panjiva.com/King-Ocean-Services-Ltd/65 | |
| | |
| https://panjiva.com/King-Ocean-Services-Ltd/65 | |
| https://panjiva.com/Fanjul-Corp/57774766 | |

143~

| Shipper | Shipper Address | Shipper City | Shipper State/Region |
|---|---|---|---|
| Central Romana Corp. Ltd. | | La Romana | La Romana Province |
| Central Romana Corp. Ltd. | | La Romana | La Romana Province |
| Central Romana Corp. Ltd. | | La Romana | La Romana Province |
| Central Romana Corp. Ltd. | | La Romana | La Romana Province |
| Central Romana Corp. Ltd. | 9 Principal | Carlos A. Carrillo | Veracruz |
| Central Romana Corp. Ltd. | | La Romana | La Romana Province |
| Central Romana Corp. Ltd. | | La Romana | La Romana Province |
| Central Romana Corp. Ltd. | | | |
| Central Romana Corp. Ltd. | | La Romana | La Romana Province |
| Central Romana Corp. Ltd. | | La Romana | La Romana Province |
| Central Romana Corp. Ltd. | | La Romana | La Romana Province |
| Central Romana Corp. Ltd. | | La Romana | La Romana Province |
| Central Romana Corp. Ltd. | | La Romana | La Romana Province |
| Central Romana Corp. Ltd. | | La Romana | La Romana Province |
| Central Romana Corp. Ltd. | | La Romana | La Romana Province |
| Central Romana Corp. Ltd. | | La Romana | La Romana Province |
| Central Romana Corp. Ltd. | | La Romana | La Romana Province |
| Central Romana Corp. Ltd. | | La Romana | La Romana Province |
| Central Romana Corp. Ltd. | | La Romana | La Romana Province |
| Central Romana Corp. Ltd. | | La Romana | La Romana Province |

| Shipper Postal Code | Shipper Country |
|---|---|
| 22000 | Dominican Republic |
| 22000 | Dominican Republic |
| 22000 | Dominican Republic |
| 22000 | Dominican Republic |
| 95346 | Mexico |
| 22000 | Dominican Republic |
| 22000 | Dominican Republic |
| | |
| 22000 | Dominican Republic |
| 22000 | Dominican Republic |
| 22000 | Dominican Republic |
| 22000 | Dominican Republic |
| 22000 | Dominican Republic |
| 22000 | Dominican Republic |
| 22000 | Dominican Republic |
| 22000 | Dominican Republic |
| 22000 | Dominican Republic |
| 22000 | Dominican Republic |
| 22000 | Dominican Republic |
| 22000 | Dominican Republic |

145a

| Shipper Full Address |
|---|
| La Romana 22000, Dominican Republic |
| La Romana 22000, Dominican Republic |
| La Romana 22000, Dominican Republic |
| La Romana 22000, Dominican Republic |
| Principal 9, La Papelera, 95346 Carlos A. Carrillo, Ver., Mexico |
| La Romana 22000, Dominican Republic |
| La Romana 22000, Dominican Republic |
| DEPARTAMENTO DE AGENCIA DE VAPORES LA ROMANA DOMINICAN REPUBLIC RNC NO 112-00003-6 |
| La Romana 22000, Dominican Republic |
| La Romana 22000, Dominican Republic |
| La Romana 22000, Dominican Republic |
| La Romana 22000, Dominican Republic |
| La Romana 22000, Dominican Republic |
| La Romana 22000, Dominican Republic |
| La Romana 22000, Dominican Republic |
| La Romana 22000, Dominican Republic |
| La Romana 22000, Dominican Republic |
| La Romana 22000, Dominican Republic |
| La Romana 22000, Dominican Republic |
| La Romana 22000, Dominican Republic |

146a

| Shipper Email 1 | Shipper Email 2 | Shipper Email 3 | Shipper Phone 1 |
|---|---|---|---|
| m.miolan@crcltd.com.do | | | +1 809 730 1017 |
| m.miolan@crcltd.com.do | | | +1 809 730 1017 |
| m.miolan@crcltd.com.do | | | +1 809 730 1017 |
| m.miolan@crcltd.com.do | | | +1 809 730 1017 |
| | | | |
| m.miolan@crcltd.com.do | | | +1 809 730 1017 |
| m.miolan@crcltd.com.do | | | +1 809 730 1017 |
| | | | +1 305 856 4234 |
| m.miolan@crcltd.com.do | | | +1 809 730 1017 |
| m.miolan@crcltd.com.do | | | +1 809 730 1017 |
| m.miolan@crcltd.com.do | | | +1 809 730 1017 |
| m.miolan@crcltd.com.do | | | +1 809 730 1017 |
| m.miolan@crcltd.com.do | | | +1 809 730 1017 |
| m.miolan@crcltd.com.do | | | +1 809 730 1017 |
| m.miolan@crcltd.com.do | | | +1 809 730 1017 |
| m.miolan@crcltd.com.do | | | +1 809 730 1017 |
| m.miolan@crcltd.com.do | | | +1 809 730 1017 |
| m.miolan@crcltd.com.do | | | +1 809 730 1017 |
| m.miolan@crcltd.com.do | | | +1 809 730 1017 |
| m.miolan@crcltd.com.do | | | +1 809 730 1017 |

147a

| Shipper Phone 2 | Shipper Phone 3 | Shipper Fax |
|---|---|---|
| | | +1 809 730 1005 |
| | | +1 809 730 1005 |
| | | +1 809 730 1005 |
| | | +1 809 730 1005 |
| | | |
| | | +1 809 730 1005 |
| | | +1 809 730 1005 |
| | | |
| | | +1 809 730 1005 |
| | | +1 809 730 1005 |
| | | +1 809 730 1005 |
| | | +1 809 730 1005 |
| | | +1 809 730 1005 |
| | | +1 809 730 1005 |
| | | +1 809 730 1005 |
| | | +1 809 730 1005 |
| | | +1 809 730 1005 |
| | | +1 809 730 1005 |
| | | +1 809 730 1005 |
| | | +1 809 730 1005 |

148a

| Shipper Website 1 | Shipper Website 2 | Shipper Profile |
|---|---|---|
| | | https://panjiva.com/Central-Romana-Corp-L |
| | | https://panjiva.com/Central-Romana-Corp-L |
| | | https://panjiva.com/Central-Romana-Corp-L |
| | | https://panjiva.com/Central-Romana-Corp-L |
| | | https://panjiva.com/Central-Romana-Corp-L |
| | | https://panjiva.com/Central-Romana-Corp-L |
| | | https://panjiva.com/Central-Romana-Corp-L |
| | | https://panjiva.com/Central-Romana-Corp-L |
| | | https://panjiva.com/Central-Romana-Corp-L |
| | | https://panjiva.com/Central-Romana-Corp-L |
| | | https://panjiva.com/Central-Romana-Corp-L |
| | | https://panjiva.com/Central-Romana-Corp-L |
| | | https://panjiva.com/Central-Romana-Corp-L |
| | | https://panjiva.com/Central-Romana-Corp-L |
| | | https://panjiva.com/Central-Romana-Corp-L |
| | | https://panjiva.com/Central-Romana-Corp-L |
| | | https://panjiva.com/Central-Romana-Corp-L |
| | | https://panjiva.com/Central-Romana-Corp-L |
| | | https://panjiva.com/Central-Romana-Corp-L |
| | | https://panjiva.com/Central-Romana-Corp-L |

149a

| Shipper D-U-N-S® | Shipper Industry | Shipper Revenue |
|---|---|---|
| 871422200 | Industrial Conglomerate: | 1,419,150,000 |
| 871422200 | Industrial Conglomerates | 1,419,150,000 |
| 871422200 | Industrial Conglomerate: | 1,419,150,000 |
| 871422200 | Industrial Conglomerates | 1,419,150,000 |
| 871422200 | Industrial Conglomerates | 1,419,150,000 |
| 871422200 | Industrial Conglomerate: | 1,419,150,000 |
| 871422200 | Industrial Conglomerate: | 1,419,150,000 |
| 871422200 | Industrial Conglomerates | 1,419,150,000 |
| 871422200 | Industrial Conglomerate: | 1,419,150,000 |
| 871422200 | Industrial Conglomerates | 1,419,150,000 |
| 871422200 | Industrial Conglomerate: | 1,419,150,000 |
| 871422200 | Industrial Conglomerates | 1,419,150,000 |
| 871422200 | Industrial Conglomerate: | 1,419,150,000 |
| 871422200 | Industrial Conglomerates | 1,419,150,000 |
| 871422200 | Industrial Conglomerate: | 1,419,150,000 |
| 871422200 | Industrial Conglomerates | 1,419,150,000 |
| 871422200 | Industrial Conglomerate: | 1,419,150,000 |
| 871422200 | Industrial Conglomerates | 1,419,150,000 |

150a

| Shipper Employees | Shipper Market Capitalization | Shipper Incorporation Year |
|---|---|---|
| 25,000 | | 1,912 |
| 25,000 | | 1,912 |
| 25,000 | | 1,912 |
| 25,000 | | 1,912 |
| 25,000 | | 1,912 |
| 25,000 | | 1,912 |
| 25,000 | | 1,912 |
| 25,000 | | 1,912 |
| 25,000 | | 1,912 |
| 25,000 | | 1,912 |
| 25,000 | | 1,912 |
| 25,000 | | 1,912 |
| 25,000 | | 1,912 |
| 25,000 | | 1,912 |
| 25,000 | | 1,912 |
| 25,000 | | 1,912 |
| 25,000 | | 1,912 |
| 25,000 | | 1,912 |

151a

| Shipper Trade Roles | Shipper SIC Codes | Shipper Stock Tickers |
|---|---|---|
| Manufacturer | 2062, 2879, 6799 | |
| Manufacturer | 2062, 2879, 6799 | |
| Manufacturer | 2062, 2879, 6799 | |
| Manufacturer | 2062, 2879, 6799 | |
| Manufacturer | 2062, 2879, 6799 | |
| Manufacturer | 2062, 2879, 6799 | |
| Manufacturer | 2062, 2879, 6799 | |
| Manufacturer | 2062, 2879, 6799 | |
| Manufacturer | 2062, 2879, 6799 | |
| Manufacturer | 2062, 2879, 6799 | |
| Manufacturer | 2062, 2879, 6799 | |
| Manufacturer | 2062, 2879, 6799 | |
| Manufacturer | 2062, 2879, 6799 | |
| Manufacturer | 2062, 2879, 6799 | |
| Manufacturer | 2062, 2879, 6799 | |
| Manufacturer | 2062, 2879, 6799 | |
| Manufacturer | 2062, 2879, 6799 | |

152a

| Shipper Ultimate Parent | Shipper Ultimate Parent Website |
| --- | --- |
| Central Romana Corporation, Ltd. | www.centralromana.com.do |
| Central Romana Corporation, Ltd. | www.centralromana.com.do |
| Central Romana Corporation, Ltd. | www.centralromana.com.do |
| Central Romana Corporation, Ltd. | www.centralromana.com.do |
| Central Romana Corporation, Ltd. | www.centralromana.com.do |
| Central Romana Corporation, Ltd. | www.centralromana.com.do |
| Central Romana Corporation, Ltd. | www.centralromana.com.do |
| Central Romana Corporation, Ltd. | www.centralromana.com.do |
| Central Romana Corporation, Ltd. | www.centralromana.com.do |
| Central Romana Corporation, Ltd. | www.centralromana.com.do |
| Central Romana Corporation, Ltd. | www.centralromana.com.do |
| Central Romana Corporation, Ltd. | www.centralromana.com.do |
| Central Romana Corporation, Ltd. | www.centralromana.com.do |
| Central Romana Corporation, Ltd. | www.centralromana.com.do |
| Central Romana Corporation, Ltd. | www.centralromana.com.do |
| Central Romana Corporation, Ltd. | www.centralromana.com.do |
| Central Romana Corporation, Ltd. | www.centralromana.com.do |
| Central Romana Corporation, Ltd. | www.centralromana.com.do |

153a

| Shipper Ultimate Parent Headquarters Address | Shipper Ultimate Parent Profile |
|---|---|
| La Romana, Dominican Republic | https://panjiva.com/Central-Romana-Corporatio |
| La Romana, Dominican Republic | https://panjiva.com/Central-Romana-Corporatio |
| La Romana, Dominican Republic | https://panjiva.com/Central-Romana-Corporatio |
| La Romana, Dominican Republic | https://panjiva.com/Central-Romana-Corporatio |
| La Romana, Dominican Republic | https://panjiva.com/Central-Romana-Corporatio |
| La Romana, Dominican Republic | https://panjiva.com/Central-Romana-Corporatio |
| La Romana, Dominican Republic | https://panjiva.com/Central-Romana-Corporatio |
| La Romana, Dominican Republic | https://panjiva.com/Central-Romana-Corporatio |
| La Romana, Dominican Republic | https://panjiva.com/Central-Romana-Corporatio |
| La Romana, Dominican Republic | https://panjiva.com/Central-Romana-Corporatio |
| La Romana, Dominican Republic | https://panjiva.com/Central-Romana-Corporatio |
| La Romana, Dominican Republic | https://panjiva.com/Central-Romana-Corporatio |
| La Romana, Dominican Republic | https://panjiva.com/Central-Romana-Corporatio |
| La Romana, Dominican Republic | https://panjiva.com/Central-Romana-Corporatio |
| La Romana, Dominican Republic | https://panjiva.com/Central-Romana-Corporatio |
| La Romana, Dominican Republic | https://panjiva.com/Central-Romana-Corporatio |
| La Romana, Dominican Republic | https://panjiva.com/Central-Romana-Corporatio |

154a

| Shipper Ultimate Parent Stock Tickers | Shipment Origin | Shipment Destination |
|---|---|---|
| | Dominican Republic | United States |
| | Dominican Republic | United States |
| | Dominican Republic | United States |
| | Dominican Republic | United States |
| | Mexico | United States |
| | Dominican Republic | United States |
| | Dominican Republic | United States |
| | United States | United States |
| | Dominican Republic | United States |
| | Dominican Republic | United States |
| | Dominican Republic | United States |
| | Dominican Republic | United States |
| | Dominican Republic | United States |
| | Dominican Republic | United States |
| | Dominican Republic | United States |
| | Dominican Republic | United States |
| | Dominican Republic | United States |
| | Dominican Republic | United States |
| | Dominican Republic | United States |
| | Dominican Republic | United States |

155a

| Transport Method | HS Code |
| --- | --- |
| Maritime | 0207.14 |
| Maritime | 1701.14 |
| Maritime | 1703.10 |
| Maritime | 1701.14 |
| Maritime | 1703.10 |
| Maritime | 2309.10 |
| Maritime | 0207.14 |
| Maritime | 2309.10 |
| Maritime | 8419.31 |
| Maritime | 8419.31; 8474.90 |
| Maritime | 0207.14 |
| Maritime | 8413.91 |
| Maritime | 8481.90 |
| Maritime | 8483.90 |
| Maritime | 1701.99 |
| Maritime | 8438.90 |
| Maritime | 0207.14 |
| Maritime | 8501.53 |
| Maritime | 0207.14 |
| Maritime | 8438.10 |

1560

| Goods Shipped |
| --- |

EMPTY CONTAINEREMPTY CONTAINEREMPTY CONTAINER

RAW CANE SUGAR IN BULK

BLACK STRAP MOLASSES

A QUANTITY OF DOMINICAN REPUBLIC RAW CANE SUG AR

BLACK STRAP MOLASSES

FURFURAL (A LIGHT COLORED ORGANIC LIQUID)

EMPTY CONTAINEREMPTY CONTAINEREMPTY CONTAINER

999. 988 METRIC TONS FURFURAL (A LIGHT COLORED ORGANIC LIQUID)

SUGAR MILL OUTLET 44" OD X 84 "L,

SUGAR MILL OUTLET ROLL 43" OD X 84 "L,SUGAR MILL FEED ROLL 44" OD X 84 "L,SUGAR MILL FEED ROLL 4

EMPTY CONTAINEREMPTY CONTAINEREMPTY CONTAINEREMPTY CONTAINEREMPTY CONTAINEREMPTY CON

TOOLS & EQUIPMENTS USED BY CONTRACTORS FOR A REPAIR JOB AND ARE BEING RETURNED TO ORIGIN (

PKGS ON 1 PALLET STC SAFETY VALVE, TYPE811QA20

LOW SPEED GEAR AND SHAFT ON A STEEL PLATFORM AND WOOD CLOSURE COVERED WITH TARP 10'X12'X

SUGAR MILL OUTLET ROLL 43" OD X 84 "L

SUGAR MILL FEED ROLL 42" OD X 84 "L

EMPTY CONTAINER

1 CRATE CONT. TRACTION MOTOR ARMATURE

EMPTY CONTAINEREMPTY CONTAINEREMPTY CONTAINEREMPTY CONTAINEREMPTY CONTAINER

SUGAR MILL OUTLET ROLL 41" OD X 84 "L

| Weight (KG) | Data Source | Data Source Trade Direction |
|---|---|---|
| 6531.73 | US Imports | Import |
| 25000000 | US Imports | Import |
| 6024237 | US Imports | Import |
| 15000000 | US Imports | Import |
| 6013213 | US Imports | Import |
| 1099990 | US Imports | Import |
| 6531.73 | US Imports | Import |
| 999988 | US Imports | Import |
| 19050.9 | US Imports | Import |
| 53161.9 | US Imports | Import |
| 13063.5 | US Imports | Import |
| 3061.75 | US Imports | Import |
| 450.87 | US Imports | Import |
| 16782.9 | US Imports | Import |
| 17509.1 | US Imports | Import |
| 17327.2 | US Imports | Import |
| 2177.24 | US Imports | Import |
| 577 | US Imports | Import |
| 10886.2 | US Imports | Import |
| 16601.9 | US Imports | Import |

158a

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 20-80123-CIV-RUIZ/REINHART

MARIA MAGDALENA ALVAREZ GALVEZ, et al.,

Plaintiffs,

vs.

FANJUL CORP.,

Defendant.

_____/

## REPORT AND RECOMMENDATION ON DEFENDANT'S MOTION TO DISMISS (ECF NO. 63) AND PLAINTIFFS' CROSS-MOTION FOR JURISDICTIONAL DISCOVERY (ECF NO. 68)

Currently before me are Defendant's Motion to Dismiss the Amended Complaint (ECF No. 63) and Plaintiffs' Cross-Motion for Leave to Conduct Jurisdictional Discovery (ECF No. 68), which were referred to me by the Honorable Rodolfo A. Ruiz. ECF Nos. 64, 70. In addition to the motions, I have reviewed the Complaint (ECF No. 1), Judge Ruiz's Order dismissing the Complaint with leave to supplement (ECF No. 53), the Amended Complaint (ECF No. 56), Plaintiffs' response and Defendant's reply to the motion to dismiss (ECF Nos. 67, 71), as well as Defendant's response and Plaintiffs' reply to their cross-motion for discovery (ECF Nos. 72, 73). For the reasons that follow, I recommend that Defendant's motion to dismiss (ECF No. 63) be **GRANTED** and Plaintiffs' cross-motion for jurisdictional discovery (ECF No. 68) be **DENIED**.

## BACKGROUND

In their initial Complaint, Plaintiffs alleged that on January 26, 2016, then-Defendant Central Romana Corp., a sugar company based in the Dominican Republic ("DR"), forcibly evicted Plaintiffs from their DR homes, destroyed Plaintiffs' homes and their personal property,

*159a*

and caused Plaintiffs to suffer physical and emotional injury. ECF No. 1 at ¶¶ 36-40. The Complaint alleged that Central Romana is the alter-ego of Defendant Fanjul Corp. ("Fanjul"), a Florida company that Plaintiffs allege was likely involved in the decision to forcibly evict them. *Id.* at ¶ 50(a).

Judge Ruiz dismissed the Complaint without prejudice, finding Plaintiffs' allegations that Fanjul owns 35% of Central Romana's shares through a subsidiary and that Fanjul and Central Romana share four overlapping officers and directors were "insufficient to plead an alter ego theory." ECF No. 53 at 21-22. Judge Ruiz noted that Plaintiffs failed to allege "how Fanjul controls or dominates Central Romana to such an extent that the Court should disregard the corporate entity," and Plaintiffs failed to "advance any allegations of improper or fraudulent use of the corporate form." *Id.* at 22. Similarly, Judge Ruiz determined that Plaintiffs "alleged insufficient facts to support Fanjul's vicarious liability based on general agency principles" because "the Complaint is devoid of allegations" supporting the requisite elements of "acknowledgement, acceptance, or control." *Id.* at 22-23. Accordingly, Judge Ruiz concluded that "Plaintiffs have insufficiently alleged a basis to find Fanjul liable for the actions of Central Romana." *Id.* at 23. Judge Ruiz granted Plaintiffs' motion to amend the Complaint "to more clearly allege Fanjul's involvement in the decisions that violated 'Plaintiffs' right to judicial process and due process,'" however, he did not grant Plaintiffs' request to take brief jurisdiction-related discovery, noting that he had previously stayed discovery. *Id.* at 4.

Thereafter, Plaintiffs filed their Amended Complaint, dropping Central Romana as a Defendant and claiming that joinder is not necessary because Central Romana is not an

indispensable party.[1] Plaintiffs also added the following allegations in an attempt to support their

theory of vicarious liability:

> 36. Fanjul controls and dominates Central Romana to such an extent that the Court should disregard Central Romana's purported separate and distinct corporate existence. The basis of Fanjul's control and dominance of Central Romana principally can be found in Fanjul's corporate structure and the control exercised by the members of the Fanjul family, who own and control Fanjul, over the operations of Central Romana.

<div align="center">*      *      *</div>

> 38. Relevant documents of Florida Crystals and Flo-Sun, Inc. (the predecessor of Fanjul) show the control and dominance Flo-Sun and Florida Crystals exercised over Central Romana. For example, in an organization chart, Central Romana is described as a subsidiary of Florida Crystals (The Fanjuls). *See* Exhibit A attached hereto and made a part hereof. Moreover, in a brochure produced by Flo-Sun and the Fanjul Group, Flo-Sun represents that it has been involved in the sugar business for 150 years, that it produces 10 million tons of sugar cane and 3.5 million tons of refined sugar, that it is the "leading producer of refined sugar in ... the Dominican Republic," that it owns 250,000 acres of land in the Dominican Republic, and that its holdings in the Dominican Republic include the Casa de Campo Resort. *See* Exhibit B attached hereto and made a part hereof. Central Romana purchased the Casa de Campo Resort in the late 1980s. *See* Exhibit C attached hereto and made a part hereof.

<div align="center">*      *      *</div>

> 40. By virtue of their positions as senior officers and directors of Central Romana, Alfonso Fanjul, Jr., Jose Fanjul, Sr. and Jose Fanjul, Jr. control and dominate the Board of Directors of Central Romana. Moreover, because they are also senior officers and directors of Fanjul, and are part of the Fanjul family group that controls Fanjul, Fanjul controls and dominates Central Romana.

<div align="center">*      *      *</div>

---

[1] As Judge Ruiz noted in his decision, Plaintiffs had to drop Central Romana from the case in order to maintain alienage jurisdiction, thus providing a basis for this Court's subject matter jurisdiction. ECF No. 53 at 5, 19-20, 24. Alienage jurisdiction is "a form of diversity jurisdiction under which federal courts may hear cases between "citizens of a State and citizens or subjects of a foreign state." *Id.* (citing *Molinos Valle Del Cibao, C. por A. v. Lama*, 633 F.3d 1330, 1340 (11th Cir. 2011) (quoting 28 U.S.C. § 1332(a)(2)).

42. Through the above-described interlocking directorates and officerships, Fanjul dominates and controls Central Romana to such an extent that Central Romana's purported independent existence is fictitious because Central Romana does not operate autonomously. Moreover, although ostensibly a separate and distinct corporation, Central Romana is in fact a subsidiary of Fanjul, in part, by virtue of Fanjul's ownership of 35% of Central Romana stock.

\*                      \*                      \*

45. Fanjul relies almost exclusively on Central Romana to supply raw sugar and refined sugar products to the entities that comprise its sugar empire. For example, during the period November 27, 2019 through April 1, 2021, of the 46 shipments of sugar products Central Romana made to the United States, 8 were made to Okeelanta Corp. and 1 to the Central Romana facility in Yonkers, New York. *See* Exhibit D attached hereto and made a part hereof.

46. By virtue of these facts, Fanjul had the ability and the right to supervise, and *on information and belief* did supervise, Central Romana employees and Central Romana ownership, including the aforesaid members of the Fanjul family.

47. By virtue of these facts, *on information and belief,* the directors of Fanjul determine the policies of Central Romana with respect to land acquisition and related aspects of its sugar operations, and Central Romana is the vehicle through which Fanjul carries on its activities in the Dominican Republic.

48. Fanjul engaged in improper conduct with respect to the events that give rise to this case because it used Central Romana to accomplish an illegal purpose – the unlawful eviction of the Plaintiffs from their homes and the unlawful taking of Plaintiffs' land. Fanjul knew that by doing so it would significantly increase its revenues derived from the cultivation of sugar cane by Central Romana on land it unlawfully obtained from the Plaintiffs.[2]

49. Fanjul ratified Central Romana's unlawful evictions by acquiescing in, ignoring the public and international outcry about the unlawful evictions and failing to direct Central Romana to take any action to remedy them when it had the power and right to do so, in order to obtain a benefit for itself – increased land ownership on which to plant sugar cane and reap the corresponding financial benefit from its cultivation, harvesting, refining and sale.

\*                      \*                      \*

---

[2]  Plaintiffs contend that "Central Romana's purpose in undertaking the unlawful forcible evictions was to improperly obtain additional land at no cost in order to expand its sugar cane operations and substantially increase the revenues it derives from the ultimate sale of raw sugar and refined sugar products." *See* Amended Complaint at ¶ 34.

55. Central Romana was acting as Fanjul's agent with respect to the unlawful evictions, it accepted the undertaking to act as Fanjul's agent in connection with the unlawful evictions, and it was subject to Fanjul's control with respect to the unlawful evictions.

ECF No. 56 (emphasis added).

On June 7, 2021, Defendant Fanjul moved to dismiss the Amended Complaint for a variety of reasons. ECF No. 63. Specifically, Fanjul contends that, once again, Plaintiffs have failed to allege facts sufficient to support their vicarious liabilty claims under Rule 12(b)(6). The motion also contends that Plaintiffs' claims are time-barred, that Central Romana is an indispensable party under Rule 19 and Plaintiffs' failure to join it must result in dismissal, even though Fanjul also acknowledges that joinder of Central Romana would deprive this Court of subject matter jurisdiction under Rule 12(b)(1).

In response, Plaintiffs concede that Counts I-III are time-barred under Dominican law. ECF No. 67-1 at 11. Nevertheless, Plaintiffs move for jurisdictional discovery on the issue of vicarious liability on the common law claims in Counts IV-VIII. ECF No. 67/68. According to Plaintiffs, they need discovery to establish "the control and domina[n]ce exercised by [Defendant] Fanjul over [non-party] Central Romana." ECF No. 67-1 at 7.[3]

Plaintiffs seek discovery on the following topics:

1. The participation of Alfonso Fanul, Jr., Jose Fanjul, Sr., Jose Fanjul, Jr., Andres Fanjul and Alexander Fanjul in the operations and affairs of Central Romana, which would include review and analysis of Fanjul and Central Romana Board of Directors Meeting Minutes, and Fanjul and Central Romana Board of Directors' Committee Meeting Minutes;

2. The participation of Alfonso Fanjul, Jr., Jose Fanjul, Sr., and Jose Fanjul, Jr. in particular, and the other Fanjul Board members in general, in Central Romana's land

---

[3] In their response, Plaintiffs contend that if they can establish that Central Romana is the alter ego of Fanjul, then they need not join Central Romana as a defendant, and thus, the Court will retain its subject matter jurisdiction. ECF No. 67-1 at 12.

acquisition activities and the creation and implementation of Central Romana's land acquisition and development policies and practices;

3.  The operational relationship between Central Romana and Florida Crystals Corp.;

4.  The operational relationship between Florida Crystals Corp. and Fanjul;

5.  The operational relationship between Central Romana, Okeelanta Corp. and Fanjul;

6.  The extent to which Alfonso Fanjul and Jose Fanjul have obtained, or participated in obtaining, financial support for Central Romana;[4]

7.  The extent to which the officers and directors of Fanjul have the right to supervise or direct, and do supervise or direct, the activities of Central Romana officers, directors and employees;

8.  Central Romana's knowledge that evicting the Plaintiffs would result in a financial benefit to Fanjul; and

9.  That Central Romana effectively exists to supply the sugar requirements of the companies that comprise the Fanjul sugar empire.

## **DISCUSSION**

1.  Fanjul's Motion to Dismiss

    a.  *Legal Standard*

A pleading in a civil action must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).  To satisfy the Rule 8 pleading requirements, a claim must provide the defendant fair notice of plaintiff's claim and the grounds upon which it rests. *See Swierkiewicz v. Sorema N.A.*, 534 U. S. 506, 512 (2002).  While a claim "does not need detailed factual allegations," it must provide "more than labels and conclusions"

---

[4] According to Plaintiffs, "Defendant admits that Alfonso Fanjul and Jose Fanjul exercise some degree of financial control over Central Romana," and discovery "will elucidate the extent of that control . . . [and] whether Fanjul exerts dominance and control over Central Romana to such an extent that vicarious liability can be established." ECF No. 67-1 at 8, n.1 (citing 63 at 6).



or "a formulaic recitation of the elements of a cause of action." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555 (2007); *see Ashcroft v. Iqbal,* 556 U. S. 662, 678 (2009) (explaining that the Rule 8(a)(2) pleading standard "demands more than an unadorned, the defendant-unlawfully-harmed-me accusation"). Nor can a claim rest on "'naked assertion[s]' devoid of 'further factual enhancement.'" *Iqbal,* 556 U. S. at 678 (*quoting Twombly,* 550 U. S. at 557 (alteration in original)).

On a motion to dismiss under Rule 12(b)(6), the Court must view the well-pled factual allegations in a claim in the light most favorable to the non-moving party. *Dusek v. JPMorgan Chase & Co.,* 832 F.3d 1243, 1246 (11th Cir. 2016). Viewed in that manner, the factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the claim are true (even if doubtful in fact). *Twombly,* 550 U. S. at 555 (citations omitted). The Supreme Court has emphasized that "[t]o survive a motion to dismiss a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* at 570. In addition, "courts may infer from factual allegations in the complaint obvious alternative explanations, which suggest lawful conduct rather than the unlawful conduct that plaintiff would ask the court to infer." *Am. Dental Assoc. v. Cigna Corp.,* 605 F. 3d 1283, 1290 (11th Cir. 2010) (citing *Iqbal,* 556 U. S. at 682). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Iqbal,* 556 U. S. at 678 (quoting *Twombly,* 550 U. S. at 557). When evaluating a motion to dismiss under Rule 12(b)(6):

> [A] court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.



*Iqbal,* 556 U. S. at 679.  Factually unsupported allegations based "on information and belief" are not entitled to the assumption of truth.  *See Scott v. Experian Info. Sols., Inc.*, 2018 WL 3360754, at *6 (S.D. Fla. June 29, 2018) (J. Altonaga) ("Conclusory allegations made upon information and belief are not entitled to a presumption of truth, and allegations stated upon information and belief that do not contain any factual support fail to meet the *Twombly* standard.").

> *b.  Sufficiency of Allegations under Rule 12(b)(6)*

In its motion to dismiss, Fanjul contends that Plaintiffs have simply "recycled their allegations" regarding the interconnected relationship between Fanjul and Central Romana in their Amended Complaint, and thus, "the Court's earlier analysis applies and dictates the same result." ECF No. 63 at 3.

In his prior decision, Judge Ruiz listed the three ways a parent company can be held liable for the acts of its subsidiaries: "(1) an alter ego theory to 'pierce the corporate veil;' (2) vicarious liability based on general agency principles; or (3) direct liability where the parent directly participated in the wrong complained of."  ECF No. 53 at 20 (*quoting Salinero v. Johnson & Johnson*, No. 18-23643, 2019 WL 4585215, at *2 (S.D. Fla. Sept. 20, 2019)).  Judge Ruiz noted that "[t]o establish a claim for piercing the corporate veil under Florida law, a plaintiff must allege that '(1) the shareholder dominated and controlled the corporation to such an extent that the corporation's independent existence, was in fact non-existent and the shareholders were in fact alter egos of the corporation; (2) the corporate form [was] used fraudulently or for an improper purpose; and (3) the fraudulent or improper use of the corporate form caused injury to the claimant.'"  ECF No. 53 at 20-21 (quoting *Molinos*, 633 F.3d at 1349 and *Gasparini v.*

*Pordomingo*, 972 So. 2d 1053, 1055 (Fla. 3d Dist. Ct. App. 2008)); *see also Johnson Enterprises of Jacksonville, Inc. v. FPL Grp., Inc.*, 162 F.3d 1290, 1320 (11th Cir. 1998).

Judge Ruiz also set forth the law regarding vicarious liability based on general agency principles, noting that under Florida law, to hold a parent liable as the principal of a subsidiary-agent, Plaintiffs must establish: "(1) acknowledgement by the principal that the agent will act for it, (2) the agent's acceptance of the undertaking, and (3) control by the principal over the actions of the agent." ECF No. 53 at 22 (quoting *Salinero*, 2019 WL 4585215, at *3 and *State v. Am. Tobacco Co.*, 707 So. 2d 851, 854 (Fla. 4th Dist. Ct. App. 1998)); *see also Brusherd v. Ford Motor Co.*, No. 08-513, 2009 WL 10670567, at *4 (M.D. Fla. Sept. 18, 2009). The parent corporation "must exercise control to the extent the subsidiary manifests no separate corporate interests of its own and functions solely to achieve the purposes of the dominant corporation." *Salinero*, 2019 WL 4585215, at *3 (internal quotation marks omitted).

I have reviewed the new allegations and attachments to the Amended Complaint, and I find that they do not sufficiently develop the initial pleading so as to warrant a different outcome. Contrary to Plaintiffs' claim that their Amended Complaint alleges "facts demonstrating Fanjul's control and dominance over the activities of Central Romana in general, and in particular with respect to the misconduct at issue in this case" (ECF No. 67-1 at 4), I find that Plaintiffs have not alleged any new facts; instead they offer only new speculation and legal conclusions. Although Plaintiffs have rephrased some of their allegations, they remain factually insufficient. Once again, Plaintiffs rely on the corporate structure of the two entities, highlighting Fanjul's 35% ownership of Central Romana's stock, and the overlapping officers and directors. Plaintiffs repeatedly refer to the "control and dominance" Fanjul has over Central Romana, but they do not cite to any new facts to support these allegations; nor do the exhibits attached to the Amended Complaint provide

sufficient support. Plaintiffs contend that Central Romana's "independent existence is fictitious because [it] does not operate autonomously" (ECF No. 56 at ¶ 42), but they offer no facts to support this allegation.

Paragraphs 46 and 47 of the Amended Complaint contend that Central Romana was "the vehicle through which Fanjul" operated in the DR, and that Fanjul supervised Central Romana employees and determined Central Romana's land acquisition policies. ECF No. 56. However, these allegations are based solely "on information and belief," and thus, as noted above, they are not entitled to the assumption of truth. *See Scott*, 2018 WL 3360754, at \*6.

Similarly, Plaintiffs allege that "Fanjul engaged in improper conduct . . . because it used Central Romana to accomplish . . . the unlawful eviction . . .[and] taking of Plaintiffs' land" (ECF No. 56 at ¶ 48), and that Fanjul "had the power and right" to "direct" Central Romana to "remedy" the situation. *Id.* at ¶ 49. But these allegations are not substantiated with any facts showing that Fanjul was behind the eviction, or that as a minority shareholder, Fanjul had the power to direct Central Romana to do anything, much less provide reparations for the losses it inflicted.

Finally, I reject Plaintiffs' attempt to add new allegations regarding the general agency principles that were absent from the initial Complaint. Plaintiffs' new contentions that "Central Romana was acting as Fanjul's agent" because it "*accepted* the undertaking to act as Fanjul's agent in connection with the unlawful evictions, and it was subject to Fanjul's *control*" (ECF No. 56 at ¶ 55) (emphasis added) are nothing more than unsupported legal conclusions. In any event, Plaintiffs do not allege that Fanjul ever acknowledged that Central Romana would act on its behalf

168a

in conducting the evictions (the third element necessary to establish agency), much less provide any facts to support such a claim.[5]

Given Plaintiff's concession that Counts 1-III are time-barred, there are five counts remaining in the Amended Complaint. Fanjul's potential liability on these five counts, as well as Plaintiffs' claim that Central Romana is not an indispensable party, are premised on Plaintiffs' theory of vicarious liability or that an agency relationship existed between Fanjul and Central Romana. Plaintiffs have failed to meet their burden of alleging new facts sufficient to support these claims, thus, the Amended Complaint must be dismissed in its entirety. Accordingly, I need not consider Fanjul's argument that the common law claims in Counts IV-VIII of the Amended Complaint are time-barred, nor must I evaluate Fanjul's contention that Plaintiffs' common law claims must be dismissed because Florida state law is inapplicable to the extraterritorial conduct alleged in the Amended Complaint.

2. Plaintiffs' Motion for "Jurisdictional" Discovery

"It is no small thing to file a lawsuit that brings someone involuntarily into federal court. Prior to filing such a lawsuit, a plaintiff is required to conduct a meaningful investigation to determine that the facts permit the defendant to be sued in the court where the lawsuit will be filed."

---

[5] I reject Plaintiffs' claim that Paragraph 49 is "sufficient to establish [ ] acknowledgement by Fanjul that Central Romana would act on its behalf." ECF No. 67-1 at 9. Paragraph 49 contends that Fanjul "ratified Central Romana's unlawful evictions by acquiescing in, ignoring the public and international outcry about the unlawful evictions and failing to direct Central Romana to take any action to remedy them . . ." ECF No. 56. Putting aside whether ratification through acquiescence is sufficient to establish acknowledgement of an agency relationship, I reiterate my finding above, that there is no evidence that Fanjul had the power to direct Central Romana to do anything. Therefore, Fanjul's failure to issue directives does not establish that it ratified Central Romana's conduct, let alone that Fanjul acknowledged Central Romana was acting on its behalf.

*In re Zantac (Ranitidine) Products Liab. Litig.*, 20-MD-2924, 2020 WL 6907056, at *1 (S.D. Fla. Nov. 24, 2020) (J. Reinhart). Post-filing discovery is not a substitute for pre-filing investigation and factual development. A Court need not defer ruling on a motion to dismiss "in order to allow the plaintiff to look for what the plaintiff should have had – but did not – before coming through the courthouse doors." *Lowery v. Alabama Power Co.*, 483 F.3d 1184, 1216 (11th Cir. 2007).

It is well settled that district courts have the discretion to order the discovery of facts necessary to determine their jurisdiction over the merits. *Eaton v. Dorchester Dev., Inc.*, 692 F.2d 727, 729 (11th Cir. 1982). Here, Judge Ruiz has exercised that discretion by staying discovery.

Plaintiffs contend that they are seeking "jurisdictional discovery," but that is incorrect. First, Fanjul has not raised a jurisdictional defense. Its motion is filed under Rule 12(b)(6), not Rule 12(b)(1) or 12(b)(2). *See In re Zantac* at *2 (qualified right to jurisdictional discovery exists only in response to a factual jurisdictional challenge). Second, Fanjul waived any personal jurisdiction defense by not raising it in its Motion to Dismiss. Fed. R. Civ. P. 12(h)(1). Third, there is no dispute that Fanjul and the Plaintiffs are diverse for purposes of subject matter jurisdiction. Because jurisdiction is not in dispute, there is no basis for jurisdictional discovery, even if that were what Plaintiffs want.

In fact, Plaintiffs want something different. The proposed discovery is designed to show that Fanjul can be held legally responsible for the actions of Central Romana. Its purpose is to help Plaintiffs state a claim for which relief can be granted *against Fanjul*. That is merits discovery. Merits discovery is limited to evidence relevant to the well-pled claims in the Amended Complaint. *See* Fed. R. Civ. P. 26(b)(1). For the reasons stated above, there are no well-pled claims against Fanjul, so Plaintiffs are not entitled to the discovery that they request. *See Turner v. Costa Crociere S.P.A.*, No. 1:20-CV-21481-KMM, 2020 WL 9071486, at *6, n.4 (S.D. Fla.

Aug. 23, 2020) (J. Moore) ("a plaintiff may not argue that it requires discovery to defeat a motion to dismiss for failure to state a claim.") (*citing Inman v. Am. Paramount Fin.*, 517 F. App'x 744 at 748–49 (11th Cir. 2013).[6]

## RECOMMENDATION

Accordingly, I recommend that:

1. Defendant Fanjul's motion to dismiss (ECF No. 63) be **GRANTED;** and

2. Plaintiffs' request to take jurisdictional discovery (ECF No. 68) be **DENIED**.

## NOTICE OF RIGHT TO OBJECT

A party shall serve and file written objections, if any, to this Report and Recommendation with the Honorable Rodolfo A. Ruiz, United States District Court Judge for the Southern District of Florida, within **FOURTEEN (14) DAYS** of being served with a copy of this Report and Recommendation.  Failure to timely file objections shall constitute a waiver of a party's "right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions." 11th Cir. R. 3-1 (2016).

**If counsel do not intend to file objections, they shall file a notice advising the District Court within FIVE DAYS of this Report and Recommendation.**

---

[6]     Without citing any legal support, Plaintiffs contend in their response/cross-motion that "Defendant's assertion that the Amended Complaint fails to allege facts sufficient to hold Fanjul vicariously liable fo[r] the misconduct of Central Romana is a challenge to this Court's subject matter jurisdiction." ECF No. 67-1.  I disagree.  Subject matter jurisdiction goes to the Court's power to adjudicate a particular dispute, not to whether a party can prevail in that dispute.

**DONE and SUBMITTED** in Chambers this 4th day of August, 2021, at West Palm Beach

in the Southern District of Florida.

_____
BRUCE REINHART
UNITED STATES MAGISTRATE JUDGE

172a

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF FLORIDA

### CASE NO. 20-cv-80123-RAR

**MARIA MAGDALENA ALVAREZ GALVEZ**, *et al.*,

      Plaintiffs,

v.

**FANJUL CORP.**,

      Defendant.

_____/

## ORDER AFFIRMING AND ADOPTING REPORT AND RECOMMENDATION, DENYING JURISDICTIONAL DISCOVERY, AND DISMISSING CASE

**THIS CAUSE** comes before the Court upon United States Magistrate Judge Bruce Reinhart's Report and Recommendation [ECF No. 74] ("Report"), filed on August 4, 2021. The Report recommends that the Court grant Defendant's Motion to Dismiss the Amended Complaint [ECF No. 63] and deny Plaintiffs' Cross-Motion for Leave to Conduct Jurisdictional Discovery [ECF No. 68]. *See* Report at 1; 13. The Report properly notified the parties of their right to object to Magistrate Judge Reinhart's findings. *Id.* at 13. Plaintiffs timely filed Objections to the Report [ECF No. 75] ("Objections") on August 18, 2021. The Court having reviewed the Report, the Objections, and the record, and being otherwise fully advised, it is hereby

**ORDERED AND ADJUDGED** that the Report [ECF No. 74] is **AFFIRMED AND ADOPTED** as explained herein.

## LEGAL STANDARD

This Court reviews *de novo* the determination of any disputed portions of the Magistrate Judge's Report. *United States v. Powell*, 628 F.3d 1254, 1256 (11th Cir. 2010). Any portions of the Report to which no specific objection is made are reviewed only for clear error. *Macort v. Prem, Inc.*, 208 F. App'x 781, 784 (11th Cir. 2006). A proper objection "identifie[s] specific findings set forth in the [Report] and articulate[s] a *legal* ground for objection." *Leatherwood v.*

*173a*

*Anna's Linens Co.*, 384 F. App'x 853, 857 (11th Cir. 2010) (alterations and emphasis added; citations omitted).

## ANALYSIS

Upon due consideration of the record, including Judge Reinhart's Report and Plaintiffs' Objections thereto, the Court overrules the Objections and adopts the Report.  The Objections primarily take issue with the Report's application of pleading standards under *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009).  *See* Obj. at 2.  But a review of the Report clearly indicates that Magistrate Judge Reinhart properly applied the foregoing pleading standards in this case and correctly concluded that Plaintiffs' allegations still fail to sufficiently allege Fanjul's purported "control and dominance" over Central Romana.  *See* Report at 9.  Specifically, as noted in the Report, Plaintiffs' allegations ask the Court to speculate and infer that Fanjul "had the power and right" to "direct" Central Romana to "remedy" the situation at issue.  *Id.* at 10.

Further, in a misguided effort to bolster Plaintiffs' agency theory, the Amended Complaint merely avers that "Central Romana was acting as Fanjul's agent with respect to the unlawful evictions [because] it accepted the undertaking to act as Fanjul's agent in connection with the unlawful evictions, and it was subject to Fanjul's control with respect to the unlawful evictions." Am. Compl. [ECF No. 56] ¶ 55.  These assertions—wholly unsupported by factual allegations— consist of quintessential legal conclusions and are thus insufficient to state a claim.  *See Hall v. HSBC Mortg. Servs., Inc.*, 581 F. App'x 800, 803 (11th Cir. 2014) ("Hall's assertions of causation and damages amount only to conclusory statements and legal conclusions couched as factual allegations and, as such, do not suffice [to state a claim]."); *Trujillo v. Florida*, 481 F. App'x 598, 600 (11th Cir. 2012) ("Trujillo's complaint contains only legal conclusions couched as factual allegations, and the district court was not bound to accept such legal conclusions.").

Even where Plaintiffs' statements in the Amended Complaint do not consist of *purely* legal conclusions, they nevertheless fall short of crossing the line from possibility to plausibility. *See Twombly*, 550 U.S. at 555 ("Factual allegations must be enough to raise a right to relief above the speculative level."); *Michel v. NYP Holdings, Inc.*, 816 F.3d 686, 694 (11th Cir. 2016) ("A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."). As noted in the Report, the Amended Complaint relies on "information and belief" to assert that Fanjul supervised Central Romana employees and determined their land acquisition policies. *See* Report at 10. But these allegations are not entitled to the assumption of truth. *See Scott v. Experian Info. Sols., Inc.*, No. 18-60178, 2018 WL 3360754, at *6 (S.D. Fla. Jun 29, 2019) ("Conclusory allegations made upon information and belief are not entitled to a presumption of truth, and allegations stated upon information and belief that do not contain any factual support fail to meet the *Twombly* standard.") (citation omitted). And simply asserting that Fanjul was a minority shareholder does not indicate or suggest it had the power to direct Central Romana to do anything. *See Mamani v. Berzain*, 654 F.3d 1148, 1153 (11th Cir. 2011) ("Legal conclusions without adequate factual support are entitled to no assumption of truth."); *Womack v. Carroll Cty., Ga.*, 840 F. App'x 404, 405 (11th Cir. 2020) "[W]e need not accept as true the plaintiff's legal conclusions, including those couched as factual allegations."). Indeed, the Amended Complaint is devoid of any *factual* allegations suggesting that Fanjul was behind the evictions at issue or that Fanjul ever acknowledged that Central Romana would act on its behalf in conducting the evictions. *See* Report at 10-11.

In sum, many of the pleading deficiencies identified in this Court's Order Granting Motion to Dismiss [ECF No. 53] persist. And given that Fanjul's liability in this case is wholly predicated on Plaintiffs' theory of vicarious liability and/or the existence of an agency relationship between Fanjul and Central Romana, Magistrate Judge Reinhart was correct in concluding that the

Amended Complaint must be dismissed in its entirety. "[C]onclusory allegations, unwarranted deductions of facts or legal conclusions masquerading as facts will not prevent dismissal." *Jackson v. BellSouth Telecomms.*, 372 F.3d 1250, 1262-63 (11th Cir. 2004) (citation omitted).

Lastly, the Court concurs with the Report's conclusion that Plaintiffs' request to conduct "jurisdictional" discovery is, in actuality, an effort to engage in merit-based discovery. *See* Report at 12 ("Post-filing discovery is not a substitute for pre-filing investigation and factual development."). Given that merits-based discovery is limited to evidence relevant to well-pled claims, Magistrate Judge Reinhart correctly denied Plaintiffs' request. *See* Fed. R. Civ. P. 26(b)(1)

## CONCLUSION

For the foregoing reasons, it is **ORDERED AND ADJUDGED** as follows:

1. Plaintiffs' Objections [ECF No. 75] are **OVERRULED**.

2. The Report [ECF No. 74] is **AFFIRMED AND ADOPTED**.

3. Defendant's Motion to Dismiss [ECF No. 63] is **GRANTED**.

4. Plaintiffs' Cross-Motion for Leave to Conduct Jurisdictional Discovery [ECF No. 68] is **DENIED**.

5. This action is **DISMISSED**. The Clerk is instructed to **CLOSE** this case. Any pending motions are **DENIED AS MOOT**.

**DONE AND ORDERED** in Fort Lauderdale, Florida, this 31st day of August, 2021.

**RODOLFO A. RUIZ II**
**UNITED STATES DISTRICT JUDGE**

**Certificate of Service**

I hereby certify that the Appendix was served electronically on counsel for the Appellees on December 13, 2021.

Robert T Vance Jr